**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
_____ **DIVISION**

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

MAY 20 2021

JAMES N. HATTEN, Clerk
BY: _____ Deputy Clerk

_Shelia Candy Saunders_
(Print your full name)

Plaintiff *pro se*,

v.

_E CMC Education Inc_
_Moses Delaney, Paul Eubanks & David Brame_
_Altierus College_
(Print full name of each defendant; an
employer is usually the defendant)

Defendant(s).

CIVIL ACTION FILE NO.

**1:21-CV-2128**

(to be assigned by Clerk)

## *PRO SE* EMPLOYMENT DISCRIMINATION COMPLAINT FORM

### Claims and Jurisdiction

1.  This employment discrimination lawsuit is brought under (check only those
    that apply):

    ✓   Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et
        seq., for employment discrimination on the basis of race, color,
        religion, sex, or national origin, or retaliation for exercising rights
        under this statute.

        **NOTE:**  To sue under Title VII, you generally must have
        received a notice of right-to-sue letter from the Equal
        Employment Opportunity Commission ("EEOC").

✓  Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 et seq., for employment discrimination against persons age 40 and over, or retaliation for exercising rights under this statute.

> **NOTE**: To sue under the Age Discrimination in Employment Act, you generally must first file a charge of discrimination with the EEOC.

✓  Americans With Disabilities Act of 1990, 42 U.S.C. §§ 12101 et seq., for employment discrimination on the basis of disability, or retaliation for exercising rights under this statute.

> **NOTE**: To sue under the Americans With Disabilities Act, you generally must have received a notice of right-to-sue letter from the EEOC.

_____   Other  (describe)  _____

_____

_____

_____

_____

_____

2.   This Court has subject matter jurisdiction over this case under the above-listed statutes and under 28 U.S.C. §§ 1331 and 1343.

**Parties**

3. Plaintiff.    Print your full name and mailing address below:

Name    _Shelia Candy Saunders_

Address    _128 Cottonbelle Dr._

_Stockbridge Ga. 30281_

4. Defendant(s).    Print below the name and address of each defendant listed on page 1 of this form:

Name    _ECMC Education Inc._

Address    _111 Washington Avenue South Ste.1400_

_Minneapolis MN 55401_

Name    _David Brane, Moses Delaney, Paul Eubanks._

Address    _1750 Beaver Ruin Rd._

_Norcross, GA 30093_

Name    _Altierus Career College_

Address    _1750 Beaver Ruin Rd_

_Norcross, GA 30093_

**Location and Time**

5. If the alleged discriminatory conduct occurred at a location <u>different</u> from the address provided for defendant(s), state where that discrimination occurred:

_____

_____

6. When did the alleged discrimination occur?  (State date or time period)

_From November 2018 to Feb. 2020_

## **Administrative Procedures**

7. Did you file a charge of discrimination against defendant(s) with the EEOC or any other federal agency?  ___✓___ Yes  _____ No

   If you checked "Yes," attach a copy of the charge to this complaint.

8. Have you received a Notice of Right-to-Sue letter from the EEOC?

   ___✓___ Yes  _____ No

   If you checked "Yes," attach a copy of that letter to this complaint and state the date on which you received that letter: _____

9. If you are suing for **age discrimination**, check one of the following:

   ___✓___ 60 days or more have elapsed since I filed my charge of age discrimination with the EEOC

   _____ Less than 60 days have passed since I filed my charge of age discrimination with the EEOC

10.   If you were employed by an agency of the State of Georgia or unsuccessfully sought employment with a State agency, did you file a complaint against defendant(s) with the Georgia Commission on Equal Opportunity?

_____ Yes        ___✓___ No        _____ Not applicable, because I was not an employee of, or applicant with, a State agency.

If you checked "Yes," attach a copy of the complaint you filed with the Georgia Commission on Equal Opportunity and describe below what happened with it (i.e., the complaint was dismissed, there was a hearing before a special master, or there was an appeal to Superior Court):

_____

_____

_____

_____

11.   If you were employed by a Federal agency or unsuccessfully sought employment with a Federal agency, did you complete the administrative process established by that agency for persons alleging denial of equal employment opportunity?

_____ Yes        ___✓___ No        _____ Not applicable, because I was not an employee of, or applicant with, a Federal agency.

If you checked "Yes," describe below what happened in that administrative process:

_____

_____

_____

_____

## Nature of the Case

12. The conduct complained about in this lawsuit involves (check only those that apply):

           failure to hire me

           failure to promote me

✓     demotion

✓     reduction in my wages

✓     working under terms and conditions of employment that differed from similarly situated employees

✓     harassment

✓     retaliation

✓     termination of my employment

✓     failure to accommodate my disability

           other (please specify) _____

_____

13. I believe that I was discriminated against because of (check only those that apply):

✓     my race or color, which is _____

✓     my religion, which is _____

✓     my sex (gender), which is _____ male     ✓ female

           my national origin, which is _____

✓     my age  (my date of birth is _____ )

✓     my disability or perceived disability, which is:

_____

✓     my opposition to a practice of my employer that I believe violated the federal anti-discrimination laws or my participation in an EEOC investigation

           other (please specify) _____

_____

14.  Write below, as clearly as possible, the essential facts of your claim(s). Describe specifically the conduct that you believe was discriminatory or retaliatory and how each defendant was involved. Include any facts which show that the actions you are complaining about were discriminatory or retaliatory. Take time to organize your statements; you may use numbered paragraphs if you find that helpful. Do not make legal arguments or cite cases or statutes.

I was Hired at Altierus Career College on 2-20-2018 as a Academic Advisor. Since Nov. 2018 I have been subjected to a hostile work environment by Paul Eubanks Dean of Education and David Brame and Moses Delaney

Paul Eubanks admitted that Moses Delaney gave him directives to harass and retaliate against me upon my return back to work from my medical leave. Paul Eubank tried to accuse me of using spiritual language, and embrassing a student in a teacher classroom and asked the teacher to go alone with the story and the teacher would not the teacher admitted in a email that Paul was pressuring the teachers to come against me with the story and the teachers decline to be a part of the harassment and retaliation Paul resigned after this incident. I was

(Attach no more than five additional sheets if necessary; type or write legibly only on one side of a page.)

④

out again on Medical Leave and DAVID Brame was hired as the Dean of Education in August 2019  I Came Back to work August 27, 2019. I was introduce to David Brame as my new Supervisor, quickly I learned FROM DAVID that he had Been introduced to me in my Absence negatively so when I returned back to work and introduced to DAVID He Shared with me that he had Been warned By Moses Delaney to give me a hard time upon my return and it made him uncomfortable working with me as my Supervisor Because he didn't agree with MR. Delaney perspective as it relates to retaliating against me for no reason at all. But he had to do what he was told Because he had a Family to Take care of and he needed his Job. He was told By Delaney to write me up iF I worked over my time and if I had to go to the doctor I couldn't go unless it was done on My Lunch Break the Harassment went on for months.



I FILED another Charge with the EEOC for Retaliation and harassment. Both Dean was told to ask me to stay past my time to work and they approved for me to stay and after I would stay and work. I was threaten By them and Moses asked me why I work Over I would state my Supervisor asked me to stay and work Moses threaten to write me up and that went on for months. I was admitted in the Hospital again for anxiety and heart palpatation due to stress and working in an hostile environment. I had to take medication to sleep to function at work and at Home, I had to go to therapy to deal with the harassment and retaliation it was Constant But I Knew I was Being set up By my Supervisor and Moses just sit Back and enjoyed the Comotion Between the Supervisor and Myself. David admitted on tape that he was Being Cohersed to harass

4

me so I would quit my Job.
they would harass me on the
job, off the job while off on
medical leave. After I returned
Back to work David let me
Know he wasn't happy about
making me feel horrible.
He admitted on tape that he
was just doing what his
Moses (Supervisor) had told him to
do. That went on for 2 to
3 months and after Being
able to file yet again another
EEOC claim. When I got back
to work Dec.9,2019 I was
retaliated and harass again my
office was taken away from me
while I was out, and all my
personal items was moved and
taken. On Feb 19,2020 I was
escorted off my JOB. unABle to
gather all of my personal items
and I was told they will Be
mailed to me. I was never
given all of my Belongings.
Kindest Regards

15.  Plaintiff    _____    still works for defendant(s)

                  ✓/      no longer works for defendant(s) or was not hired

16.  If this is a disability-related claim, did defendant(s) deny a request for reasonable accommodation?    ✓/ Yes    _____ No

If you checked "Yes," please explain:  _ECMC   HR  approved_
_for me to be on medical leave through my short_
_term disability,  my doctor required me to take_
_physical therapy  and behaviour  council therapy_
_Mr. Delaney would not allow me to go to my doctor_
_Appt. my therapy appt. etc.  see doctor notes corporate_
_order the chair the doctor requested but Delaney would not_
17.  If your case goes to trial, it will be heard by a judge _give it to me. Corporate was not_ unless you elect a jury _aware. until_
trial. Do you request a jury trial?    _____ Yes    _____ No   _I filed with EEOC_

**Request for Relief**

As relief from the allegations of discrimination and/or retaliation stated above, plaintiff prays that the Court grant the following relief (check any that apply):

✓/    Defendant(s) be directed to  _ReHire  and  Back pay_
_From Feb. 20, 2020  up  to  present._

✓/    Money damages (list amounts)  _2 years of  Back pay_
_at my salary as of Feb. 20 2020 and pay._
_For the next year or until  I find  employment_
✓/    Costs and fees involved in litigating this case
_Attorney fee's and  court and filing fee's_

✓/    Such other relief as my be appropriate
_mental pain + suffering one year_
_salary at salary rate as of Feb, 20,_
_2020_

Page 8 of 9

## PLEASE READ BEFORE SIGNING THIS COMPLAINT

Before you sign this Complaint and file it with the Clerk, please review Rule 11 of the Federal Rules of Civil Procedure for a full description of your obligation of good faith in filing this Complaint and any motion or pleading in this Court, as well as the sanctions that may be imposed by the Court when a litigant (whether plaintiff or defendant) violates the provisions of Rule 11. These sanctions may include an order directing you to pay part or all of the reasonable attorney's fees and other expenses incurred by the defendant(s). Finally, if the defendant(s) is the prevailing party in this lawsuit, costs (other than attorney's fees) may be imposed upon you under Federal Rule of Civil Procedure 54(d)(1).

Signed, this _19_ day of ____MAY____, 20 _21_

_Shelia Candy Saunders_
(Signature of plaintiff *pro se*)

_Shelia Candy Saunders_
(Printed name of plaintiff *pro se*)

_128 Cottonbelle DR._
(street address)

_Stockbridge GA. 30281_
(City, State, and zip code)

_godsnewbeginning@bellsouth.net_
(email address)

_770-262-7660_
(telephone number)

# RIGHT TO SUE

# DOCUMENTS

EEOC Form 161 (11/2020)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Shelia C. Saunders<br>128 Cottonbelle Dr.<br>Stockbridge, GA 30281 | From: | Atlanta District Office<br>100 Alabama Street, S.W.<br>Suite 4R30<br>Atlanta, GA 30303 |

| ☐ | On behalf of person(s) aggrieved whose identity is<br>*CONFIDENTIAL (29 CFR §1601.7(a))* | |

| EEOC Charge No. | EEOC Representative | Telephone No. |
| 410-2020-04001 | **Trey Pyle,**<br>**Senior Federal Investigator** | **(404) 562-6831** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

| ☐ | The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC. |
| ☐ | Your allegations did not involve a disability as defined by the Americans With Disabilities Act. |
| ☐ | The Respondent employs less than the required number of employees or is not otherwise covered by the statutes. |
| ☐ | Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge |
| ☒ | The EEOC issues the following determination: The EEOC will not proceed further with its investigation, and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge. |
| ☐ | The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge. |
| ☐ | Other *(briefly state)* |

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed <u>WITHIN 90 DAYS</u> of your receipt of this notice;** or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

On behalf of the Commission

**Derick Newton**
<small>Digitally signed by Derick Newton
DN: cn=Derick Newton, o=ATDO, ou=EEOC,
email=derick.newton@eeoc.gov, c=US
Date: 2021.02.22 09:32:08 -05'00'</small>

For

02-22-2021

Enclosures(s)

**Darrell E. Graham,**
**District Director**

*(Date Issued)*

cc:    **Jodie F. Weinstein**
**Attorney**
**LITTLER MENDELSON, P.C.**
**1300 IDS Center**
**80 South 8th Street**
**Minneapolis, MN 55402**

Enclosure with EEOC
Form 161 (11/2020)

# INFORMATION RELATED TO FILING SUIT
# UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS     --     Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days of the date you *receive* this Notice.** Therefore, you should **keep a record of this date.** Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope or record of receipt, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *issued* to you** (as indicated where the Notice is signed) or the date of the postmark or record of receipt, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS     --     Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION     --     Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE     --     All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months** of this Notice. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

Enclosures(s)

cc:   **Wendy Alman**
**Littler Mendelson, P.C.**
**1300 IDS Center**
**80 S. 8th Street**
**Minneapolis, MN 55402**

**NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA):**   The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

**If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.**

**"Actual" disability or a "record of" a disability (note: if you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability):**

> ➢ **The limitations from the impairment no longer have to be severe or significant** for the impairment to be considered substantially limiting.
> ➢ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities"** now include the operation of major bodily functions, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.
> ➢ **Only one** major life activity need be substantially limited.
> ➢ With the exception of ordinary eyeglasses or contact lenses, **the beneficial effects of "mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.
> ➢ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active.**
> ➢ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months.**

**"Regarded as" coverage:**

> ➢ An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).
> ➢ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.
> ➢ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively *BOTH* transitory (lasting or expected to last six months or less) *AND* minor.
> ➢ A person is not able to bring a failure to accommodate claim *if* the individual is covered only under the "regarded as" definition of "disability."

*Note:   Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment.   Beyond the initial pleading stage, some courts will require specific evidence to establish disability.*   For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.

# EXHIBIT

# N

# CHARGE OF

# DISCRIMINATION

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA ☒ EEOC | 410-2020-04001 |

and EEOC

State or local Agency, if any

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Ms. Shelia C. Saunders | (770) 262-7660 | 1958 |

| Street Address | City, State and ZIP Code |
|---|---|
| 126 Cottonbelle Dr., Stockbridge, GA 30281 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| ALTIERUS CAREER COLLEGE | 15 - 100 | (651) 325-3263 |

| Street Address | City, State and ZIP Code |
|---|---|
| 1750 Beaver Ruin Rd., Suite 500, Norcross, GA 30093 | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| ZENITH EDUCATION GROUP | 15-300 | (651)221-0566 |

| Street Address | City, State and ZIP Code |
|---|---|
| 111 Washington Avenue South Suite 1400 Minneapolis, MN 55401 | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

☐ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☒ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION
☐ OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: 12-09-2019   Latest: 02-19-2020

☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

On April 3, 2019, I filed an EEO charge with the EEOC alleging discrimination based on my religion (846-2019-12257). On September 24, 2019, I filed a second charge with the EEOC alleging discrimination based on my sex, disability, and retaliation regarding my religion, (410-2019-09042). On December 9, 2019, I returned to work with restrictions. However, President Delaney, was not flexible regarding my reasonable accommodation request(s). On February 19, 2020, I was terminated by a phone call from my position as an Academic Advisor by Mr. Delaney while I was currently on medical leave.

The reason given for terminating my employment was due to not working my scheduled time, and attendance issues.
I believe that I was discriminated against in retaliation for engaging in a protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended, and Title I of the Americans with Disabilities Act of 1990, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| 3/4/20 _____ Date | Shelia Candy Saunders — Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

EEOC Form 5 (11/09)

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act
Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | 846-2019-12257 |
| | and EEOC |

State or local Agency, if any

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Ms. Shelia C. Saunders | (770) 262-7660 | 1958 |

Street Address                    City, State and ZIP Code

128 Cottonbelle Dr., Stockbridge, GA 30281

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe
Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| ALTIERUS CAREER | 15 - 100 | (651) 325-3283 |

Street Address                    City, State and ZIP Code

1750 Beaver Ruin Rd., Suite 500, Norcross, GA 30093

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

Street Address                    City, State and ZIP Code

| DISCRIMINATION BASED ON (Check appropriate box(es).) | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| ☐ RACE   ☐ COLOR   ☐ SEX   ☒ RELIGION   ☐ NATIONAL ORIGIN | Earliest: 11-01-2018   Latest: 04-02-2019 |
| ☐ RETALIATION   ☐ AGE   ☐ DISABILITY   ☐ GENETIC INFORMATION | |
| ☐ OTHER (Specify) | ☒ CONTINUING ACTION |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I was hired with the above-named employer on February 20, 2018, as an Academic Advisor. Since on or around November 1, 2018, I have been subjected to a hostile work environment by Paul Eubanks, Dean, and Moses Delaney, President. For example, Mr. Eubanks has been nit picking me regarding my work, refusing to allow me to converse with my co-workers, assigning me extra work that I can't complete, continually threatening me about being written up and fired, denying me volunteer time to complete work when in the past this was allowed, and demoted me from my Captain role. Mr. Delaney has concurred with Mr. Eubanks' actions and/or directives, and has denied me the opportunity to visit my doctor to see about myself due to the stress of the job.

I believe that I have been discriminated against due to my religion (Christian), in violation of Title VII of the Civil Rights Act of 1964, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| Apr 03, 2019          *Shelia Cindy Saunders* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |
| Date          Charging Party Signature | |

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA ☒ EEOC | 410-2019-09042 |
| | | and EEOC |

State or local Agency, if any

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Ms. Shelia C. Saunders | (770) 262-7660 | 1958 |

Street Address                    City, State and ZIP Code

128 Cottonbelle, Dr., Stockbridge, GA 30281

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| ALTIERUS CAREER | 15 - 100 | (651) 325-3263 |

Street Address                    City, State and ZIP Code

1750 Beaver Ruin Rd., Suite 500, Norcross, GA 30093

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

Street Address                    City, State and ZIP Code

DISCRIMINATION BASED ON (Check appropriate box(es).)

☐ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☒ RETALIATION  ☐ AGE  ☒ DISABILITY  ☐ GENETIC INFORMATION
☐ OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest  06-03-2019   Latest  09-23-2019

☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

On April 3, 2019, I filed an EEO charge (846-2019-12257) alleging discrimination based on my religion, in violation of Title VII. After the filing of my EEO compliant, my doctor placed me on medical leave. While out on medical leave the following occurred: I met with my counselor and discovered that I had been sexually harassed by Dr. Paul Eubanks, my personal belongings had been packed up and moved to a smaller office, I was locked out of the computer system, and my password was changed so that I could not check my e-mails while on leave. I returned to work on August 27, 2019, from my medical leave of absence. On September 3, 2019, Mr. Delaney (President) wrote me up regarding an over-time issue that occurred prior to my medical leave of absence, in which he classified this incident as "unfinished business" from our March 2019 meeting. Due to the continued hostile work environment, my doctor placed me on medical leave again.

No reason was given for this unfavorable treatment.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| Sep 24, 2019     *Shelia C. Saunders* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |
| Date          Charging Party Signature | |

# Shelia Candy Saunders Responds To The Rebuttal Letter From ECMC

July 21, 2020                                                          Page 1

Derick Newton

Equal Employment Opportunity Commission

Atlanta District Office

100 Alabama Street. SW. Suite 4R30

Atlanta, Georgia 30303

**Re:**   Shelia Saunders v. Altierus Career College, ECMC Education Inc., f/k/a
Zenith Education Group, Inc. and  d/b/a Altierus Career College {"ECMC Ed"), this
letter responds to the rebuttal to the charges of discrimination on the basis of
religion, disability, sexual harassment and retaliation filed by Littler Mendelson
P.C.

Given the lengthy explanation contained in the respondent statement which has
not been based on the facts but fabricated information, which is without factual
or legal merit, and should not be taken into considerations. It is the same
approach and information that was indicated and submitted to the
unemployment agency on the behalf of Moses Delaney denying my
unemployment. This company have the same old methods just new faces.

1.   **FACTUAL BACKGROUND.**
   A.   **About ECMC Education Inc.**

Zenith Education Group was listed for address purposes. The Respondent party
will be ECMC Education Inc., f/k/a Zenith Education Group, Inc. and  d/b/a Altierus
Career College ("ECMC Ed"),  Paul Eubank, Moses Delaney, and David Brame
which became an accomplice in the claim starting on December 9, 2019 upon me
returning to work. Altierus is mentioned because it is the name of the school that
I worked at. There are so many names that this company used, and they use
whatever name they need to use to fit whatever the situation is, to benefit what
they need to accomplish. My W2's was under Zenith, my unemployment claim

that they responded to, was Everest Institute, which is the name that they used for many years all over the different states, until they got caught doing things the

wrong way again because they use to be Corinthian. They were caught again doing the wrong thing and got in trouble with the accrediting body and lost their accreditation. They became Everest and after that according to the accrediting body they lost their accreditation and as a result of that, they lost all of their schools, they were shut down for corrupted management, their books and files were not kept according to the accreditation, and they kept 3 of the schools and changed their name to Altierus and kept 75 percent of the same employee's. With the same people you get the same results. If I was hired under Zenith which is what was on the letterhead of my offer letter. My Job Description was sent to me on a Zenith letterhead. On my separation letter the employer was ECMC. There is a reason why they use so many different names. That is why no one knows what to call the employer. Same people in the school's, same people in corporate, just a different name for the school.  I do not know what to call this company. Just the mere fact that they are always changing their name is an indication that something is not right. They are always covering something up. The same way they change their name is the same way the same people Moses Delaney and upper management is always doing illegal maneuvers with fabricating emails with people name on it as if they have sent it out to the person, that's fabrication. They use blind copy and send it out to the people, that will cover up for them, then turn around and send out something else and the employee never get the email. It is a lot of covering up in this company. They have each other back if you can cover up for them you become a keeper.

**Exhibit P**

The cooperate office gives a handbook that states they are an equal employment opportunity employer, and maintains anti-discrimination, anti-harassment, anti-retaliation polices that affirm that ECMC strictly prohibits unlawful discrimination, harassment, and retaliation, it all sound really good on paper but it is far from reality, it is not the truth.

There have been numerous of claims filed against this employer in two years on the same merit's discrimination, harassment, retaliation, sexual harassment, and disability. Some employees have submitted statements and are still employed but out on medical leave. I have submitted documents in:

**EXHIBIT N, O, P**

## B. Pertinent Factual Background

ECMC would have you believe that I was treated lawful with regards to my work assignments and performance, hours work, medical accommodations, discipline, and employment separation. On the contrary Mr. Delaney operating as the Campus Director under the operation of ECMC Ed, did not treat me with respect and dignity, as I deserve for the high performance that I gave the company throughout my employment. I received high praise throughout the company, I meet and overachieved every goal that was put before me. There are many emails that supports my achievements throughout my employment at Altierus Career College. I have text messages that I will submit at the hearing and I am submitting a few in:

**EXHIBIT G, H, and I**

At the end of the day I was not compensated for any of my achievements I was robbed out of my merit's achievements. I was robbed of my merit increase that I was promised by Mr. Delaney at the end of the first year. He personally expressed to me that I was doing a phenomenal job that 10 people could not do in my absence. He told me before I went on leave that he would request for me a 10,000 dollar increase to my pay because I deserve that type of increase because of my high performance. Mr. Delaney stated that if he asks for 10,000 dollars and do not get it, he knew he would be able to get for sure at least a 5,000 dollar raise. He said you start high to land where you need to be, but he reiterated that

you Mrs. Saunders deserve the 10,000 dollars raise. I was so offended when I got my raise it was less than two dollars that was a slap in the face out of all my hard

work that I had given this company, overachieving in every area, exceeding every goal I were given, they offered me less than a two dollar raise. It took Mr. Delaney two weeks later to even face me, and when he finally faced me in my office he expressed to me how that made him feel and that he was embarrassed to even face me and how disrespectful he felt toward me, he said it was hard for him to look me in my face knowing that this was an unfair decision. I didn't believe him because I had started to complain about Paul Eubanks behavior toward me and I complain about him doing an assessment on me and had only been my supervisor for 2 months and I didn't think he should have a say so in my evaluation. And I also had filed a complaint against Paul Eubanks and Moses Delaney that resulted in them and the company giving me a raise less than two dollars which equates to 3.0 percent, but I had been promised that Moses would seek a 10, 000 dollar raise, that goes without saying as long as you are doing everything that they ask you to do wrong or right, you can get the raise and promotions at this school, but as soon as you rock the boat they retaliate against you.

The two-top achiever's at Altierus Career College were me and James Marlin, who also filed an EEOC charge against the Campus Director, and Mr. Marlin also received a 3 percent raise. After filing his EEOC charge he submitted a two weeks' notice to resign from the school. These are the facts not fabricated truth as they would have you to believe. I have submitted a recorded statement with Mr. Marlin and me, and Paul Eubanks and myself on March 4, 2019 titled: Paul Eubanks and Shelia Candy Saunders recorded March 4, 2019 at 12:04pm Charge #410-2019-09042, #410-2020-04001, 846-2019-12257. I have submitted documents see:

### EXHIBIT Q

I would not call my treatment at Altierus College being a non-legal complaint. Throughout my employment it was everything but that. On the contrary I know I was not treated in a manner that was lawful. I have attached Exhibit B to prove the retaliation and how Mr. Delaney kept me from getting the proper medical

care that my doctor demanded for me to receive. Instead I was subjected to a hostile environment constantly. I have submitted documents see:


**Exhibit B & N**


## WORK ASSIGNMENTS AND PERFORMANCE

Obviously, whoever gave this report on my performance is a total idiot. There are too many emails that go out weekly on my performance. I was so good at my role as an Academic Advisor, I superseded any goal that was put before me for an entire year before Paul Eubanks came aboard. I was pick out to be picked on by Mr. Eubanks by his own admission, he was extremely uncomfortable being around me based on my belief and religion. He admitted to me on a recorded message March 4, 2019, he also stated on this recorded message behind Mr. Moses Delaney back that I was doing an awesome job and that he liked me very much, and that it was Mr. Delaney that put him up to come against me from the very beginning when he came on board. Mr. Eubanks stated that if it was up to him I would be on salary, and working the same schedule as the students, since I was the Academic Advisor and my responsibilities is being there for the students, that he would change it where I would only come on campus three days a week and be put on salary. He also admitted that even cooperate Kris Ford told him to write me up if I use spiritual language, it is all on tape. It was not until I started complaining and sending grievance letters of not be able to do what I was trained to do. After I went to Tampa for my training and after my return from Tampa Mr. Delaney told me, do not worry about what I was trained to do in Tampa, he is the Campus Director at Altierus and he run his Campus the way he see fits. He said I must do what he says do here at Norcross. I said Yes Sir and I kept doing it his way because he was my Campus Director. He stressed that I am to do what he said do and not what I was trained to do. Mr. Delaney also said he ran his Campus not Kelly Washington. I have submitted documents and recordings in: **EXHIBIT # L** Documents & Altierus Recording #21 January 27-2019, Altierus Recording # 4 March 6, 2019, Altierus Recording # 5&6   March 21, 2019 Altierus Recording #8

March 27, 2019.                                                                    Page 6

Paul Eubanks did not facilitate individualize training, as stated under the work assignments and performance by ECMC Ed, those are not the facts, as a matter of facts I only worked with Mr. Eubanks from November 2018 to March 29, 2019 and on April 1, 2019 I was out on Medical Leave. When he first started in November, I
was still reporting to Moses Delaney the Campus Director until Paul Eubanks got acclimated to his role as the Academic Dean. I started reporting to Mr. Eubanks

about midway of December. Then I work directly under him for two and a half months. When he finally spent some time with me he learned that I had been to Florida for training and when I got back to the campus he learned that I was not following the training that Kelly Washington had prepare for me to bring back to the campus and apply it to my role. Mr. Delaney told me to follow what he wanted me to do because I had been extremely successful in the goals that he had to meet on campus for the company and he didn't want to not meet his goals and I played a major part of him meeting his Campus goals by "Jake" his Boss. Mr. Eubanks had Kelly Washington to call on a conference call and we discussed what it was that I needed to do to be successful, and the expectation that were now required, I expressed on the call how Mr. Delaney had me doing everything but what I was trained to do by Ms. Washington, and Paul Eubanks also spoke on the same thing, saying Mr. Delaney would not permit me to do what I was trained to do but what he wanted me to do. I was eager to do anything that was asked of me, until I was being Bullied and mistreated by management. I have a two-whole notebook of copies of my performance, and the service that I provided the students, faculty, and staff with what my job responsibilities required, and I did more. I kept all my notes to be provided at the hearing. A few have been submitted in:

          **EXHIBIT** Q & R, also Altierus Recording # 4 March 6, 2019 Kelly Washington, Recording Mr. Marlin, Paul Eubanks, and I on March 4, 2019 titled: Paul Eubanks and Shelia Candy Saunders recorded March 4, 2019 at 12:04pm Charge # 410-2019-09042 sent to EEOC attention to Deborah Tunstall. Jacob called "Jake" sent an email out letting everyone know I would not be the captain any longer. Mr. Delaney also took the role of my title being over the Ambassadors

program and when I came back to work my picture as an Academic Advisor were
not on the Leader's Monitor but Kim Goodman a Caucasian that he promoted in
my absence as an Academic Advisor and upon my arrival back on campus I notice
that my picture had been move from the Academic Advisor board and Kim
Goodman picture was there the students thought I was gone and have been
replaced by Kim Goodman. When I mentioned to Mr. Delaney that my picture was
not on the monitor, he said he would take care of it and he never did. He had no
intentions in putting my picture on the monitor one month later he terminated
me. My increase in pay was never about me being captain it was supposed to be
about my yearly raise not about a promotion in title as a captain.  This was the
first time being a captain was ever mention. This was the first time they had
created this position as a captain on campus, and at that time there were no
rotation every mention, they did that just to justify why that title was no longer
assigned to me. They are professional's at covering their motive's in every area. I
knew when I accepted the captain position that it was based on my performance
of what I had done for the year, I had showed commitment, dedication and I was
a go-getter but when I reported Mr. Delaney the rules changed Jake is Mr.
Delaney Boss they are all on one accord. Mr. Delaney said the job I had done for
my first year was extraordinary, that I did a job that 10 people that was put
together in my absence couldn't do and he said this in front of everyone in the
staff meeting. But after I charged him and Paul Eubanks with discrimination,
retaliation, religion, and sexual harassment they reduce my raise to bare nothing,
took my title as the captain and made up switching out captains from time to
time, took the ambassador title from me and gave it to Kim Goodman and when I
brought up in the meeting that we both should be over the ambassador's  Mr.
Delaney said he would make sure that Kelly Harris the Chair for the Dental
Program would be over the ambassador's and the Academic Advisor would just
focus on the students, but Kim Goodman continued to meet with the Ambassador
Student's, again in one month I was terminated. Mr. Delaney had no intention to
take the ambassador position away from Kim, she is one of his inner circles that
does anything right or wrong for him and he have said it to Kelly Harris. the Chair
for Dental that he will have Kim back rather she is right or wrong because she has

always had his back rather he is right or wrong. This is the kind of dysfunctional

atmosphere that we are subjected to work in. I have submitted emails and recording see:

**EXHIBIT** G & H documents also Altierus Recording # 20 January 22, 2020 David Brame, Moses Delaney, Kim Goodman, Shelia Saunders, Mr. James Marlin,

Paul Eubanks, and I on March 4, 2019 titled: Paul Eubanks and Shelia Candy Saunders recorded March 4, 2019 at 12:04pm Charge #410-2019-09042 this recording is sent to Deborah Tunstall.

## HOURS WORKED

Again, the information is not reported accurately, I have never been able to complete my job duty for a 40-hour week work schedule is inaccurate. When I stated the truth about Mr. Delaney about my training and what his expectation of me at his campus was for me, Mr. Delaney started making my environment incredibly stressful adding meetings to my daily schedule, adding extra curriculum to my daily activities, making it almost impossible for me to complete my assignment within my 40 hours. I have submitted documents and recordings see:

  **Exhibit** J-K documents and recordings Altierus College # 21 January 27, 2020. Altierus College Recording #12 & 13 December 20, 2019. Altierus College #15 David Brame & Shelia Saunders. Altierus Recording #18 March 21, 2019 David Brame & Shelia Saunders.

On March 26 through March 29, 2019 so much was added on making it extremely difficult for me to complete and I was on my third day of the week and he added extra assignments for me to complete. I expressed that I would need more time to complete the assignments and I was already at 40 hours, Mr. Delaney told me he was not going to approve overtime for me to complete the assignments. He begins to bully me and said if I did not complete it, he would write me up and there will be consequences. He was aware of my doctor's appointments and he still gave me more work to do and less time to complete it. This was never about managing my time, this was an assignation against me to force me out like he has done other employees when he wants them to just walk away from their job, he makes the environment very hostile and stressful. After he saw that he could not

force me out by not giving me my raise he tried adding other job duties that I had

not had before, after that did not work, he started threatening me saying if I do not complete the assignment that he had given, and he would not give me more time to do it. I became extremely ill and needed to go to the hospital because my heart was beating very rapidly, and he told me I could not leave to go to the hospital that I had to complete my days work. Despite the inaccurate report of me not adhering to company policies is not accurate these are manually manufacture timesheets. Mr. Delaney have the capabilities to go into the workday and add and subtract time out of the system and he did it when it was a cover up or orchestrate an artificial time sheet. This is what happen to the week of March 24 through March 29, 2019. After Mr. Delaney had threaten me I stayed and did the work off the clock like he had allowed me to do so many times, he and Paul Eubanks. I have submitted documents, timesheets, and recordings that they all were aware that I was working off the clock. It was never made to be an issue until I reported that they had allowed me to work off the clock. The reason the timesheets show the hours of 40 hours and more is because they was trying to do damage control and they wanted me to go back on all my weeks and tell them when I worked off the clock so they could fix a system that was broken all alone. I am not the only employee that was made to work off the clock and no breaks, and late hours. They all knew we was working late nights and long hours and all of that was fine until corporate was made aware that I was working off the clock they told me that I couldn't volunteer my time and I would have to submit the hours and if I did that again they would write me up because it is not right for me to report incorrect time. I express to corporate that I didn't report incorrect time I clock in and out like I was instructed to do and everyone in management that I report to was very much aware that I was still on campus working after I had clocked out, because I couldn't work on the clock after 40 hours. That is why Mr. Eubanks wanted to fix my pay and put me on salary and change my schedule so I could work the same time frame that the students came to school. I came in on March 29, 2019 because Mr. Delaney threaten me verbally and through text messages that I will be submitting at my hearing. I came in to complete the assignment that was given me to do and if I do not complete what was given to me to do, there will be a consequence. This was the kind of pressure I had to subject myself to a hostile environment every day after I made corporate aware

of the kind environment that I had to come to work to everyday, Mr. Delaney is exceptionally good at manipulating and retaliating against the employee's that make any type of statement against him. Every time I did work over 40 hours it was approved by the supervisor, I did not have the capability to go into the system, and I could not go into the system and approve my own time, even before Mr. Eubanks started working at Altierus my supervisor Mr. Nassau always approved overtime he never wrote me up or threatened me to not work overtime because overtime was permitted. This was quite common for me to work late nights and long hours from the very beginning. The emails on warning me about overtime was fabricated emails. I was never warned nor written up about overtime. I could make my own schedule and post it on my office door. This did not become an issue until November 2018, when Mr. Eubanks came on board. I did not work overtime unless it was approved by Mr. Eubanks. I had to work overtime when we had orientation and workshops, it was expected of me. January 2019 came, and I was told I could not work past 40 hours unless it is orientation and I did just that. Mr. Eubanks would go into the system and approve it, here again overtime is not something I can just do on my own it has to be generated by the supervisor in the system. For the supervisor to generate the overtime he must be aware of the time and approve it. A supervisor is the only person that can put it in the system.

After March 29, 2019 I was incredibly happy because I had completed the assignment that Mr. Delaney had given me. I did not think at that time I had did anything incorrect, because I had come in before and worked with the students numerous of times and no one never said anything to me, other than thank you for being so loyal to the students and having the passion to see them be successful. On Monday April 1, 2019 I felt so proud, and I could not wait to tell Mr. Delaney that I completed the assignment, but he came to my office to tell me he was going to go ahead and give me that day to complete the assignment that he had given me. It was not until I said I had finished the assignment and he asked me, how did you do it. I replied that I came in on Friday March 29, 2019 and completed the work, since I could not get the overtime approved, I just came in and did what I had to do to complete my assignment, since I had been during that

for the last three months and Mr. Eubanks was aware of that, I decided that I

would come in and do the work so I would not get in no trouble and get wrote up. I told Mr. Delaney since I had been threatened if I do not get the work done and there will be consequences, I had never been wrote up before and I did not want to start now. Mr. Delaney call corporate, and they start telling me that I could not work and volunteer my time and that I had reported incorrect time last week and they were going to write me up for reporting incorrect. At that point I realized that no matter what I decided to do this was the end result that they wanted to do no matter what I had decided to do, I was darned if I do and darned if I didn't I was in a no win situation and Mr. Delaney had purposed in his heart that he was going to make my life miserable. I begin to get ill and asked to be dismissed to go to the hospital and I was told again that I could not go to the hospital. I begin to feel faint this was too much for me to handle I thought I had done everything right, only to be told by Mr. Delaney that I had not, as long as it was going to be that he had saved the day and he was going to give me the time to do it, everything would have been ok. Just because I figured out on my own to do it, suddenly it became an issue, it would have not been an issue if I had just did it the way he suggested. Had I known on Friday March 29, 2019 that he would allow me to do it on Monday April 1, 2019 all of this could have been avoided, but Mr. Delaney specifically told me he would not approve any overtime and I had to complete the assignment before Monday April 1, 2019, or there would be consequences on Monday April 1, 2019.

I became so ill I had to go to the doctor and the doctor had to perform an EKG on my heart because it was palpitating amazingly fast. After the results, the doctor took me off work and said that I could not be allowed to work in a stressful environment like this and be told that I could not leave to go and seek medical attention was unacceptable, and the school needed to be reported. I could have 1ost my life; I could have had a heart attack. The email that was sent in on April 2, 2019 by Mr. Delaney was after I was gone to the hospital, he knew immediately that the doctor had taken me off work due to working in a hostile environment and again he fabricated an email knowing that I was not there and had been taken off work due to a stressful environment. I never had a warning on my time

sheet, I never signed a warning about a time sheet, they called me while I was on medical leave to ask me to send in all the time and dates that I had worked and did not get paid for it, because now they are trying to do damage control because they knew that I had filed with the EEOC working off the clock, discrimination, religion, sexual harassment, retaliation. From that day till I returned back to work they were calling me and sending messages for me to send in the information because they wanted to now pay me for the days that I worked off the clock. That is why Kris Ford was so adamant about sending me a welcome back letter, not so much to welcome me back but for the reason of doing damage control on reimbursement for the time they knew I had worked and did not get paid for working. I am not the only employee that have worked off the clock and did not get paid for it. I have submitted documents and recording see: **Exhibit** C, J, K documents Altierus College recording # 5,6,10, 11,12,13,18.

## **MEDICAL ACCOMODATIONS**

ECMC Ed provided the medical accommodations, the intermittent time off due to my medical recommendations that my doctor requested. It was the Campus Director that was retaliating against me and ignoring every accommodation that the doctor requested for me to follow. I have submitted a few of the medical notes from my doctors that the College Campus Director did not allow me to attend my appointments, he deliberately went against the recommendations and told me that I would not be able to go to my appointments unless it was during my lunch break. Corporate was not aware that he was not adhering to the doctor request nor were he adhering to corporate accommodating letters that he also were receiving from HR and when I brought that to his attention the next day he said to come to his office, and he said he is going to send me home until he figure out what to do with me and I started feeling ill and I left and went to the hospital and the doctor took me back off work, three hours later after they knew I had gone to the doctor, he called and said I was terminated. There are so many things go on behind the scene at Altierus that corporate don't know or don't care to know,  these allegations that are made are not the first time that they have received grievance against Mr. Moses Delaney they just turn their heads and

fabricate and manipulate the laws and the rules to fit whatever the occasion is with all employees that bring concerns to them about Mr. Delaney. Something is terribly wrong at this Campus, they swept everything under the rug and come up with unacceptable reasonings and it is everybody else fault except Mr. Delaney. Corporate have gone through three Academic Deans since I have been there for two years, something is wrong, and they do not try to fix the problem they just allow Mr. Delaney to keep hurting good people.  And approximately over 20 employees' good employees, some of them have just walked away and the rest were let go especially if they sent in a complaint. Every time I was to return back to work the very first day was very stressful because Mr. Delaney always wanted to go back and try to revisit why I left in April 1, 2019, that he had some unfinished business with me. Again, trying to stress me out and to give me an anxiety attack and he did, I ended back in the hospital and back off work. I have submitted documents and recordings.

**EXHIBIT** D, F, I, J, Altierus College Recordings # 11, 14, First day back to work recording # 9, 10.


## DISCIPLINE AND EMPLOYMENT SEPERATION

Upon returning to work Mr. Delaney again confronted me about the time that I was not compensated for working off the clock. He wanted to retrieve the information pertaining to the hours worked and the dates. I never told Mr. Delaney that I had received counseled and not to provide any information. Again, that is so far from the truth. I expressed to Mr. Delaney that at this time I would need to speak with the EEOC to make sure that I am supposed to be having this discussion with him since there are charges that have been established regarding this situation and that I will get back to him as soon as I can get this information. I knew that this must be very crucial to this situation because every time I return to work this was the very first thing that Mr. Delaney wanted and needed to address

verses making sure I was acclimating back on Campus and getting familiar with my role and getting repositioned to a new location since Mr. Delaney thought it was appropriate to move my personal belongings out of my office without discussing that with me. He called me while I was out to try to get my time and he

did not never mention that he had moved me out of my office every time I returned; he had moved me. That was stressful because every time he moved my personal items there were things missing. I expressed that he should not move my things unless I am informed. There was never an ongoing instruction regarding my expectations regarding my work schedule and my hours of work, again so far from the truth, again my schedule was posted on my office door and everyone was made aware of my hours. On January 30, 2020 I did not give my providers the impression that ECMC Ed had not permitted me to take time off. I told my provider specifically that it was Moses Delaney that would not allow me to attend my appointments.  I sent Lisa Borowitz a letter sharing with her that Mr. Delaney would not allow me to go to my doctor appointments as well in spite of the ongoing accommodation letter that ECMC Benefits Team sent out on February 5, 2020 and copied Moses Delaney, David Brame, and Kris Ford, Mr. Delaney was not allowing me to go to my appointments. Obviously, Mr. Delaney did not let me go to my appointments, my doctors had to write a letter to the Leave Department expressing the unfair treatment that I as receiving through this administration. Mr. Delaney does thing undercover and corporate do not know until it is exposed what he is doing. Mr. Delaney have the mid set that he is the Campus Director and he run the campus the way he wants to run it and the people that expose him he finds a way to fabricate a story that corporate either know that he will bend the rule and go alone with him to remain in compliance, or they get caught off guard and then try to do damage control by making an untruth be true. The same way Mr. Delaney retaliated against me and said he never gave me a laptop and he told Technical support to take it away from me if I had one. This is one of many lies that Mr. Delaney have told and then try to cover it up. I am submitting copies of emails that he discussed the laptop with technical support. I am a firm believer you cannot have 100 people saying one thing the same way and have one person saying something different and the one person is right do the math. Therefore, they became so adamant about getting my time right because corporate knew that Mr. Delaney, Paul Eubanks nor David Brame should have allowed me to work off the clock and instead of them make the wrong right within the management department they tried to make me be the fall guy and I will not allow them to

Keep doing this to me and the people that come after me. Something needs to change in this administration. I have submitted documents and recordings see:

**EXHIBIT:** Laptop document # B, Documents for the warning # P, Documents for Accommodation letters # I, Document Time clock # C, Documents on Timesheets # K, they show my time was 40 hours and the other hours that are shown those are the hours that they added to my time reflecting that I worked overtime which is not a true reflection of what I actually clock in myself. Mr. Delaney painted a picture that is not accurate in terms of my involvement on my time sheet. Retaliation documents # J, The MA Program Chair Ms. Margret Anochie statement, MA Instructor Alice Lofton Statement, The Security Guard Statement Althea Childrey, Admission Representative Michaela Green, The Security Guard Latoya Williams. Instructor Johnathan Brandt October 9, 2018 Recording. Altierus College Recording # 21, Alice Lofton. Altierus College Recording # 22 & 23 David Brame. Altierus College Recording # 18 David Brame. Altierus College Recording # 4, 5,6, 8, 9,10,11,12,13,14,15,18,20. Witness Cottonbelle Recording # 2,3,4,5,7. Cottonbelle no number recording April 21, 2019. New Recording # 15.  These are recordings of evidence and statements that ECMC apparently was not aware of that other employees were willing to make a statement based on the truth of what really happened on campus that corporate is not aware of or if they even really care about what is going on at this campus behind closed doors. It is sad that a few people that continue to work there in silence all because their jobs have been threaten and they need their job. However, a few people have stood up and said this behavior must stop it is not lawful and it is unaccepted. These are not insinuations in my charge they are absolutely the truth so help me God. Therefore, fortunately I have recordings because the company always protect the management team but this time, they underestimated the people that work there we will not stand back and be silent. They are willing to come forth and be subpoenaed if there is a need for them to speak. They have provided notarized statements, recorded statements, and they spoke of how the management team including the investigating team from ECMC off the clock and instead of them make the wrong right within the management

and the Academic Dean tried to coerce them into writing an untrue statement to condemn my facts. This Is the cover-up that they are used to doing just to win. They will break rules and regulations just to win. But I am a firm believer that the truth always come to the light. It is all on tape by the Dean Paul Eubank and the Dean David Brame which both resigned from the company because they were coerced by Mr. Delaney to make my working environment unbearable and the received knowledge that their conversation was recorded admitting to me that they were just following instruction by their supervisor Mr. Delaney and they needed their job, so they have to do what he tell them to do even when they knew it was not right. The company may say that they could substantiate the allegations of religious or sexual harassment toward me, but it is on tape in Mr. Eubank very own statement. I was discriminated against and I was retaliated against, I had to endure sexual remarks, and I was mistreated very unfairly, all because I took a stand and came out of silence and filed charges at the EEOC. The truth always come to the surface no matter how hard you try to hide it. What is done in the dark always come to the light one way or the other. No matter how many times you say it did not happen will not make it true. It is in writing and it is recorded. I was threatened to be written up and terminated if I did not reframe from a language that was openly used at the College. But I was singled out and my job was threatening if I used any religious statement. There are recordings submitted, programs, graduations, and meetings, submitted with spiritual language emails submitted with spiritual language. I was discriminated against because I took a stand and filed a complaint. Other workers were going through similar harassment and had medical conditions that I had, so I did not understand the retaliation that I was enduring. There are other employees that are mention in my claim that did experience the same retaliation, the stressful environment, sexual harassment, and they have all discussed it now and want to do something about and speak out. Two months ago, a couple of workers filed a complaint at the EEOC for similar treatment, they had to go to the doctor as well due to the horrible treatment. They were told they could not communicate with me while I was out on medical leave. They have all came forth with the same allegations filing with the EEOC as well. Let us compare apples with apples. They too have a pending EEOC complaint. My complaint on sexual harassment with Dr.

Paul Eubanks happened March 4, 2019. I submitted the recording on EXHIBIT
Recording March 4, 2019 it was sent to the EEOC investigator Deborah Tunstall
after I talked to my Doctor in my counseling therapy, my Doctor advised me to
submit the recording not to stay silent. My retaliation and discrimination, my
religious statement and sexual harassment statements, witness statements and
recordings have all been submitted. Dr. Paul Eubanks apologized on a recorded
statement that it was him who had the issues with my religion and he said he
didn't know how to deal with his issues with it and he tried to get other people
involved to make a statement and they told him I believe in the same God and if
you want me to make a statement against Ms. Saunders then I would have to
make a statement against myself because I feel the same way Mrs. Saunders feel.
Mr. Paul Eubank resigned a month later while I was out on medical leave. I do not
believe that I was treated unfairly with the accommodations that was set in place
for me. I believe I was treated unfairly from the management at the Campus Level
that deprived me of getting the medical treatment that was required for me to
have.  Those are the facts my doctor wrote in medical notes that they had to
resubmit another referral for my treatment due to the management not allowing
me to come to my appointments on a consistent base and those decisions was
affecting my progress of healing. Those are the facts and the medical notes by my
doctor have been submitting in: **EXBIHIT # D**.
I was moved on three occasion only whenever I went back out on medical leave.
Each time I was taken out of work based on the stressful and hostile environment
Mr. Delaney retaliated against me and move me to be mean that is what he does
he act just like a rebellious child that cannot have his way because of his issues
from his childhood of having his way that he so freely openly shares to the ones
he feel safe with sharing if he does not have any issues with you, he feels as thou
you are a friend, but as soon as you disagree with him about anything you
become enemy number one and that is sad. He should get him some therapy as
well so he can learn how to handle real issues. My disability does not have
anything to do with the move of my office, I fell on the job in November, and
December that no one wanted to address and eventually it became an issue
because it went unnoticed.  Mr. Delaney again did not do an accident report.
**Those are the facts.** The fall created other complications that had to be

addressed. I can definitely dispute the notion that ECMC would have you to think that there are no real issues here and that I have not been mistreated unfairly, again I believe that I have more than enough evidence to prove my claim over and over again. The evidence is over whelming unbelievable, that anyone would have to be subjected to this type of malicious retaliatory treatment is beyond my imagination.

## **CONCLUSION**

The information submitted with my rebuttal statement demonstrates that there is rules and regulations and unlawful discrimination, retaliation, sexual harassment, and religion has occurred with respect to this matter. Yes, ECMC Ed write all these strict policy against discrimination, sexual harassment, religion and retaliation in their handbook and it all sounds particularly good on paper. But the

reality is that they have management in place that they constantly breaking every rule and policy pertaining to these matters. The Charges that I bring to the EEOC and to ECMC Ed substantiated evidence and not speculation but facts. Given these facts, I Shelia Candy Saunders respectfully request that Mr. Moses Delaney

and ECMC Education Group be held accountable for the grievance findings,

discrimination, sexual harassment, religion, and retaliation based on the evidence of probable cause.

In Kindest Regards,

Shelia Candy Saunders

*Shelia Candy Saunders*

# COVER LETTER FOR REBUTTAL AGAINST THE RESPONDENT ECMC EDUCATION, INC. F/K/A ZENITH EDUCATION GROUP, INC. & D/B/A/ ALTIERUS CAREER COLLEGE

CHARGE # 846-2019-12257, 410-2019-09042, 410-2020-04001

Shelia Candy Saunders

6-22-2020

# Shelia Candy Saunders Responds To The Rebuttal Letter From ECMC

July 21, 2020                                                                Page 1


Derick Newton

Equal Employment Opportunity Commission

Atlanta District Office

100 Alabama Street. SW. Suite 4R30

Atlanta, Georgia 30303


**Re:**   Shelia Saunders v. Altierus Career College, ECMC Education Inc., f/k/a
Zenith Education Group, Inc. and  d/b/a Altierus Career College {"ECMC Ed"), this
letter responds to the rebuttal to the charges of discrimination on the basis of
religion, disability, sexual harassment and retaliation filed by Littler Mendelson
P.C.

Given the lengthy explanation contained in the respondent statement which has
not been based on the facts but fabricated information, which is without factual
or legal merit, and should not be taken into considerations. It is the same
approach and information that was indicated and submitted to the
unemployment agency on the behalf of Moses Delaney denying my
unemployment. This company have the same old methods just new faces.

1.   **FACTUAL BACKGROUND.**
     A.   **About ECMC Education Inc.**

Zenith Education Group was listed for address purposes. The Respondent party
will be ECMC Education Inc., f/k/a Zenith Education Group, Inc. and  d/b/a Altierus
Career College ("ECMC Ed"),  Paul Eubank, Moses Delaney, and David Brame
which became an accomplice in the claim starting on December 9, 2019 upon me
returning to work. Altierus is mentioned because it is the name of the school that
I worked at. There are so many names that this company used, and they use
whatever name they need to use to fit whatever the situation is, to benefit what
they need to accomplish. My W2's was under Zenith, my unemployment claim

that they responded to, was Everest Institute, which is the name that they used for many years all over the different states, until they got caught doing things the

wrong way again because they use to be Corinthian. They were caught again doing the wrong thing and got in trouble with the accrediting body and lost their accreditation. They became Everest and after that according to the accrediting body they lost their accreditation and as a result of that, they lost all of their schools, they were shut down for corrupted management, their books and files were not kept according to the accreditation, and they kept 3 of the schools and changed their name to Altierus and kept 75 percent of the same employee's. With the same people you get the same results. If I was hired under Zenith which is what was on the letterhead of my offer letter. My Job Description was sent to me on a Zenith letterhead. On my separation letter the employer was ECMC. There is a reason why they use so many different names. That is why no one knows what to call the employer. Same people in the school's, same people in corporate, just a different name for the school. I do not know what to call this company. Just the mere fact that they are always changing their name is an indication that something is not right. They are always covering something up. The same way they change their name is the same way the same people Moses Delaney and upper management is always doing illegal maneuvers with fabricating emails with people name on it as if they have sent it out to the person, that's fabrication. They use blind copy and send it out to the people, that will cover up for them, then turn around and send out something else and the employee never get the email. It is a lot of covering up in this company. They have each other back if you can cover up for them you become a keeper.

**Exhibit P**

The cooperate office gives a handbook that states they are an equal employment opportunity employer, and maintains anti-discrimination, anti-harassment, anti-retaliation polices that affirm that ECMC strictly prohibits unlawful discrimination, harassment, and retaliation, it all sound really good on paper but it is far from reality, it is not the truth.

There have been numerous of claims filed against this employer in two years on the same merit's discrimination, harassment, retaliation, sexual harassment, and disability. Some employees have submitted statements and are still employed but out on medical leave.  I have submitted documents in:

### EXHIBIT N, O, P

### B. Pertinent Factual Background

ECMC would have you believe that I was treated lawful with regards to my work assignments and performance, hours work, medical accommodations, discipline, and employment separation. On the contrary Mr. Delaney operating as the Campus Director under the operation of ECMC Ed, did not treat me with respect and dignity, as I deserve for the high performance that I gave the company throughout my employment. I received high praise throughout the company, I meet and overachieved every goal that was put before me. There are many emails that supports my achievements throughout my employment at Altierus Career College. I have text messages that I will submit at the hearing and I am submitting a few in:

### EXHIBIT G, H, and I

At the end of the day I was not compensated for any of my achievements I was robbed out of my merit's achievements. I was robbed of my merit increase that I was promised by Mr. Delaney at the end of the first year. He personally expressed to me that I was doing a phenomenal job that 10 people could not do in my absence. He told me before I went on leave that he would request for me a 10,000 dollar increase to my pay because I deserve that type of increase because of my high performance. Mr. Delaney stated that if he asks for 10,000 dollars and do not get it, he knew he would be able to get for sure at least a 5,000 dollar raise. He said you start high to land where you need to be, but he reiterated that

you Mrs. Saunders deserve the 10,000 dollars raise. I was so offended when I got my raise it was less than two dollars that was a slap in the face out of all my hard

work that I had given this company, overachieving in every area, exceeding every goal I were given, they offered me less than a two dollar raise. It took Mr. Delaney two weeks later to even face me, and when he finally faced me in my office he expressed to me how that made him feel and that he was embarrassed  to even face me and how disrespectful he felt toward me, he said it was hard for him to look me in my face knowing that this was an unfair decision. I didn't believe him because I had started to complain about Paul Eubanks behavior toward me and I complain about him doing an assessment on me and had only been my supervisor for 2 months and I didn't think he should have a say so in my evaluation. And I also had filed a complaint against Paul Eubanks and Moses Delaney that resulted in them and the company giving me a raise less than two dollars which equates to 3.0 percent, but I had been promised that Moses would seek a 10, 000 dollar raise, that goes without saying as long as you are doing everything that they ask you to do wrong or right, you can get the raise and promotions at this school, but as soon as you rock the boat they retaliate against you.

The two-top achiever's at Altierus Career College were me and James Marlin, who also filed an EEOC charge against the Campus Director, and Mr. Marlin also received a 3 percent raise. After filing his EEOC charge he submitted a two weeks' notice to resign from the school. These are the facts not fabricated truth as they would have you to believe. I have submitted a recorded statement with Mr. Marlin and me, and Paul Eubanks and myself on March 4, 2019 titled: Paul Eubanks and Shelia Candy Saunders recorded March 4, 2019 at 12:04pm Charge #410-2019-09042, #410-2020-04001, 846-2019-12257. I have submitted documents see:

## EXHIBIT Q

I would not call my treatment at Altierus College being a non-legal complaint. Throughout my employment it was everything but that. On the contrary I know I was not treated in a manner that was lawful. I have attached Exhibit B to prove the retaliation and how Mr. Delaney kept me from getting the proper medical

care that my doctor demanded for me to receive. Instead I was subjected to a hostile environment constantly. I have submitted documents see:

**Exhibit B & N**

## WORK ASSIGNMENTS AND PERFORMANCE

Obviously, whoever gave this report on my performance is a total idiot. There are too many emails that go out weekly on my performance. I was so good at my role as an Academic Advisor, I superseded any goal that was put before me for an entire year before Paul Eubanks came aboard. I was pick out to be picked on by Mr. Eubanks by his own admission, he was extremely uncomfortable being around me based on my belief and religion. He admitted to me on a recorded message March 4, 2019, he also stated on this recorded message behind Mr. Moses Delaney back that I was doing an awesome job and that he liked me very much, and that it was Mr. Delaney that put him up to come against me from the very beginning when he came on board. Mr. Eubanks stated that if it was up to him I would be on salary, and working the same schedule as the students, since I was the Academic Advisor and my responsibilities is being there for the students, that he would change it where I would only come on campus three days a week and be put on salary. He also admitted that even cooperate Kris Ford told him to write me up if I use spiritual language, it is all on tape. It was not until I started complaining and sending grievance letters of not be able to do what I was trained to do. After I went to Tampa for my training and after my return from Tampa Mr. Delaney told me, do not worry about what I was trained to do in Tampa, he is the Campus Director at Altierus and he run his Campus the way he see fits. He said I must do what he says do here at Norcross. I said Yes Sir and I kept doing it his way because he was my Campus Director. He stressed that I am to do what he said do and not what I was trained to do. Mr. Delaney also said he ran his Campus not Kelly Washington. I have submitted documents and recordings in: **EXHIBIT # L** Documents & Altierus Recording #21 January 27-2019, Altierus Recording # 4 March 6, 2019, Altierus Recording # 5&6   March 21, 2019 Altierus Recording #8

March 27, 2019. Page 6

Paul Eubanks did not facilitate individualize training, as stated under the work assignments and performance by ECMC Ed, those are not the facts, as a matter of facts I only worked with Mr. Eubanks from November 2018 to March 29, 2019 and on April 1, 2019 I was out on Medical Leave. When he first started in November, I

was still reporting to Moses Delaney the Campus Director until Paul Eubanks got acclimated to his role as the Academic Dean. I started reporting to Mr. Eubanks

about midway of December. Then I work directly under him for two and a half months. When he finally spent some time with me he learned that I had been to Florida for training and when I got back to the campus he learned that I was not following the training that Kelly Washington had prepare for me to bring back to the campus and apply it to my role. Mr. Delaney told me to follow what he wanted me to do because I had been extremely successful in the goals that he had to meet on campus for the company and he didn't want to not meet his goals and I played a major part of him meeting his Campus goals by "Jake" his Boss. Mr. Eubanks had Kelly Washington to call on a conference call and we discussed what it was that I needed to do to be successful, and the expectation that were now required, I expressed on the call how Mr. Delaney had me doing everything but what I was trained to do by Ms. Washington, and Paul Eubanks also spoke on the same thing, saying Mr. Delaney would not permit me to do what I was trained to do but what he wanted me to do. I was eager to do anything that was asked of me, until I was being Bullied and mistreated by management. I have a two-whole notebook of copies of my performance, and the service that I provided the students, faculty, and staff with what my job responsibilities required, and I did more. I kept all my notes to be provided at the hearing. A few have been submitted in:

EXHIBIT Q & R, also Altierus Recording # 4 March 6, 2019 Kelly Washington, Recording Mr. Marlin, Paul Eubanks, and I on March 4, 2019 titled: Paul Eubanks and Shelia Candy Saunders recorded March 4, 2019 at 12:04pm Charge # 410-2019-09042 sent to EEOC attention to Deborah Tunstall. Jacob called "Jake" sent an email out letting everyone know I would not be the captain any longer. Mr. Delaney also took the role of my title being over the Ambassadors

program and when I came back to work my picture as an Academic Advisor were not on the Leader's Monitor but Kim Goodman a Caucasian that he promoted in my absence as an Academic Advisor and upon my arrival back on campus I notice that my picture had been move from the Academic Advisor board and Kim Goodman picture was there the students thought I was gone and have been replaced by Kim Goodman. When I mentioned to Mr. Delaney that my picture was not on the monitor, he said he would take care of it and he never did. He had no intentions in putting my picture on the monitor one month later he terminated me. My increase in pay was never about me being captain it was supposed to be about my yearly raise not about a promotion in title as a captain.  This was the first time being a captain was ever mention. This was the first time they had created this position as a captain on campus, and at that time there were no rotation every mention, they did that just to justify why that title was no longer assigned to me. They are professional's at covering their motive's in every area. I knew when I accepted the captain position that it was based on my performance of what I had done for the year, I had showed commitment, dedication and I was a go-getter but when I reported Mr. Delaney the rules changed Jake is Mr. Delaney Boss they are all on one accord. Mr. Delaney said the job I had done for my first year was extraordinary, that I did a job that 10 people that was put together in my absence couldn't do and he said this in front of everyone in the staff meeting. But after I charged him and Paul Eubanks with discrimination, retaliation, religion, and sexual harassment they reduce my raise to bare nothing, took my title as the captain and made up switching out captains from time to time, took the ambassador title from me and gave it to Kim Goodman and when I brought up in the meeting that we both should be over the ambassador's Mr. Delaney said he would make sure that Kelly Harris the Chair for the Dental Program would be over the ambassador's and the Academic Advisor would just focus on the students, but Kim Goodman continued to meet with the Ambassador Student's, again in one month I was terminated. Mr. Delaney had no intention to take the ambassador position away from Kim, she is one of his inner circles that does anything right or wrong for him and he have said it to Kelly Harris. the Chair for Dental that he will have Kim back rather she is right or wrong because she has

always had his back rather he is right or wrong. This is the kind of dysfunctional

atmosphere that we are subjected to work in. I have submitted emails and recording see:

**EXHIBIT** G & H documents also Altierus Recording # 20 January 22, 2020 David Brame, Moses Delaney, Kim Goodman, Shelia Saunders, Mr. James Marlin,

Paul Eubanks, and I on March 4, 2019 titled: Paul Eubanks and Shelia Candy Saunders recorded March 4, 2019 at 12:04pm Charge #410-2019-09042 this recording is sent to Deborah Tunstall.

## HOURS WORKED

Again, the information is not reported accurately, I have never been able to complete my job duty for a 40-hour week work schedule is inaccurate. When I stated the truth about Mr. Delaney about my training and what his expectation of me at his campus was for me, Mr. Delaney started making my environment incredibly stressful adding meetings to my daily schedule, adding extra curriculum to my daily activities, making it almost impossible for me to complete my assignment within my 40 hours. I have submitted documents and recordings see:

Exhibit J-K documents and recordings Altierus College # 21 January 27, 2020. Altierus College Recording #12 & 13 December 20, 2019. Altierus College #15 David Brame & Shelia Saunders. Altierus Recording #18 March 21, 2019 David Brame & Shelia Saunders.

On March 26 through March 29, 2019 so much was added on making it extremely difficult for me to complete and I was on my third day of the week and he added extra assignments for me to complete. I expressed that I would need more time to complete the assignments and I was already at 40 hours, Mr. Delaney told me he was not going to approve overtime for me to complete the assignments. He begins to bully me and said if I did not complete it, he would write me up and there will be consequences. He was aware of my doctor's appointments and he still gave me more work to do and less time to complete it. This was never about managing my time, this was an assignation against me to force me out like he has done other employees when he wants them to just walk away from their job, he makes the environment very hostile and stressful. After he saw that he could not

force me out by not giving me my raise he tried adding other job duties that I had

not had before, after that did not work, he started threatening me saying if I do not complete the assignment that he had given, and he would not give me more time to do it. I became extremely ill and needed to go to the hospital because my heart was beating very rapidly, and he told me I could not leave to go to the hospital that I had to complete my days work. Despite the inaccurate report of me not adhering to company policies is not accurate these are manually manufacture timesheets. Mr. Delaney have the capabilities to go into the workday and add and subtract time out of the system and he did it when it was a cover up or orchestrate an artificial time sheet. This is what happen to the week of March 24 through March 29, 2019. After Mr. Delaney had threaten me I stayed and did the work off the clock like he had allowed me to do so many times, he and Paul Eubanks. I have submitted documents, timesheets, and recordings that they all were aware that I was working off the clock. It was never made to be an issue until I reported that they had allowed me to work off the clock. The reason the timesheets show the hours of 40 hours and more is because they was trying to do damage control and they wanted me to go back on all my weeks and tell them when I worked off the clock so they could fix a system that was broken all alone. I am not the only employee that was made to work off the clock and no breaks, and late hours. They all knew we was working late nights and long hours and all of that was fine until corporate was made aware that I was working off the clock they told me that I couldn't volunteer my time and I would have to submit the hours and if I did that again they would write me up because it is not right for me to report incorrect time. I express to corporate that I didn't report incorrect time I clock in and out like I was instructed to do and everyone in management that I report to was very much aware that I was still on campus working after I had clocked out, because I couldn't work on the clock after 40 hours. That is why Mr. Eubanks wanted to fix my pay and put me on salary and change my schedule so I could work the same time frame that the students came to school. I came in on March 29, 2019 because Mr. Delaney threaten me verbally and through text messages that I will be submitting at my hearing. I came in to complete the assignment that was given me to do and if I do not complete what was given to me to do, there will be a consequence. This was the kind of pressure I had to subject myself to a hostile environment every day after I made corporate aware

of the kind environment that I had to come to work to everyday, Mr. Delaney is exceptionally good at manipulating and retaliating against the employee's that make any type of statement against him. Every time I did work over 40 hours it was approved by the supervisor, I did not have the capability to go into the system, and I could not go into the system and approve my own time, even before Mr. Eubanks started working at Altierus my supervisor Mr. Nassau always approved overtime he never wrote me up or threatened me to not work overtime because overtime was permitted. This was quite common for me to work late nights and long hours from the very beginning. The emails on warning me about overtime was fabricated emails. I was never warned nor written up about overtime. I could make my own schedule and post it on my office door. This did not become an issue until November 2018, when Mr. Eubanks came on board. I did not work overtime unless it was approved by Mr. Eubanks. I had to work overtime when we had orientation and workshops, it was expected of me. January 2019 came, and I was told I could not work past 40 hours unless it is orientation and I did just that. Mr. Eubanks would go into the system and approve it, here again overtime is not something I can just do on my own it has to be generated by the supervisor in the system. For the supervisor to generate the overtime he must be aware of the time and approve it. A supervisor is the only person that can put it in the system.

After March 29, 2019 I was incredibly happy because I had completed the assignment that Mr. Delaney had given me. I did not think at that time I had did anything incorrect, because I had come in before and worked with the students numerous of times and no one never said anything to me, other than thank you for being so loyal to the students and having the passion to see them be successful. On Monday April 1, 2019 I felt so proud, and I could not wait to tell Mr. Delaney that I completed the assignment, but he came to my office to tell me he was going to go ahead and give me that day to complete the assignment that he had given me. It was not until I said I had finished the assignment and he asked me, how did you do it. I replied that I came in on Friday March 29, 2019 and completed the work, since I could not get the overtime approved, I just came in and did what I had to do to complete my assignment, since I had been during that

for the last three months and Mr. Eubanks was aware of that, I decided that I

would come in and do the work so I would not get in no trouble and get wrote up. I told Mr. Delaney since I had been threatened if I do not get the work done and there will be consequences, I had never been wrote up before and I did not want to start now. Mr. Delaney call corporate, and they start telling me that I could not work and volunteer my time and that I had reported incorrect time last week and they were going to write me up for reporting incorrect. At that point I realized that no matter what I decided to do this was the end result that they wanted to do no matter what I had decided to do, I was darned if I do and darned if I didn't I was in a no win situation and Mr. Delaney had purposed in his heart that he was going to make my life miserable. I begin to get ill and asked to be dismissed to go to the hospital and I was told again that I could not go to the hospital. I begin to feel faint this was too much for me to handle I thought I had done everything right, only to be told by Mr. Delaney that I had not, as long as it was going to be that he had saved the day and he was going to give me the time to do it, everything would have been ok. Just because I figured out on my own to do it, suddenly it became an issue, it would have not been an issue if I had just did it the way he suggested. Had I known on Friday March 29, 2019 that he would allow me to do it on Monday April 1, 2019 all of this could have been avoided, but Mr. Delaney specifically told me he would not approve any overtime and I had to complete the assignment before Monday April 1, 2019, or there would be consequences on Monday April 1, 2019.

I became so ill I had to go to the doctor and the doctor had to perform an EKG on my heart because it was palpitating amazingly fast. After the results, the doctor took me off work and said that I could not be allowed to work in a stressful environment like this and be told that I could not leave to go and seek medical attention was unacceptable, and the school needed to be reported. I could have lost my life; I could have had a heart attack. The email that was sent in on April 2, 2019 by Mr. Delaney was after I was gone to the hospital, he knew immediately that the doctor had taken me off work due to working in a hostile environment and again he fabricated an email knowing that I was not there and had been taken off work due to a stressful environment. I never had a warning on my time

sheet, I never signed a warning about a time sheet, they called me while I was on medical leave to ask me to send in all the time and dates that I had worked and did not get paid for it, because now they are trying to do damage control because they knew that I had filed with the EEOC working off the clock, discrimination, religion, sexual harassment, retaliation. From that day till I returned back to work they were calling me and sending messages for me to send in the information because they wanted to now pay me for the days that I worked off the clock. That is why Kris Ford was so adamant about sending me a welcome back letter, not so much to welcome me back but for the reason of doing damage control on reimbursement for the time they knew I had worked and did not get paid for working. I am not the only employee that have worked off the clock and did not get paid for it. I have submitted documents and recording see: **Exhibit** C, J, K documents Altierus College recording # 5,6,10, 11,12,13,18.

## **MEDICAL ACCOMODATIONS**

ECMC Ed provided the medical accommodations, the intermittent time off due to my medical recommendations that my doctor requested. It was the Campus Director that was retaliating against me and ignoring every accommodation that the doctor requested for me to follow. I have submitted a few of the medical notes from my doctors that the College Campus Director did not allow me to attend my appointments, he  deliberately went against the recommendations and told me that I would not be able to go to my appointments unless it was during my lunch break. Corporate was not aware that he was not adhering to the doctor request nor were he adhering to corporate accommodating letters that he also were receiving from HR and when I brought that to his attention the next day he said to come to his office, and he said he is going to send me home until he figure out what to do with me and I started feeling ill and I left and went to the hospital and the doctor took me back off work, three hours later after they knew I had gone to the doctor, he called and said I was terminated. There are so many things go on behind the scene at Altierus that corporate don't know or don't care to know,  these allegations that are made are not the first time that they have received grievance against Mr. Moses Delaney they just turn their heads and

fabricate and manipulate the laws and the rules to fit whatever the occasion is with all employees that bring concerns to them about Mr. Delaney. Something is terribly wrong at this Campus, they swept everything under the rug and come up with unacceptable reasonings and it is everybody else fault except Mr. Delaney. Corporate have gone through three Academic Deans since I have been there for two years, something is wrong, and they do not try to fix the problem they just allow Mr. Delaney to keep hurting good people.  And approximately over 20 employees' good employees, some of them have just walked away and the rest were let go especially if they sent in a complaint. Every time I was to return back to work the very first day was very stressful because Mr. Delaney always wanted to go back and try to revisit why I left in April 1, 2019, that he had some unfinished business with me. Again, trying to stress me out and to give me an anxiety attack and he did, I ended back in the hospital and back off work. I have submitted documents and recordings.

**EXHIBIT** D, F, I, J, Altierus College Recordings # 11, 14, First day back to work recording # 9, 10.


## DISCIPLINE AND EMPLOYMENT SEPERATION

Upon returning to work Mr. Delaney again confronted me about the time that I was not compensated for working off the clock. He wanted to retrieve the information pertaining to the hours worked and the dates. I never told Mr. Delaney that I had received counseled and not to provide any information. Again, that is so far from the truth. I expressed to Mr. Delaney that at this time I would need to speak with the EEOC to make sure that I am supposed to be having this discussion with him since there are charges that have been established regarding this situation and that I will get back to him as soon as I can get this information. I knew that this must be very crucial to this situation because every time I return to work this was the very first thing that Mr. Delaney wanted and needed to address

verses making sure I was acclimating back on Campus and getting familiar with my role and getting repositioned to a new location since Mr. Delaney thought it was appropriate to move my personal belongings out of my office without discussing that with me. He called me while I was out to try to get my time and he

did not never mention that he had moved me out of my office every time I
returned; he had moved me. That was stressful because every time he moved my
personal items there were things missing. I expressed that he should not move
my things unless I am informed. There was never an ongoing instruction regarding
my expectations regarding my work schedule and my hours of work, again so far
from the truth, again my schedule was posted on my office door and everyone
was made aware of my hours. On January 30, 2020 I did not give my providers the
impression that ECMC Ed had not permitted me to take time off. I told my
provider specifically that it was Moses Delaney that would not allow me to attend
my appointments. I sent Lisa Borowitz a letter sharing with her that Mr. Delaney
would not allow me to go to my doctor appointments as well in spite of the
ongoing accommodation letter that ECMC Benefits Team sent out on February 5,
2020 and copied Moses Delaney, David Brame, and Kris Ford, Mr. Delaney was
not allowing me to go to my appointments. Obviously, Mr. Delaney did not let me
go to my appointments, my doctors had to write a letter to the Leave Department
expressing the unfair treatment that I as receiving through this administration.
Mr. Delaney does thing undercover and corporate do not know until it is exposed
what he is doing. Mr. Delaney have the mid set that he is the Campus Director
and he run the campus the way he wants to run it and the people that expose him
he finds a way to fabricate a story that corporate either know that he will bend
the rule and go alone with him to remain in compliance, or they get caught off
guard and then try to do damage control by making an untruth be true. The same
way Mr. Delaney retaliated against me and said he never gave me a laptop and he
told Technical support to take it away from me if I had one. This is one of many
lies that Mr. Delaney have told and then try to cover it up. I am submitting copies
of emails that he discussed the laptop with technical support. I am a firm believer
you cannot have 100 people saying one thing the same way and have one person
saying something different and the one person is right do the math. Therefore,
they became so adamant about getting my time right because corporate knew
that Mr. Delaney, Paul Eubanks nor David Brame should have allowed me to work
off the clock and instead of them make the wrong right within the management
department they tried to make me be the fall guy and I will not allow them to

Keep doing this to me and the people that come after me. Something needs to change in this administration. I have submitted documents and recordings see:

**EXHIBIT:** Laptop document # B, Documents for the warning # P, Documents for Accommodation letters # I, Document Time clock # C, Documents on Timesheets # K, they show my time was 40 hours and the other hours that are shown those are the hours that they added to my time reflecting that I worked overtime which is not a true reflection of what I actually clock in myself. Mr. Delaney painted a picture that is not accurate in terms of my involvement on my time sheet. Retaliation documents # J, The MA Program Chair Ms. Margret Anochie statement, MA Instructor Alice Lofton Statement, The Security Guard Statement Althea Childrey, Admission Representative Michaela Green, The Security Guard Latoya Williams. Instructor Johnathan Brandt October 9, 2018 Recording. Altierus College Recording # 21, Alice Lofton. Altierus College Recording # 22 & 23 David Brame. Altierus College Recording # 18 David Brame. Altierus College Recording # 4, 5,6, 8, 9,10,11,12,13,14,15,18,20. Witness Cottonbelle Recording # 2,3,4,5,7. Cottonbelle no number recording April 21, 2019. New Recording # 15.  These are recordings of evidence and statements that ECMC apparently was not aware of that other employees were willing to make a statement based on the truth of what really happened on campus that corporate is not aware of or if they even really care about what is going on at this campus behind closed doors. It is sad that a few people that continue to work there in silence all because their jobs have been threaten and they need their job. However, a few people have stood up and said this behavior must stop it is not lawful and it is unaccepted. These are not insinuations in my charge they are absolutely the truth so help me God. Therefore, fortunately I have recordings because the company always protect the management team but this time, they underestimated the people that work there we will not stand back and be silent. They are willing to come forth and be subpoenaed if there is a need for them to speak. They have provided notarized statements, recorded statements, and they spoke of how the management team including the investigating team from ECMC off the clock and instead of them make the wrong right within the management

and the Academic Dean tried to coerce them into writing an untrue statement to condemn my facts. This Is the cover-up that they are used to doing just to win. They will break rules and regulations just to win. But I am a firm believer that the truth always come to the light. It is all on tape by the Dean Paul Eubank and the Dean David Brame which both resigned from the company because they were coerced by Mr. Delaney to make my working environment unbearable and the received knowledge that their conversation was recorded admitting to me that they were just following instruction by their supervisor Mr. Delaney and they needed their job, so they have to do what he tell them to do even when they knew it was not right. The company may say that they could substantiate the allegations of religious or sexual harassment toward me, but it is on tape in Mr. Eubank very own statement. I was discriminated against and I was retaliated against, I had to endure sexual remarks, and I was mistreated very unfairly, all because I took a stand and came out of silence and filed charges at the EEOC. The truth always come to the surface no matter how hard you try to hide it. What is done in the dark always come to the light one way or the other. No matter how many times you say it did not happen will not make it true. It is in writing and it is recorded. I was threatened to be written up and terminated if I did not reframe from a language that was openly used at the College. But I was singled out and my job was threatening if I used any religious statement. There are recordings submitted, programs, graduations, and meetings, submitted with spiritual language emails submitted with spiritual language. I was discriminated against because I took a stand and filed a complaint. Other workers were going through similar harassment and had medical conditions that I had, so I did not understand the retaliation that I was enduring. There are other employees that are mention in my claim that did experience the same retaliation, the stressful environment, sexual harassment, and they have all discussed it now and want to do something about and speak out. Two months ago, a couple of workers filed a complaint at the EEOC for similar treatment, they had to go to the doctor as well due to the horrible treatment. They were told they could not communicate with me while I was out on medical leave. They have all came forth with the same allegations filing with the EEOC as well. Let us compare apples with apples. They too have a pending EEOC complaint. My complaint on sexual harassment with Dr.

Paul Eubanks happened March 4, 2019. I submitted the recording on EXHIBIT Recording March 4, 2019 it was sent to the EEOC investigator Deborah Tunstall after I talked to my Doctor in my counseling therapy, my Doctor advised me to submit the recording not to stay silent. My retaliation and discrimination, my religious statement and sexual harassment statements, witness statements and recordings have all been submitted. Dr. Paul Eubanks apologized on a recorded statement that it was him who had the issues with my religion and he said he didn't know how to deal with his issues with it and he tried to get other people involved to make a statement and they told him I believe in the same God and if you want me to make a statement against Ms. Saunders then I would have to make a statement against myself because I feel the same way Mrs. Saunders feel. Mr. Paul Eubank resigned a month later while I was out on medical leave. I do not believe that I was treated unfairly with the accommodations that was set in place for me. I believe I was treated unfairly from the management at the Campus Level that deprived me of getting the medical treatment that was required for me to have. Those are the facts my doctor wrote in medical notes that they had to resubmit another referral for my treatment due to the management not allowing me to come to my appointments on a consistent base and those decisions was affecting my progress of healing. Those are the facts and the medical notes by my doctor have been submitting in: **EXBIHIT # D.**

I was moved on three occasion only whenever I went back out on medical leave. Each time I was taken out of work based on the stressful and hostile environment Mr. Delaney retaliated against me and move me to be mean that is what he does he act just like a rebellious child that cannot have his way because of his issues from his childhood of having his way that he so freely openly shares to the ones he feel safe with sharing if he does not have any issues with you, he feels as thou you are a friend, but as soon as you disagree with him about anything you become enemy number one and that is sad. He should get him some therapy as well so he can learn how to handle real issues. My disability does not have anything to do with the move of my office, I fell on the job in November, and December that no one wanted to address and eventually it became an issue because it went unnoticed.  Mr. Delaney again did not do an accident report. **Those are the facts.** The fall created other complications that had to be

addressed. I can definitely dispute the notion that ECMC would have you to think that there are no real issues here and that I have not been mistreated unfairly, again I believe that I have more than enough evidence to prove my claim over and over again. The evidence is over whelming unbelievable, that anyone would have to be subjected to this type of malicious retaliatory treatment is beyond my imagination.

## **CONCLUSION**

The information submitted with my rebuttal statement demonstrates that there is rules and regulations and unlawful discrimination, retaliation, sexual harassment, and religion has occurred with respect to this matter. Yes, ECMC Ed write all these strict policy against discrimination, sexual harassment, religion and retaliation in their handbook and it all sounds particularly good on paper. But the

reality is that they have management in place that they constantly breaking every rule and policy pertaining to these matters. The Charges that I bring to the EEOC and to ECMC Ed substantiated evidence and not speculation but facts. Given these facts, I Shelia Candy Saunders respectfully request that Mr. Moses Delaney

and ECMC Education Group be held accountable for the grievance findings,

discrimination, sexual harassment, religion, and retaliation based on the evidence of probable cause.

In Kindest Regards,

Shelia Candy Saunders

*Shelia Candy Saunders*

# EXHIBIT

# A

# PROMISED A

# RAISE AND GOT

# 1.00 RAISE

 ECMC
Group

# 2019 Annual Merit
12/31/2018

**Shelia Saunders**
1750 Beaver Ruin Rd.
#500
Norcross, GA 30093

| Organization | Altierus Career College - Norcross (Paul Eubanks (100932)) | Time Type | Full time |
|---|---|---|---|
| Job Title | Academic Advisor | Full Time Equivalent | 100.00% |
| Business Title | Academic Advisor | Hire Date | 02/20/2018 |
| Job Profile | Academic Advisor | Employee Types | Regular |

## Merit Details

| Effective Date | Old Base Pay | New Base Pay | % Increase |
|---|---|---|---|
| 01/01/2019 | 22.60 USD | 23.28 USD | 3.00% |

## Base Pay Over Time



| Effective Date | New Base Pay |
|---|---|
| 02/20/2018 | 22.60 USD |
| 01/01/2019 | 23.28 USD |

# EXHIBIT

# B

# DELANEY ORDERED A LAPTOP FOR ME AND AFTER THE CHARGE HE RETAILATED AGAINST ME AND ORDERED THE TECHNICAL SUPPORT TO TAKE IT BACK

## Saunders, Shelia

| | |
|---|---|
| **From:** | Gardner, Pete |
| **Sent:** | Monday, May 14, 2018 1:53 PM |
| **To:** | Salmanzadeh, Nasser; Delaney, Moses; Pfluke, Deanna; Harp, Nikiti; Saunders, Shelia; Marlin, James; Tate, Pamela; Jones, Melissa; Panchana, Elena |
| **Subject:** | RE: Laptops |

Hopefully this shipment will include the Docking stations and I will be able to, smoothly, swap out the current Desktop Units.
Please back up your data to your H: Drive.  \\norcross-adc02\users\ **YOUR LOG IN**    If you need help with this please create a help desk ticket .

**From:** Salmanzadeh, Nasser
**Sent:** Monday, May 14, 2018 1:43 PM
**To:** Delaney, Moses <mdelaney2@altierus.edu>; Pfluke, Deanna <DPfluke@altierus.edu>; Harp, Nikiti <NHarp@altierus.edu>; Saunders, Shelia <SSaunders@altierus.edu>; Marlin, James <jmarlin@altierus.edu>; Tate, Pamela <PTate1@altierus.edu>; Jones, Melissa <mjones@altierus.edu>; Panchana, Elena <epanchana@altierus.edu>
**Cc:** Gardner, Pete <pgardner@ecmc.org>
**Subject:** RE: Laptops

Thanks.

**From:** Delaney, Moses
**Sent:** Monday, May 14, 2018 12:54 PM
**To:** Pfluke, Deanna <DPfluke@altierus.edu>; Harp, Nikiti <NHarp@altierus.edu>; Saunders, Shelia <SSaunders@altierus.edu>; Marlin, James <jmarlin@altierus.edu>; Tate, Pamela <PTate1@altierus.edu>; Jones, Melissa <mjones@altierus.edu>; Panchana, Elena <epanchana@altierus.edu>
**Cc:** Salmanzadeh, Nasser <nsalmanzadeh@altierus.edu>; Delaney, Moses <mdelaney2@altierus.edu>; Gardner, Pete <pgardner@ecmc.org>
**Subject:** Laptops

Hello Team,

Just fyi, your laptop is on a UPS truck and headed your way. ☺

We have a total of 10 and will need to retain one for the Surge Tech Chair.

Here to serve,

## Moses Delaney, M.Ed
**Altierus Career College, Norcross**
Campus Director | P: 770-921-1085 |
1750 Beaver Ruin Road | Norcross, GA 30093

 **ALTIERUS™**

1

**Saunders, Shelia**

| | |
|---|---|
| **From:** | Gardner, Pete |
| **Sent:** | Tuesday, July 10, 2018 2:39 PM |
| **To:** | Saunders, Shelia |
| **Cc:** | Delaney, Moses |
| **Subject:** | RE: ERF Submitted for Shelia Saunders |

You were added to the VPN group in June 2018

1. Connect your Laptop to your HOME WiFi

2. Open the Cisco VPN Client 



Click on Connect

   Your Login Name should autofill.  If not it's the same as your Login at work.

3. Enter your password  (same as you use at work)

Nothing on your screen will change but you should be able to open all your apps and connections as you do at your desk.

If you have problems please call the IT Help Desk  800 877-9655

**From:** Saunders, Shelia
**Sent:** Wednesday, May 30, 2018 3:45 PM
**To:** Gardner, Pete <pgardner@ecmc.org>
**Cc:** Saunders, Shelia <SSaunders@altierus.edu>
**Subject:** FW: ERF Submitted for Shelia Saunders

**From:** Delaney, Moses
**Sent:** Tuesday, May 29, 2018 1:56 PM
**To:** Saunders, Shelia
**Subject:** FW: ERF Submitted for Shelia Saunders

This is for your VPN access.

MD

**From:** ECMC Service Management [mailto:ecmc@service-now.com]
**Sent:** Tuesday, May 29, 2018 1:56 PM
**To:** Salmanzadeh, Nasser <nsalmanzadeh@altierus.edu>; Saunders, Shelia <SSaunders@altierus.edu>; Delaney, Moses <mdelaney2@altierus.edu>
**Subject:** ERF Submitted for Shelia Saunders

RITM0017719 has been submitted for Shelia Saunders with access required on 2018-05-30.

1

**Todd Whitman**
Campus & Field Operations | ECMC Shared Services
C. 630.561.8655 | O. 714.885.4129 | Int.88974129
Call me on ZOOM



www.zenith.org | Altierus.org | www.wyotech.edu

**From:** Whitman, Todd
**Sent:** Thursday, March 28, 2019 9:19 AM
**To:** Delaney, Moses <mdelaney2@altierus.edu>; Brokaw, Tom <tbrokaw@ecmc.org>
**Cc:** McCants, Michael <mmccants@ecmc.org>; Whitman, Todd <twhitman@ecmc.org>
**Subject:** RE: Employee laptops?

You are correct.

Only directors and managers receive laptops. We are focusing on one device per person.  Yes, Ms., Saunders does not need a laptop, she has a desktop. If you can help us retrieve this that would be a big help.


Thank you.


**Todd Whitman**
Campus & Field Operations | ECMC Shared Services
C. 630.561.8655 | O. 714.885.4129 | Int.88974129
Call me on ZOOM



www.zenith.org | Altierus.org | www.wyotech.edu

**From:** Delaney, Moses
**Sent:** Thursday, March 28, 2019 7:51 AM
**To:** Brokaw, Tom <tbrokaw@ecmc.org>; Whitman, Todd <twhitman@ecmc.org>
**Cc:** McCants, Michael <mmccants@ecmc.org>
**Subject:** Employee laptops?

Good Morning Gents,

Is the company still moving toward all employees using laptops?  I might be wrong but for some reason, this sounds familiar.  (?)

I'd prefer to not do this but, if it's the company's decision, I'm onboard.

I only want my direct reports to have laptops and VPN as they are exempt.  Allowing non-exempt employees to have laptops/VPN may open the window for them to take work home and we have to pay them for the hours worked. This can get bad in many ways, of course.

Currently, Mrs. Saunders has a laptop and she should not.  I am not sure how she received one but, we need her to return to a desktop only.

Many thanks,

**Moses Delaney, M.Ed**
**Altierus Career College, Norcross**
Campus Director | P: 770-921-1085 |
1750 Beaver Ruin Road | Norcross, GA 30093



## Saunders, Shelia

| | |
|---|---|
| **From:** | McCants, Michael |
| **Sent:** | Friday, March 29, 2019 12:23 PM |
| **To:** | Saunders, Shelia |
| **Subject:** | FW: Employee laptops? |

Good morning

Can you please speak with Mr. Moses about HP Laptop.
See below.

*Michael McCants*

**Altierus Career College – Norcross**
I/T onsite Support| P: 678-892-2707 Ext. 107
1750 Beaver Ruin Rd Suite 500 | Norcross GA 30093

 **ALTIERUS**˚

---

**From:** Whitman, Todd
**Sent:** Thursday, March 28, 2019 5:14 PM
**To:** McCants, Michael <mmccants@ecmc.org>
**Subject:** RE: Employee laptops?

Where is it?


-------- Original Message --------
Subject: RE: Employee laptops?
From: "McCants, Michael" <mmccants@ecmc.org>
Date: Mar 28, 2019, 3:49 PM
To: "Whitman, Todd" <twhitman@ecmc.org>
Ms. Saunders reports she no longer has laptop,

---

**From:** Whitman, Todd <twhitman@ecmc.org>
**Sent:** Thursday, March 28, 2019 10:25 AM
**To:** McCants, Michael <mmccants@ecmc.org>
**Cc:** Whitman, Todd <twhitman@ecmc.org>
**Subject:** RE: Employee laptops?

Michael –

Good morning.  Can you please go take the laptop from Ms. Saunders. If she has any questions please have her speak
with Moses.

1

**Saunders, Shelia**

| | |
|---|---|
| **From:** | Delaney, Moses |
| **Sent:** | Monday, April 01, 2019 1:31 PM |
| **To:** | Saunders, Shelia; Eubanks, Paul |
| **Subject:** | RE: URGENT: Immediate attention is required |

Hello,

You need to submit your time. Are you not able to submit your time?

To what correction are you referring? Your request to use the Employee Appreciation Day on Friday was denied. It would have put you over 40 hours.

As we've discussed too many times before, you must work your schedule and avoid working unapproved overtime. Working your schedule should prevent you working unapproved overtime and/or more than 40 hours a week.

Best,

**Moses Delaney, M.Ed**
**Altierus Career College, Norcross**
Campus Director | P: 770-921-1085 |
1750 Beaver Ruin Road | Norcross, GA 30093

 **ALTIERUS™**

---

**From:** Saunders, Shelia
**Sent:** Monday, April 1, 2019 1:14 PM
**To:** Eubanks, Paul <peubanks@altierus.edu>; Delaney, Moses <mdelaney2@altierus.edu>
**Cc:** Saunders, Shelia <SSaunders@altierus.edu>
**Subject:** FW: URGENT: Immediate attention is required

Good Day,
Can my time please be corrected and submitted please thank you. Or would you like for me to submit the time as is and the correction be made at that time PLEASE ADVISE.....

---

**From:** ECMC Group <basecamp@myworkday.com>
**Sent:** Monday, April 01, 2019 1:00 PM
**To:** Saunders, Shelia <SSaunders@altierus.edu>
**Subject:** URGENT: Immediate attention is required

Hello,

Your timecard is outstanding.

Please log into Workday, review your timecard entries and submit to your Manager prior to 2:00 pm CT, Monday. After 2:00 PM CT timecards will be unavailable for changes as the payroll process has started.

# EXHIBIT

# C

# MY SCHEDULE

# AND CLOCK ON

# MY OFFICE

# DOOR

ECMC Education, Inc.  111 Washington Ave S.  Suite 1400  Minneapolis, MN 55401   +1 (888) 221-3262
Shelia Saunders  126 Cottonbella Drive  Stockbridge, GA 30281

| Name | Company | | Employee ID | Pay Period Begin | Pay Period End | Check Date | Check Number |
|---|---|---|---|---|---|---|---|
| Shelia Saunders | ECMC Education, Inc. | | 100756 | 02/16/2020 | 02/29/2020 | 02/21/2020 | |

| | Hours Worked | | Gross Pay | Pre Tax Deductions | | Employee Taxes | Post Tax Deductions | | Net Pay |
|---|---|---|---|---|---|---|---|---|---|
| Current | 32.00 | | 1,284.74 | 51.39 | | 194.36 | 0.00 | | 1,038.99 |
| YTD | 297.95 | | 8,911.85 | 409.81 | | 1,554.50 | 0.00 | | 6,947.54 |

| Earnings | | | | | | Employee Taxes | | |
|---|---|---|---|---|---|---|---|---|
| Description | Dates | Hours | Rate | Amount | YTD Hours | YTD Amount | Description | Amount | YTD |
| Group Term Life | | | | | 0 | 22.04 | Social Security Tax (OASDI) | 79.66 | 550.97 |
| Holiday | 02/16/2020-02/21/2020 | 8 | 23.278 | 186.23 | 48 | 1,117.34 | Medicare | 18.63 | 128.86 |
| Overtime | | | | | 5.4 | 188.58 | Federal Withholding | 44.49 | 480.87 |
| Paid Time-off | | | | | 19 | 442.29 | State Tax - GA | 51.58 | 393.80 |
| PTO Payout | 02/16/2020-02/21/2020 | 15.19 | 23.278 | 353.60 | 15.19 | 353.60 | | | |
| Regular | 02/16/2020-02/21/2020 | 32 | 23.278 | 744.91 | 292.55 | 6,810.02 | | | |
| Earnings | | | | 1,284.74 | | 8,939.88 | Employee Taxes | 194.36 | 1,554.50 |

| Pre Tax Deductions | | |
|---|---|---|
| Description | Amount | YTD |
| 401(k) | 51.39 | 356.49 |
| Dental | | 45.92 |
| Vision | | 7.40 |
| Pre Tax Deductions | 51.39 | 409.81 |

| Employer Paid Benefits | | | | Taxable Wages | | |
|---|---|---|---|---|---|---|
| Description | Amount | YTD | Description | | Amount | YTD |
| 401(k) Match | 51.39 | 356.49 | OASDI - Taxable Wages | | 1,284.74 | 8,886.57 |
| | | | Medicare - Taxable Wages | | 1,284.74 | 8,886.57 |
| | | | Federal Withholding - Taxable Wages | | 1,233.35 | 8,530.08 |
| | | | State Tax Taxable Wages - GA | | 1,233.35 | 8,530.08 |
| Employer Paid Benefits | 51.39 | 356.49 | | | | |

| | Federal | State | | PTO Balance | | |
|---|---|---|---|---|---|---|
| Marital Status | Married | B - Married 2 Incomes | Description | Accrued | Reduced | Available |
| Allowances | 2 | 1 | PTO | 3.08 | 15.19 | 0 |
| Additional Withholding | 0 | 0 | | | | |

| Payment Information | | | | | |
|---|---|---|---|---|---|
| Bank | Account Name | Account Number | USD Amount | Payment Amount | |
| suntrust | romeo | *****5660 | | 1,038.99 | USD |

THis is the unpaid working off the clock that I was ask to do on several occassion and the company wanted to pay me after the fact and after I had reported working off the clock

Shelia Saunders

**Timekeeping**
*Nonexempt Employees*
Employees who are classified as nonexempt must accurately record the time
they work each day, including arrival, departure and meal break times.

When employees receive their paychecks, they should verify immediately that their
working time was recorded accurately and that they were paid correctly for all hours
worked.

Nonexempt employees must report all time worked and not work any time that
is not authorized by their supervisors. This means nonexempt employees must
not start work early, finish work late, work during a meal break, or perform
any other extra or overtime work unless directed to do so. Employees who have
questions about when or how many hours they are expected to work should
contact their supervisor or Human Resources.

It is a violation of ECMC Group's Code of Conduct and this Employee Handbook for
anyone to instruct or encourage another employee to work "off the clock," to
incorrectly report hours worked, or to alter another employee's time records. If any
employees are directed or encouraged to incorrectly report hours worked, or to alter
another employee's time records, they should report the incident immediately to a
supervisor, any member of management or Human Resources.

**Time tracking Violations:**

| Date and Time Worked | Scheduled Off Time | Hours Over |
|---|---|---|
| 1/2/20 11:22am – 10.29pm | 8pm | 2hrs 29 minutes |
| 1/9/20 11:02am – 9:53pm | 8pm | 2hrs over |
| 1/16/20 12:41pm – 10:20pm | 8pm | 2hrs 20 minutes over |
| 1/14/20 11:16am – 10:16pm | 8pm | 2hrs over |
| 1/21/20 11:11am – 10:30pm | 8pm | 2.5hrs |
| 1/23/20 11:02am – 9:37pm | 8pm | 1.5hrs |
| 1/27/20 11:02am – 9:11pm | 8pm | 1hr over   I had to personally direct her to clock out and go home. I also reminded her that she needs to work her schedule. |
| 2/7/20 11:03 am – 7:24pm | 5pm | 2hrs 24 mins over |
| 2/6/20 11:04am – 10:07pm | 8pm | 2hrs 7 mins over |
| 2/4/20 11:11am – 10:30pm | 8pm | 2.5hrs over |
| 2/11/20 10:57am – 10:19pm | 8pm | 2hrs 19 mins over |
| 2/13/20 11:13am – 10:04pm | 8pm | 2hrs 4 mins over |

THis was not my Schedule my
Schedule was posted on my office
dooR. THis does not Reflect my coRRect
office houRs   Shelin Cindy Saunders

**If you feel he/she was able to perform the work, but was negligent, careless, or disobedient, please give examples.**

She has not been able to follow the directives given to work her work schedule.   On Monday, January 27, 2020 Ms. Saunders was on campus working beyond her work schedule. This was not discovered until the Campus Security Officer contacted the Campus Director, Moses Delaney, wondering about closing since there were employees still on campus. It was discovered that though a Medical Assisting class was being taught to make up class hours. Ms. Saunders was still on campus after her scheduled time.  Mrs. Saunders called the Campus Director and, after he reminded her of the need for her to work her work schedule, he gave her a directive to leave the campus.

THis is a third party talking
someone else wrote this Statement not
MR. DeLaney, because it's saying when
She called or Contacted me
THis is typed in the third PERSON
Directive should be instructed or
directed

# Office Hours



**Monday:** 11:00 am- 8:00  pm

**Tuesday:** 11:00 am- 10:00pm

**Wednesday**: 10:00 am- 3:00  pm

**Thursday**: 11:00 am- 10:00 pm

**Friday**: 12:00 pm- 3:00 pm

**From:** "Delaney, Moses" <mdelaney2@altierus.edu>

Date: January 22, 2020 at 12:27:22 PM EST

To: "godsnewbeginning@bellsouth.net"

<godsnewbeginning@bellsouth.net>

Cc: "Saunders, Shelia" <SSaunders@altierus.edu>,

"Brame, David" <dbrame@altierus.edu>

Subject: RE:  Weekly schedule


Monday 11am to 8pm  Tuesday 11am to 10pm
Wednesday 10am to 3pm Thursday 11am to 10pm
Friday 12pm to 3pm
 Thanks




Sent from my iPhone

# EXHIBIT

# D

# DOCTOR NOTES

# Past visit information

❮ Back to
Appointments

---

## Progress Notes

Christopher E Armour, MD, M.D. at 9/4/2019 10:30 AM

SUBJECTIVE:
Shelia Candy Saunders is a 61 year old female with hx of GAD and STRESSFUL
WORK ENVIRONMENT reporting she recently returned to work last week and
developed palpitations while sitting at her work desk on yesterday. She states
she also experienced transient blurring of her vision.  She states symptoms
occurred after experiencing harassment from her superior, the Alterius college
president.  She works for the school as an academic advisor. She reports a
history of having an active EOC complaint involving the college president. She
states he specifically harassed her regarding documentation "for working
overtime."   She attempted to see her behavioral specialist, Dr. Michael Gordon,
on yesterday but no availability.  He instructed her to see a provider who could
supply her with documentation to not return back to work until seen by him.
She came in last evening to check in with urgent care but was told there would
be a 2 hour wait.  She elected to be scheduled with me today instead.

General ROS: negative
Psychological ROS: positive for - anxiety
Ophthalmic ROS: positive for - blurry vision
Cardiovascular ROS: positive for - palpitations

# KAISER PERMANENTE® thrive

**This form contains your diagnosis.**

HAYEK, MD, MICHELE R
3650 Steve Reynolds Blvd
Duluth GA 30096

**Patient Name:** Saunders,Shelia Candy
**Encounter Date:** 3/11/2019

Please see below for this health care provider's directives and information relating to this encounter.

# Work Status Report

**Date onset of condition:**
**Next Appointment Date:**

**DIAGNOSIS:** PALPITATIONS
**Reason for Off Work:** Other (see comments in visit info)

**Off Work**
This patient is placed off work from 3/12/2019 through 3/14/2019

This form has been authorized by HAYEK, MD, MICHELE R

*This form contains your private health information that you may choose to release to another party, therefore please review for accuracy.*

Printed By: GRANT RN, JENNIFER on 3/11/2019 at 10:36:00 PM

# Kaiser Permanente

CASCADE INTERNAL MEDICINE
1175 Cascade Pkwy.
Atlanta GA 30311

Encounter Date: 2/20/2019

Patient: Shelia Saunders
Health Record Number: 0580369

**VERIFICATION OF TREATMENT**

Shelia Candy Saunders was seen at our medical offices on 02/18/19.

Shelia Candy Saunders reports she has been ill since 2/18/19.  She may resume work on 2/22/19 with the following restrictions: Needs adjustable ergonomic chair and adjustable footrest to place under her desk.

_____2/20/19_____          _____
Date/Time                                                  Provider Signature

**Please note:  A copy of this information will be maintained in our medical record.  If validation of this verification is requested, a copy of this form will be forwarded to the requesting party.**

Diagnosis (if required):

I authorize release of this medical information.

_____          _____
Name                                              Date

_____          _____
Witness                                           Date

Your Health Care Team,
Gina Howard

# Kaiser Permanente

GWINNETT MEDICAL OFFICE
3650 STEVE REYNOLDS BLVD.
DULUTH GA 30096

Encounter Date:  10/7/2019

Patient:  Shelia Saunders
Health Record Number:  0580369

**VERIFICATION OF TREATMENT**

Shelia Candy Saunders was seen at our medical offices today. She was referred to Intensive Outpatient

Psychotherapy (IOP).  She will need to remain out of work with an expected return to work date

of November 18, 2019.

10-7-2019   11:30AM          Michael Gordon, PhD
_____          _____
Date/Time                    Provider Signature

**Please note:  A copy of this information will be maintained in our medical record.  If validation of
this verification is requested, a copy of this form will be forwarded to the requesting party.**

Your Health Care Team,
Michael A Gordon, PhD

# Kaiser Permanente

**SOUTHWOOD VASCULAR SURGERY [SOUTHWOOD VASCULAR SURGERY ]**
**2400 Mt. Zion Pkwy.**
**Jonesboro GA 30236**

Encounter Date: 10/18/2019

Patient: Shelia Saunders
Health Record Number: 0580369

To Whom It May Concern:

Shelia Candy Saunders was seen in our office on 10/18/19.

She must continue with physical therapy, and keep her future medical appointments.
She may return to light/ limited duty on 12/9/19 provided She can wear shoe wear of
choice and avoid lifting, squatting, stairs, steps or ladders.

Sincerely,

Mohsen  Khoshneviszadeh, DPM
Electronically reviewed and Authenticated by Mohsen  Khoshneviszadeh, DPM
10/18/2019 3:37 PM

# Kaiser Permanente

GWINNETT MEDICAL OFFICE
3650 STEVE REYNOLDS BLVD.
DULUTH GA 30096

Encounter Date:  10/31/2019

Patient:  Shelia Saunders
Health Record Number:  0580369

**VERIFICATION OF TREATMENT**

Shelia Candy Saunders was seen at our medical offices today. She was referred to Intensive Outpatient

Psychotherapy (IOP) due to ongoing work stress as she has 2 EEO charges that have been accepted

and are going into mediation.  She will need to remain out of work with an expected return to work date

of November 18, 2019.  She has appointments that she will need to attend on the following days:

12-20-2019, 1-15-2020 and 1-29-2020.

10-31-2019  3:00PM _____  Michael Gordon, PhD
Date/Time                                    Provider Signature

**Please note:  A copy of this information will be maintained in our medical record.  If validation of this verification is requested, a copy of this form will be forwarded to the requesting party.**

Your Health Care Team,
Michael A Gordon, PhD

# Kaiser Permanente

GLENLAKE PODIATRY
20 GLENLAKE PKWY.
ATLANTA GA 30328

Encounter Date:  12/17/2019

Patient:  Shelia Saunders
Health Record Number:  0580369

To Whom It May Concern:

Shelia Candy Saunders was seen in our office on 12/17/19.
She must continue with her weekly physical therapy until completed, and keep her
future appointments as needed, she will need about an hour to attend each of these
visits.  She may continue with light/ limited duty with shoe wear of choice, and continue
limiting walking and avoid lifting, squatting, stairs, steps or ladders.

Sincerely,

Mohsen  Khoshneviszadeh, DPM
Electronically reviewed and Authenticated by Mohsen  Khoshneviszadeh, DPM
12/17/2019 2:29 PM

# AFTER VISIT SUMMARY


**KAISER PERMANENTE.**

**Shelia C. Saunders**  MRN: 0580369

📅 5/3/2019  8:30 AM  📍 Glenlake Cardiology

## Instructions from Gregory B Ang, MD, FACC, M.D.

Your personalized instructions can be found at the end of this document.

## What's Next

| | | |
|---|---|---|
| MAY **17** 2019 | **Echocardiogram** Friday May 17 9:00 AM | Glenlake Cardiology 20 Glenlake Pkwy ATLANTA GA 30328 404-365-0966 |
| MAY **17** 2019 | **Post Op** with Joseph P Austin, MD, M.D. Friday May 17 10:50 AM | Southwood Vascular Surgery [Southwood Vascular Surgery ] 2400 Mt. Zion Pkwy. JONESBORO GA 30236 404-365-0966 |
| AUG **17** 2019 | **Mammogram** Saturday August 17 3:15 PM If you have had a mammogram at a medical institution outside of Kaiser Permanente Georgia, please bring those images with you.  Do not use deodorant, lotion or talcum powder on the day of the exam. Wear a two (2) piece outfit, the technologist will ask you to undress from the waist up.  If you are pregnant or breast feeding, mammography is not recommended.  You will need to contact you physician. Continue to take any medication that your Practitioner has prescribed for you.  Please arrive fifteen (15) minutes early for parking and check-in. | Southwood Radiology 2400 Mt. Zion Pkwy. Jonesboro GA 30236 404-365-0966 |

## Today's Visit

You saw Gregory B Ang, MD, FACC, M.D. on Friday May 3, 2019. The following issues were addressed:

- PALPITATIONS

| | | | |
|---|---|---|---|
| Blood Pressure **131/78** | | BMI **27.88** | |
| Weight **178 lb** | | Height **5' 7"** | |
| Temperature (Oral) **98 °F** | | Pulse **65** | |
| Respiration **18** | | Oxygen Saturation **100%** | |

# Medications

## ⌁ Visit Medication List

Patient reported, restarted, and new medications relevant to this visit. This may not reflect all medications the patient is taking.

| | Dosage |
|---|---|
| Escitalopram (LEXAPRO) 10 mg Oral Tab (Taking) | Take 1 tablet by mouth every morning for anxiety control. Further dose increases by telephone appointment or behavioral health |
| traZODone (DESYREL) 50 mg Oral Tab (Taking) | Take 1 tablet by mouth at bedtime for anxiety, stress, and sleep. Increase to 2 tablets at bedtime if not improved |

## New Orders

Normal Orders This Visit

**EKG 12 OR MORE LEADS W INT & RPT [93000 CPT(R)]**

| Future Labs/Procedures | No Sooner Than | No Later Than |
|---|---|---|
| **EXTERNAL EKG UP TO 48 HRS MONITOR W RECORDING, ANALYSIS, RPT, PHYSICIAN REVIEW & INT [93224 CPT(R)]** | 5/3/2019 | 8/1/2019 |
| **TRANSTHORACIC ECHO REAL TIME W 2D IMAGE, SPECTRAL AND COLOR FLOW DOPPLER COMPLETE [93306 CPT(R)]** | 8/1/2019 | |

# Orders

## Orders

Normal Orders This Visit

**EKG 12 OR MORE LEADS W INT & RPT [93000 CPT(R)]**

| Future Labs/Procedures | Expected by | Expires |
|---|---|---|
| **EXTERNAL EKG UP TO 48 HRS MONITOR W RECORDING, ANALYSIS, RPT, PHYSICIAN REVIEW & INT [93224 CPT(R)]** | 5/3/2019 | 8/1/2019 |
| **TRANSTHORACIC ECHO REAL TIME W 2D IMAGE, SPECTRAL AND COLOR FLOW DOPPLER COMPLETE [93306 CPT(R)]** | 8/1/2019 | |

Scheduling Instructions:

You have been referred to the Cardiology department for further evaluation.
Please call 404-365-0966 between 8:00 AM and 5:00 PM (Monday-Friday) to schedule your test.
Cardiology Office Locations:
Glenlake Medical Center
Gwinnett Medical Office
Southwood Medical Center
Townpark Medical Center

Common Medication Direction Abbreviations
PO = Orally, QD = Once/day, BID = Twice/day, TID = 3x/day, QID = 4x/day, PRN = as needed

4/16/2019

Chart: CASCADE MEDICAL CENTER

CASCADE INTERNAL MEDICINE

Shelia Saunders
128 COTTONBELLE DRIVE
STOCKBRIDGE GA 30281-9145

Visit Date: 4/16/2019
HRN: 0580369

Dear Shelia Candy Saunders,

Please pick up the new medication as below:

**Orders Placed This Encounter**
- Escitalopram (LEXAPRO) 10 mg Oral Tab
  Sig: TAKE 1 TABLET ORALLY EVERY MORNING FOR ANXIETY CONTROL,
  FURTHER DOSE INCREASES BY TELEPHONE APPOINTMENT OR BEHAVIORAL
  HEALTH.
  Dispense: 90
  Refill: 2

Sincerely,

Charles D Fowler, MD

**Get connected on KP.org! Check your lab results, e-mail your doctor's
office, order prescription refills, manage appointments, view past office
visit info and monitor your on-going health conditions.  All of this
information is available on-line, 24 hours a day, seven days a week.
Register now at KP.org/register.**

If you have any questions concerning this letter or need to schedule an appointment, please contact your healthcare
provider between the hours of 8:00 a.m. and 4:45 p.m. at (404) 365-0966.

Page 1

# Kaiser Permanente

GWINNETT ADVANCED CARE CENTER
3650 Steve Reynolds Blvd
Duluth GA 30096

Encounter Date:  4/1/2019

Patient:  Shelia Saunders
Health Record Number:  0580369

To Whom It May Concern:

Shelia Candy Saunders was seen in our office on 4/1/19

She may return to work 4/5/19

Sincerely,

Raymond A McCarthy, DO

# AFTER VISIT SUMMARY

 **KAISER PERMANENTE.**

**Shelia C. Saunders**  MRN: 0580369          📅 4/1/2019   📍 Gwinnett Advanced Care Center 404-365-0966

## Instructions

 **Read the attached information**
1. ANXIETY PI NATL
2. LIGHTHEADEDNESS PI NATL

## What's Next

**APR 4 2019**
**Office Visit** with Charles D Fowler, MD, M.D.
Thursday April 4 10:40 AM

Cascade Internal Medicine
1175 Cascade Pkwy.
Atlanta GA 30311
404-365-0966

**APR 9 2019**
**Office Visit** with Joseph P Austin, MD, M.D.
Tuesday April 9 10:50 AM

Southwood Vascular Surgery [Southwood Vascular Surgery ]
2400 Mt. Zion Pkwy.
JONESBORO GA 30236
404-365-0966

**AUG 17 2019**
**Mammogram**
Saturday August 17 3:15 PM
If you have had a mammogram at a medical institution outside of Kaiser Permanente Georgia, please bring those images with you.  Do not use deodorant,

lotion or talcum powder on the day of the exam. Wear a two (2) piece outfit,

the technologist will ask you to undress from the waist up.  If you are

pregnant or breast feeding, mammography is not recommended. You will need to

contact you physician. Continue to take any medication that your Practitioner

has prescribed for you.  Please arrive fifteen (15) minutes early for parking and check-in.

Southwood Radiology
2400 Mt. Zion Pkwy.
Jonesboro GA 30236
404-365-0966

## Today's Visit

**Reason for Visit**
DIZZY

**Diagnoses**
- DIZZINESS
- ANXIETY

**⚕ Lab Tests Completed**
TROPONIN I

**🖼 Imaging Tests**
CT SCAN HEAD

EKG 12 OR MORE LEADS W INT & RPT

**Your End of Visit Vitals**

| | |
|---|---|
| Blood Pressure **137/76** | Temperature **97.9 °F** |
| Pulse **63** | Respiration **16** |
| Oxygen Saturation **100%** | |

## 🏥 Treatment Team

| Provider | Role |
|---|---|
| Do Raymond A McCarthy, D.O. | Physician |

## You are allergic to the following

# AFTER VISIT SUMMARY



**KAISER PERMANENTE.**

**Shelia C. Saunders**  MRN: 0580369      📅 4/4/2019 10:40 AM   📍 Cascade Internal Medicine

## Instructions from Charles D Fowler, MD, M.D.

Your personalized instructions can be found at the end of this document.

 **Return in about 6 weeks**
(around 5/16/2019) for Routine follow up, sooner if worse or new issues.

## What's Next

**APR 9 2019**
**Office Visit** with Joseph P Austin, MD, M.D.
Tuesday April 9 10:50 AM

Southwood Vascular Surgery [Southwood Vascular Surgery ]
2400 Mt. Zion Pkwy.
JONESBORO GA 30236
404-365-0966

**AUG 17 2019**
**Mammogram**
Saturday August 17 3:15 PM
If you have had a mammogram at a medical institution outside of Kaiser Permanente Georgia, please bring those images with you.  Do not use deodorant,

lotion or talcum powder on the day of the exam. Wear a two (2) piece outfit,

the technologist will ask you to undress from the waist up.  If you are pregnant or breast feeding, mammography is not recommended.  You will need to

contact you physician. Continue to take any medication that your Practitioner

has prescribed for you.  Please arrive fifteen (15) minutes early for parking and check-in.

Southwood Radiology
2400 Mt. Zion Pkwy.
Jonesboro GA 30236
404-365-0966

# Medications

## NEW Medications

traZODone (DESYREL) 50 mg Oral Tab

## Today's Visit

You saw Charles D Fowler, MD, M.D. on Thursday April 4, 2019. The following issues were addressed:

- ASTHMA
- CERVICAL DISC DEGENERATION
- GERD (GASTRO-ESOPHAGEAL REFLUX DISEASE) (HEARTBURN)
- LUMBAR DISC DEGENERATION
- LUMBAR DISC HERNIATION
- MIGRAINE
- HYPERLIPIDEMIA, MIXED (HIGH BLOOD FATS)
- OSTEOARTHRITIS OF BILATERAL KNEES
- PANIC ATTACK
- PREDIABETES
- REACTIVE DEPRESSION
- STRESSFUL WORK SCHEDULE
- HISTORY OF DEPRESSION
- INSOMNIA DISORDER, PERSISTENT
- ACUTE STRESS DISORDER
- AFTERCARE FOLLOWING EMERGENCY DEPARTMENT VISIT
- GENERALIZED ANXIETY DISORDER

| | | | |
|---|---|---|---|
|  Blood Pressure **125/68** | | BMI **28.19** | |
| Weight **180 lb** | | Height **5' 7"** | |
| Temperature (Oral) **97.9 °F** | | Pulse **73** | |
| Respiration **18** | | Oxygen Saturation **98%** | |



# AFTER VISIT SUMMARY

 **KAISER PERMANENTE.**

**Shelia C. Saunders**  MRN: 0580369    📅 3/11/2019   📍 Gwinnett Advanced Care Center 404-365-0966

---

## Instructions

We do not have the results of all of your labs yet.
Return as soon as possible

 **Read the attached information**
PALPITATIONS PI NATL

 **REFERRAL CARDIOLOGY**
Expires: 9/7/2019 (requested)
You have been referred to the Cardiology department for
further evaluation.
Please call 770-677-6304 or 1-800-611-1811 between 8:00 AM
and 5 PM (Monday-Friday) to schedule your consult
appointment.
Cardiology Offices Locations:
Glenlake Medical Office
Gwinnett Medical Office
Southwood Medical Office
Townpark Medical Office

 **Follow up with Charles D Fowler, MD, M.D.**
Specialty: Internal Medicine
Contact: Internal Medicine Health Care Team A
    1175 Cascade Parkway, SW
    Atlanta GA 30311-3090
    404-365-0966

---

## What's Next

APR
**4**
2019

**Office Visit** with Charles D Fowler,
MD, M.D.
Thursday April 4 10:40 AM

Cascade Internal
Medicine
1175 Cascade Pkwy.
Atlanta GA 30311
404-365-0966

## Today's Visit

**Reason for Visit**
PALPITATIONS

**Diagnoses**
- PALPITATIONS
- PATIENT DECLINES INFLUENZA
  VACCINATION

**⚕ Lab Tests Completed**
BASIC METABOLIC PANEL
CBC (COMPLETE BLOOD COUNT)
CREATINE KINASE
D-DIMER
MAGNESIUM
THYROID STIMULATING HORMONE
TROPONIN I
WHITE BLOOD CELL DIFFERENTIAL

**📖 Imaging Tests**
CHEST XRAY
EKG 12 OR MORE LEADS W INT &
RPT

**📋 Done Today**
INITIATE CARDIOPULMONARY
MONITORING
INSERT SALINE LOCK

---

**Your End of Visit Vitals**

 Blood
Pressure
**118/71**

Weight
**170 lb**

 Temperature
**99.1 °F**

 Respiration
**17**

BMI
**26.47**

Height
**5' 7.2"**

 Pulse
**76**

 Oxygen
Saturation
**99%**

---

# AFTER VISIT SUMMARY



**KAISER PERMANENTE**

**Shelia C. Saunders**  MRN: 0580369      📅 4/16/2019 11:20 AM   📍 Cascade Internal Medicine



## Instructions from Charles D Fowler, MD, M.D.

Your personalized instructions can be found at the end of this document.

**Return in about 3 months**
(around 7/16/2019) for Routine follow up, sooner if worse or new issues.

## What's Next

**APR 23 2019**  **Consult** with Andrew N Kobylivker, MD, M.D.
Tuesday April 23 3:30 PM
If fasting, do not eat or drink after 11 PM.

IF YOU ARE PREGNANT, DO NOT FAST unless specifically ordered by your physician.

Cascade Cardiology
1175 Cascade Pkwy
Atlanta GA 30311
404-365-0966

**AUG 17 2019**  **Mammogram**
Saturday August 17 3:15 PM
If you have had a mammogram at a medical institution outside of Kaiser

Southwood Radiology
2400 Mt. Zion Pkwy.
Jonesboro GA 30236
404-365-0966

Permanente Georgia, please bring those images with you.  Do not use deodorant,

lotion or talcum powder on the day of the exam. Wear a two (2) piece outfit,

the technologist will ask you to undress from the waist up. If you are

pregnant or breast feeding, mammography is not recommended.  You will need to

contact you physician. Continue to take any medication that your Practitioner

has prescribed for you.  Please arrive fifteen (15) minutes early for parking and check-in.

## Today's Visit

You saw Charles D Fowler, MD, M.D. on Tuesday April 16, 2019. The following issues were addressed:

- STRESSFUL WORK SCHEDULE
- ADJUSTMENT DISORDER W DEPRESSED MOOD
- ANXIETY DISORDER DUE TO ANOTHER MEDICAL CONDITION
- LUMBAR DISC HERNIATION
- MIGRAINE
- ASTHMA
- PALPITATIONS

| | | | |
|---|---|---|---|
| Blood Pressure **126/82** | | BMI **27.10** | |
| Weight **173 lb** | | Height **5' 7"** | |
| Temperature (Oral) **97.8 °F** | | Pulse **75** | |
| Respiration **16** | | Oxygen Saturation **100%** | |

# Medications

# Kaiser Permanente

GWINNETT ORTHOPEDICS
3650 STEVE REYNOLDS BLVD
DULUTH GA 30096

Encounter Date:  1/28/2020

Patient:  Shelia Saunders
Health Record Number:  0580369

To Whom It May Concern:

Shelia Candy Saunders was seen in our office on 1/28/2020, and she is under my care
for an orthopedic issue that requires ongoing treatment.

Her course of treatment has been delayed due lack of accommodation for physiotherapy
appointments.

Physiotherapy has been re-ordered and she is required to attend the prescribed
physiotherapy appointments 1-2 times per week in order to avoid further interruptions in
her prescribed treatment plan.

Sincerely,

Monique A Grey-McBride, MD
Electronically reviewed and Authenticated by Monique A Grey-McBride, MD
1/28/2020 3:54 PM

# Kaiser Permanente

GWINNETT MEDICAL OFFICE
3650 STEVE REYNOLDS BLVD.
DULUTH GA 30096

Encounter Date:  1/15/2020

Patient:  Shelia Saunders

## VERIFICATION OF TREATMENT

Shelia Candy Saunders was seen in our medical offices today.  She would continue to benefit from a low

stress environment and it is critical that all medical restrictions are adhered to.  She will also have hour

long follow up appointments to attend that are currently scheduled.

1-15-2020    12:30PM          Michael P Gordon, Ph.D
Date/Time                              Provider Signature

**Please note:  A copy of this information will be maintained in our medical record.  If validation of
this verification is requested, a copy of this form will be forwarded to the requesting party.**

Your Health Care Team,
Michael A Gordon, PhD

# Kaiser Permanente

CASCADE INTERNAL MEDICINE
1175 CASCADE PKWY.
ATLANTA GA 30311

Encounter Date: 1/30/2020

Patient: Shelia Saunders
Health Record Number: 0580369

**VERIFICATION OF TREATMENT**

Ms.Shelia Candy Saunders was seen most recently at our medical offices on 1/30/20 .

She may resume work on 2/4/20 with the following restrictions and accommodations per her Podiatrist, Mohsen Khoshneviszadeh, DPM, her Orthopedic Surgeon, Monique A Grey-McBride, MD, Michael A Gordon, PhD, her Behavioral Health Provider, and Charles D Fowler, MD , her Internal Medicine Physician.

It appears that Shelia Candy Saunders' course of treatment has been delayed due lack of accommodation on the part of her employer/supervisor for physical therapy and specialty follow up appointments.

Physiotherapy has been re-ordered and she is required to attend the prescribed physiotherapy appointments 1-2 times per week in order to avoid further interruptions in her prescribed treatment plan. Her physiotherapy appointments require at least 45 minutes travel time each direction to and from her appointment and also 1 additional hour to actually complete the scheduled treatment for a total of 2 1/2 hour away from her position per treatment day. She must be allowed continue with her weekly physical therapy until completed. She must be allowed to schedule and keep all her future Internal Medicine, Podiatry, Orthopedics and Behavioral Health appointments.

She may continue with light/ limited duty with shoe wear of choice, and continue limiting walking and avoid lifting, squatting, stairs, steps or ladders. She requires a high back, ergonomic chair with adjustable height, incline and depth

If there are additional questions please contact me as below so that we can arrange a mutual time to discuss this further and clarify these requirements for accommodation.

Sincerely,

Charles D Fowler, MD
Internal Medicine, Cascade Medical Office
Phone: 404-365-0966, 404-364-7243
Fax: 404-505-4192

# Kaiser Permanente

CUMBERLAND PODIATRY
2525 CUMBERLAND PKWY.
ATLANTA GA 30339

Encounter Date: 2/3/2020

Patient: Shelia Saunders
Health Record Number: 0580369

To Whom It May Concern:

Shelia Candy Saunders was seen in our office on 2/3/2020.
She must continue with her weekly physical therapy until completed, and keep her
future appointments as needed. She will need about an hour for each of these visits in
addition to her travel time. She may continue with light/ limited duty with shoe wear of
choice, and continue limiting walking and avoid lifting, squatting, stairs, steps and
ladders.

Sincerely,

Mohsen Khoshneviszadeh, DPM
Electronically reviewed and Authenticated by Mohsen Khoshneviszadeh, DPM
2/3/2020 11:52 AM

# Kaiser Permanente

GWINNETT MEDICAL OFFICE
3650 STEVE REYNOLDS BLVD.
DULUTH GA 30096

Encounter Date: 2/19/2020

Patient:  Shelia Saunders
Health Record Number:  0580369

**VERIFICATION OF TREATMENT**

Shelia Candy Saunders was seen at our medical offices today.  She is being referred for intensive

treatment and will need to be out of work until April 1, 2020.

2- 19-2020 12:30PM          Michael Gun, PhD
Date/Time                              Provider Signature

**Please note:  A copy of this information will be maintained in our medical record.  If validation of
this verification is requested, a copy of this form will be forwarded to the requesting party.**

Your Health Care Team,
Michael A Gordon, PhD

# EXHIBIT

# E

# DRESS CODES

**Saunders, Shelia**

| | |
|---|---|
| **From:** | Delaney, Moses |
| **Sent:** | Monday, December 16, 2019 5:53 PM |
| **To:** | Panchana, Mirka; Gooden, Kelly; Salinas, Monica; Goodman, Kimberly; Saunders, Shelia; Harris, Kelly; Lemon, Slade; Cantrell, Tasha; Bullard, Meghan; Brant, Johnathan; Lawson, Raven; Williams, Patricia; Williams, Lori; Mauldin, Calvin; Mercedes, Hernan; Dunn, Katina Renee'; Maddi, Felidia; Anochie, Margaret; Davis, Yolanda; Evans-Jones, Jalyne; Norton, Kimberlee; Nwankwo, Andrea; Coleman, Carol; Simms, Carolyn; Snell, Kelvin; Cheng, Pei-Chun; Durham, Quentin; Jones, Allen; Miller, Daryl; Cole, Hugh; Brame, David; Blair, Amber; Browder, Angela; Carswell, Angela; Coombs, Andrea; Green, Michaela; Moorer, Shimeka; Stafford, Bertina; Sumpter, Brydai; Gordon, Deborah; Panchana, Elena; Waller, Tahirah; Cabrera, Diana; Green, Rubina; Harp, Nikiti; Montilla, Natalia; Simmons, Shamika |
| **Cc:** | Ford, Kris |
| **Subject:** | 2020 and beyond: Student Tattoos, Piercings, Hair Color |

Hello Mighty Norcross,

This year we saw a lot of change, growth, and success from every department. We conducted over 20 program advisory committees and a great majority of our graduates were hired. Again, we had a great year.

One consistent comment from employers centered on student hair color; this has been a frequent issue. We even have students who were not hired due to hair color and other soft-skills. For 2020, let us do what is in the best interest of our students and better prepare them for the workforce. The below paragraph comes from our School Catalog. This catalog has been approved by our Home Office, the State of Georgia (GNPEC), and our accrediting body ACCSC. As we go into 2020, let's be sure we are supporting our campus' dress code.

- Admissions: Please ensure the below expectation is clearly communicated.
- Academics: Please share this with students. Be sure to communicate it well; it should not result in us having an upset student. Let's be effective with our approach and messaging.
- Career Services: I would imagine this is met with favor. (?) As a campus, we can better prepare our students for the workforce.
- All Departments: Please note that only <u>non-religious</u> head wraps are prohibited; religious head wraps are permitted to be worn on campus.


Many thanks,
MD

# DRESS CODE

Students may not dress in a manner detrimental to the stude limited to clothing which has expressed or implied offensive symbo of the first impression of proper dress, hygiene and grooming atmosphere. In most cases, students are required to wear uni represent attire typically worn in the workplace associated with the Hats, non-religious head wraps and head scarves may not be wo visible tattoos, remove piercings or to display a natural hair color w Students can discuss dress code exceptions with their Academic of the Academic Dean and/or Campus Director to approve or den

https://www.altierus.edu/campus/norcross

# EXHIBIT

# F

# INVESTIGATION

# PAULA

# JAHRAUS



**ECMC**
Group

April 26, 2019

Shelia Saunders
128 Cottonbelle Drive
Stockbridge, GA 30281

RE:  Complaint - Investigation

Dear Ms. Saunders:

We have received a notice from the EEOC that indicates you have filed a charge of discrimination on the basis of religion.  You are certainly free to exercise that right, and we will cooperate with and not interfere with the agency's process.  Please understand that the Company has a policy that strictly prohibits harassment and discrimination in the workplace and, per our policy, we need to investigate concerns of discrimination, harassment or retaliation.  We take our policy seriously.

To be clear, the Company's policy states that ECMC Group is an equal opportunity employer that prohibits discrimination and harassment on the basis of religion and any other legally-protected characteristic.  The policy also provides, "when a report is received, the Company will conduct a fair, timely, thorough and objective investigation" and "if the Company determines that a violation has occurred, remedial action will be taken, commensurate with the severity of the offense..."  Our policy also prohibits retaliation against any individual who reports an allegation of harassment or discrimination, or who participates in the Company's investigation.

Pursuant to our policy, we seek to move forward with a workplace investigation into your allegations.  It is my understanding that you are currently out of the office on a medical leave of absence.  If you would like to schedule a time to connect before you return, please feel free to contact me and we can coordinate a time to talk at your convenience.  Otherwise, I will contact you to schedule a time to connect following your return to work.  Thank you in advance for your cooperation, and please feel free to contact me at any time if you have any questions or concerns in the meantime.

Sincerely,

Paula Jak

Paula Jahraus
Employee Relations Manager
pjahraus@ecmc.org
612-325-3214

# EXHIBIT
# G
# Recognition
# Letter

**Saunders, Shelia**

| | |
|---|---|
| **From:** | Moorer, Shimeka |
| **Sent:** | Wednesday, November 14, 2018 10:40 AM |
| **To:** | Sumpter, Brydai; Delaney, Moses; Pfluke, Deanna; Coombs, Andrea; Williams, Patricia; Burt, Danielle; Green, Michaela; Panchana, Elena; Waller, Tahirah; Marlin, James; Tate, Pamela; Jones, Melissa; Harp, Nikiti; Chappell, Anthony; Norton, Kimberlee |
| **Cc:** | Gordon, Deborah; Saunders, Shelia |
| **Subject:** | RE: Recognition |

"Intentionally...."

I think I like that!!

**From:** Sumpter, Brydai
**Sent:** Wednesday, November 14, 2018 11:28 AM
**To:** Moorer, Shimeka <smoorer@altierus.edu>; Delaney, Moses <mdelaney2@altierus.edu>; Pfluke, Deanna <DPfluke@altierus.edu>; Coombs, Andrea <acoombs@altierus.edu>; Williams, Patricia <PatrWilliams@altierus.edu>; Burt, Danielle <dburt@altierus.edu>; Green, Michaela <mgreen1@altierus.edu>; Panchana, Elena <epanchana@altierus.edu>; Waller, Tahirah <TWaller@altierus.edu>; Marlin, James <jmarlin@altierus.edu>; Tate, Pamela <PTate1@altierus.edu>; Jones, Melissa <mjones@altierus.edu>; Harp, Nikiti <NHarp@altierus.edu>; Chappell, Anthony <achappell@altierus.edu>; Norton, Kimberlee <KNorton@altierus.edu>
**Cc:** Gordon, Deborah <DeGordon@altierus.edu>; Saunders, Shelia <SSaunders@altierus.edu>
**Subject:** RE: Recognition

Wow Shimeka,

It is awesome to be a part of a team (All of you) who relentlessly strive to meet the needs of students in the process of changing their lives for the best! Kudos to all!  This is what WE DO!

Intentionally,

*Ms. Brydai*

---

**From:** Moorer, Shimeka
**Sent:** Wednesday, November 14, 2018 9:05 AM
**To:** Delaney, Moses <mdelaney2@altierus.edu>; Pfluke, Deanna <DPfluke@altierus.edu>; Sumpter, Brydai <BSumpter@altierus.edu>; Coombs, Andrea <acoombs@altierus.edu>; Williams, Patricia <PatrWilliams@altierus.edu>; Burt, Danielle <dburt@altierus.edu>; Green, Michaela <mgreen1@altierus.edu>; Panchana, Elena <epanchana@altierus.edu>; Waller, Tahirah <TWaller@altierus.edu>; Marlin, James <jmarlin@altierus.edu>; Tate, Pamela <PTate1@altierus.edu>; Jones, Melissa <mjones@altierus.edu>; Harp, Nikiti <NHarp@altierus.edu>; Chappell, Anthony <achappell@altierus.edu>; Norton, Kimberlee <KNorton@altierus.edu>
**Cc:** Gordon, Deborah <DeGordon@altierus.edu>; Saunders, Shelia <SSaunders@altierus.edu>
**Subject:** Recognition
**Importance:** High

# Good Morning, Mighty Norcross!!!!

I want to take the time to recognize two amazing individuals who went out of their way to assist a prospective student, Rashawn White-Pam (CIT):

**Deborah Gordon**
**Shelia Saunders**

Mrs. Gordon stayed past her normal schedule to ensure that this student had a clear path with Financial Aid.
Ms. Saunders accompanied me in walking the student, just shy of 8pm, and directing him to the nearest bus stop to ensure he safely made it home.

As you can see in the email below, the student is excited, as he messaged us upon his arrival.

**\*\*Honorary Mention: Mrs. Brydai Saunders, who also stayed late, encouraged the student with nuggets of wisdom.\*\***

I cannot tell you how much I enjoy working with, not just Mrs. Gordon and Mrs. Saunders, but the rest of this amazing faculty and staff.  This is why our students are so successful!!

Thank you, thank you, and thank you!!! ☺

**From:** Rashawn Rahiem White-Pam [mailto:rashaunwhite3@gmail.com]
**Sent:** Wednesday, November 14, 2018 2:56 AM
**To:** Moorer, Shimeka <smoorer@altierus.edu>
**Subject:** Made it home safe

Hey i made it home safe

# EXHIBIT

# H

# PROMOTION

# FOR CAPTAIN

**Honeable** = Are you open to feedback?  Do you self-reflect?  Are you better this month then last?  Does failure refine or define you?  Do you present as humble?

**Honorable** = Above all else, do take the high road?  Do you seek counsel with risk/concerns?  When no one else is looking what do you do?

Reflecting these items is a good place to start as your think of your influence within your campus, department and Center of Excellence.

Thanks for all you do,

**Jacob Kassuba**
Executive Director | Campus Operations | C: 616-516-9082

<< OLE Object: Picture (Device Independent Bitmap) >>

-----Original Appointment-----
**From:** Kassuba, Jacob
**Sent:** Wednesday, August 15, 2018 9:36 AM
**To:** Kassuba, Jacob; Drago, Victoria; Gooden, Kelly; Hutton, Garth; Jaigobind, Neil; Jones, Melissa; Leonard, Garry; Martinez, Betty; Moore-Pizon Jr, Thomas; Norton, Kimberlee; Olivares, Delilah; Panchana, Elena; Pettigrew, Niall; Saunders, Shelia; Tate, Pamela; Erpelding, Jennifer
**Cc:** Panchana, Mirka; tnlady21@aol.com; Delaney, Moses; Salmanzadeh, Nasser
**Subject:** Centers of Excellence - Captain Meeting
**When:** Tuesday, August 21, 2018 3:00 PM-4:00 PM (UTC-05:00) Eastern Time (US & Canada).
**Where:** https://ecmc.zoom.us/j/127867699

This will be our first meeting.  The point of this meeting is for everyone to meet and for you to come with ideas on next steps.  Please join in to the Zoom meeting with your camera on.  Feel free to join with peers from your campus in your Zoom room if easier.  Look forward to seeing everyone.

Thanks for all you do,

<< Message: Centers of Excellence - Captains! >>



Hi there,

Jacob Kassuba is inviting you to a scheduled Zoom meeting.

# Join Zoom Meeting

# EXHIBIT

# I

## ACCOMODATION LETTER

# FROM ECMC BENEFITS TEAM



**ECMC**
Group

111 Washington Avenue South, Suite 1400, Minneapolis, MN 55401   P 651-221-0566

February 5, 2020

Shelia Saunders
128 Cottonbelle Drive
Stockbridge, GA 30281

**RE: Ongoing Accommodation Request**

Dear Shelia:

This letter is in response to your recent submittal of medical information on January 30, 2020.

As you know, we have been engaged in an ongoing interactive dialogue with you regarding your ability to perform the essential functions of the *Academic Advisor* position that you occupy, with or without reasonable accommodation. After you exhausted the time off available to you under the FMLA on June 24, 2019, ECMC Education provided you with additional extended leave time and multiple extensions, at your request. In connection with your return to work in December 2019, we have had several communications regarding your additional and ongoing request for accommodations. These discussions related to your request for an ergonomic chair that differed from the ergonomic chair we previously provided in compliance with the information received from you and your provider, in office restrictions identified by your provider without an estimated duration, and your request for ongoing intermittent time away from work to attend to medical appointments. We identified the additional information needed from your provider(s) to allow us to appropriately evaluate your accommodation requests. In the interim, we have accommodated your physical restrictions in the workplace and we also informed you of the options you had for entering the intermittent time off you needed to take for medical appointments. To this end, we directed you in mid-December 2019 to enter your time away for medical appointments as "Accommodation" time. We explained that you could choose to use your available PTO to cover that time away, or you could instead take the time off on an unpaid basis. We also clarified that the job-protected nature of the accommodated status of the time would be confirmed following receipt of the information requested from your medical provider(s).

We subsequently received much of the information we had requested in our ongoing dialogue with you on January 30, 2020. We were surprised to see in the documentation from your providers on January 30, 2020 that they are under the impression that ECMC Education did not permit you to take time off to attend to physical therapy and specialty follow up appointments following your return to work in December 2019. As described above, we informed you how to enter the time off you would need to attend to medical appointments due to your medical condition(s), and we are unaware of any medical appointments for which you were denied time off to attend. If you have any questions about time off requested as an accommodation, or if you believe there has been any confusion, please feel free to reach out to us.

- At this time, based on the information your providers have provided, ECMC Education has approved the following requested accommodations: Duration of Continuous Time Off: June 25, 2019 through August 25, 2019
- Duration of Continuous Time Off: September 4, 2019 through September 30, 2019
- Duration of Continuous Time Off: October 1, 2019 through November 17, 2019
- Duration of Continuous Time Off: November 18, 2019 through December 8, 2019
- Duration of Continuous Time Off: January 30, 2020 through February 3, 2020



**ECMC**
Group

111 Washington Avenue South, Suite 1400, Minneapolis, MN 55401   P 651-221-0566

- Frequency and Duration of Intermittent Time Off:

  o Physical Therapy: Your providers have indicated that you will need to attend physical therapy appointments 1-2 times per week. They have indicated each appointment will last one hour and that you will need 45 minutes travel time, to and from, the appointments. We have therefore approved intermittent time off to attend physical therapy appointments, up to 2 absences per 1 week with each absence lasting up to 2.5 hours. Your providers have not yet identified the estimated duration of your need for time off for physical therapy appointments. At this time, we have approved this accommodation from December 9, 2019 through April 22, 2020.

  o Specialty Follow Up: Your provider has indicated that you have specialty follow up appointments scheduled on February 12, 2020, February 26, 2020, March 11, 2020, March 25, 2020, April 8, 2020 and April 22, 2020. He indicated these appointments will last one hour, each. ECMC Education has approved intermittent time off for these medical appointments.

  o Other medical appointments: Your provider has indicated you will need time off to attend to other medical appointments. We have not received information regarding the estimated frequency and duration of time off needed for such other appointments. Please provide that information, and we will evaluate it and inform you of the scope of additional time off that may be approved to the extent such time off is related to your medical condition(s).

- Ergonomic Chair: We have approved your request for an additional ergonomic chair. This one will be a high back ergonomic chair with adjustable height, incline and depth.
- Workplace Restrictions: We have approved your request for a continuation of the following physical restrictions in the workplace: Light/limited duty wearing shoe of choice, continuation of limited walking, avoid lifting, squatting, stairs, steps or ladders.

If you have concerns about the parameters of this accommodation as outlined above, or if you believe there has been any misunderstanding about the scope and nature of workplace accommodation(s) you are seeking, please let us know as soon as possible. In the meantime, we will proceed with this accommodation.

We will be in touch near the end of to discuss whether you and your provider believe you will need accommodation beyond that timeframe and what accommodation(s) you may seek at that time. We will then engage in further interactive discussion, if needed, to determine what, if any, reasonable accommodation can be provided consistent with our business needs. Please contact us if you have any questions at leaves@ecmc.org or call 1-855-217-0910.

Thank you,

ECMC Benefits Team
(O) 855-217-0910
(F) 651-325-4074


Cc:   Managers: Moses Delaney, David Brame
      HR Business Partner: Kris Ford

# EXHIBIT

# J

# REBUTTAL

# LETTERS

**From:** Saunders, Shelia <SSaunders@altierus.edu>
**Sent:** Monday, March 11, 2019 2:54 PM
**To:** Eubanks, Paul <peubanks@altierus.edu>
**Cc:** Harp, Nikiti <NHarp@altierus.edu>; Ford, Kris <KFord@ecmc.org>; Delaney, Moses <mdelaney2@altierus.edu>; Saunders, Shelia <SSaunders@altierus.edu>
**Subject:** RE: Inappropriate language discussion and change of my language in it's totality

This is my rebuttal to the accusations and lies that have defame my professional and personal character and the threats I was subjected to, of losing my job.

**First Accusation/:Untruth**

This was made on February 13, 2016 by Dr. Paul Eubanks, Academic Dean, who stated that I had approached Ms. Alice Lofton class unprofessionally, told student to put on her uniform top and told the student to come to the front of the class. **See email dated Feb 14, 2019**
Ms. Lofton has categorically denied Dr. Eubanks statement as an untruth. The other two instructors he alleged said the same thing, verbally denied saying so.

On Feb 14- Dr. Eubanks stated in his email to me that there is a need for a more thorough investigation. My question is investigation of WHAT? An untruth in which was told. Yes, in this respect I'd agree. **See email dated Feb 14 @11:41 am**

**Second Accusation/Untruth:**

On February 22, Dr. Eubanks reached out to me again while I was on a medical leave from my doctor until the 25th of February, stating he wanted to talk again about having additional complaints from 3 more instructors. Melissa Jones, who has denied telling him anything derogatory about me. Ms. Moore and Dr. Mercedes, who indicated that the situation wasn't that serious and didn't seem to be serious to the student.
Again, I am finding myself wrestling with Dr. Eubanks over an untruth that he is diligently trying very hard to prove true. He has also failed to initially admit the names of the people he has said had made these accusations. He said if he gives names he'd have to make it a formal investigation.

**Third Accusation: Religion**

On February 25th, Dr. Eubanks pulled me back into his office again to talk about religious statements I am making to students and instructors about God, He says it is an unacceptable form of communication in the workplace environment. I mentioned to him that I never approach staff or students about religion or God. But because colleagues and students are aware that I am an Ordained Minister, Pastor, it would make sense if they have a spiritual need at the time, they would accost me. They initiate. They have asked me to pray for them and I have. This is not a common or routine thing that is done at the school. The **religious persecution** that I have endured has weaken my faith in what this school stands for and my health.

Ironically, we use prayer and God at our graduation and on campus through emails, during orientation etc.

**Threat:**

Dr. Eubanks has threaten me with the loss of my job if I continue with making religious statements. This is ironic since a majority of the staff talks about God frequently but yet, I am the only one that is singled out.

Medical:

I am currently under the supervision and guidance of my doctor. I am undergoing physical therapy and medications for the immeasurable amount of emotional and psychological stress I have endured from this experience.

---

**From:** Eubanks, Paul <peubanks@altierus.edu>
**Sent:** Tuesday, February 26, 2019 2:28 PM
**To:** Saunders, Shelia <SSaunders@altierus.edu>
**Cc:** Harp, Nikiti <NHarp@altierus.edu>; Ford, Kris <KFord@ecmc.org>; Delaney, Moses <mdelaney2@altierus.edu>
**Subject:** Inappropriate language discussion

Mrs. Saunders,

Today we spoke on the topic of inappropriate language and speech as it relates to communicating with students, faculty, and staff alike. I communicated to you that speaking and referencing religion, and specific belief systems is an unacceptable form of communication in the workplace environment. I conveyed that some people are uncomfortable with this type of communication therefore, it should be removed from use in your daily work related communications. You were also informed that if this type of communication continued; it would result in a written warning and could ultimately lead to termination if the issue was not resolved following a formal written warning. This meeting took place with Ms. Harp (Career Services Director) present in my office to ensure that the conversation was witnessed.  You now have awareness of the expectations related to appropriate speech. Your participation is required and appreciated.

Sincerely,
**Paul Eubanks, Ed.D.**
**Altierus Career College, Norcross**
Academic Dean | P: 678-892-2728 |
1750 Beaver Ruin Road | Norcross, GA 30093

 **ALTIERUS**

**Subject**   Retaliation , harassment, sexual harassment , & discrimination

**From**   godsnewbeginning@bellsouth.net

**To:**   Apostle Candy <godsnewbeginning@bellsouth.net>

**Date**   Tue, Sep 24 2019 at 3:50 AM

This is an epitome of the continued harassment, bullying and retaliation that I have experience during my tenure at Altierus College.

On April 1, 2019 when I was being accused by Mr. Delaney of falsifying my time and threathen to write me up for something I DID NOT do. During this "highly" stressful time and the ongoing mental attacks against me, my health was being detrimentally affected. I asked Mr. Delaney if I can leave to go to the doctor because I was feeling very sick and he blatantly "denied" me to leave saying, " He was not going to give me permission to leave". I forcefully struggled to work the remainder of my shift work and immediately went to the hospital when I left work that evening. The doctor at the hospital after immediately giving me an EKG said I was having "heart palpitations" resulting from working in a negative and stressful environment that was damaging my health and adversely affecting my life. The doctor immediately took me off of work for 5 days.

During this time, I went to see my Behavioral Health Counselor who is well aware of the physical, psychological and emotional torture I was dealing with on the job. He also took me off of work for a period of 12 weeks and I had to go to Group Therapy as a result. He also recommend for me not to return to that environment.

My medical condition had worsen and I ended up having surgery on my leg as a result of the treatment I was enduring on the job.

I was kept out of work by my doctor's and counselor from April 1 to August. I returned to work on August 26.

On August 26, I shockingly discovered Mr. Delaney had moved my office and personal items without my knowledge and permission. He "intentionally" did not inform me this was going to take place. This is another example of the retaliation and harassment I experienced. He moved me into a very small office. I asked why he moved me to the same small office that I had refused a year ago, when he first asked me where would I like to moved to, he showed me three offices I refused two and the third office that I chose was three sizes bigger than the one he move my items to...His unacceptable excuse was " You should be glad you have an office" other people don't even have an office, and that they were making some  changes. They promoted an instructor in my absence to the Academic Advisor and gave her the large office that the Academic Dean was occupying at the time of my medical leave. I informed Mr. Delaney that personal items of mine were missing since they moved my items without my permission, he said, he had personally watched over the move and still my items were missing.

At this point, I felt violated, demeaned, betrayed and bullied because they went into my personal space and moved personal items without my knowledge or permission and didn't provided security to make sure my items would be safe and not stolen. During my first day back to work, Mr. Delaney also started acting very nice to me, saying "he wanted us to get off to a good start and rebuild our trust. I expressed that all I've ever wanted was to work in

a peaceful environment with a peaceful solution. He further said he knew it would take me some time to trust him."

This behavior on the part of Mr. Delaney was confusing to me because of his past actions towards me. Nevertheless, I foolishly gave him the benefit of the doubt. I say foolishly, because four (4) days later on September 3, 2019, the day after Labor Day holiday, Mr. Delaney came to me and said " We need to have a one on one. I was surprised because I didn't know why and the meaning of it other than to discuss the next move in the reconstruction of this building a trusting relationship and getting off to a good start. Unfortunately, that was not the case.

Mr. Delaney abruptly started harassing and retaliating by saying "we have some unfinished business back in March that we need to finish and we need to finish that business now". He further said he needed to "write me up for the overtime" that I had before I left going on my medical leave. I was taken aback and saw this behavior as another "ploy" to harass, bully and retaliate against me.

I told him I wasn't going to sign anything and he said ok and that he was going to  have a witness to the meeting. Again, I was confused because several days earlier Mr. Delaney was putting up a façade of building a better rapport but instead he was back to his vicious and hurtful ways. He had become a real Dr. Jekyl and Hyde persona. He brought in Mrs. Nikki Harp into the meeting. This is the same person they brought in when the Dean threaten to terminate me if I continued to use religious language on the job.

Again, I was only back at work for four (4) days and urgently had to return back to the hospital on Sept 3 and then again on September 4 due to heart palpitations, headaches and blurred vision. Dr. Christopher Armour took me off work duty for 2 weeks stating he will not allow me to work in a "hostile" environment because of what it was doing to my health. Dr. Armour said I could return to work on September 17th and he advised me to follow up with Dr. Gordon my Behavioral Counselor to determine when I would be able to go back to work after being evaluated by my Psychiatric Dr. Gordon. After being evaluated I was referred to Dr. Moshen khoshneviszadeh. Further, Dr. Moshen gave me an additional 4 weeks for intensive physical therapy treatment and said I could return to light duty which will be determine after the completion of my physical therapy.

I feel Enough is Enough! Alterius College and Mr. Delaney and the Dean of the college at the time, has subjected me to a continuation of unfair treatment and an "unchecked" practice of harassment, religious persecution, retaliation and discrimination.

Sadly, I am currently under my medical doctor's care and the psychiatric care of my Behavior Counselor due to the "excessive" stress, harassment and retaliation I was subjected to. Further, during sessions with the Counselor it was "uncovered" that I had been exposed to sexual harassment by the Academic Dean, Dr. Eubanks. Something I had buried deep in my psyche throughout this time.

Unfortunately, and painfully, Alterius College and it's representatives were not trying to find a solution instead they were intentionally creating more problems for me, to the extent my physical, psychological, emotional health were affected and damaged.

The above factual statements of the events that transpired during my tenure at Alterius College can be corroborated.

I can only pray that a resolution to the "inhumane" treatment that I experience on the job is no longer allowed to disrupt and ruin the lives of others as it has mine.

Sincerely,
Mrs. Shelia Saunders

Jonathan Young

This is my rebuttal to the following events that transpired with my employer Alterius College

>> March 20, 2019

There was a conference call with HR, Dean and Campus Director of the college to discuss my role as an Academic Advisor. The Dean started attacking my character, about what he thought I hadn't done in my role. At the time the Dean came on board with Altierus back in November my assignment was different than it is now. My training that I had attained in April of 2018 was not part of my assignment when I returned from my training. Majority of it was not implemented, I was told to continue to do what I've been doing until I'm told to do something different.

Further, I had always excelled at what was expected of me to do and went beyond what I was asked to do, and were told on several occasions that I was doing a phenomenal job that no one had been able to do.

I thought with bringing all my concerns to HR we would be able to work through the circumstances at hand but it was a total different experience . HR, started threatening and attacking me  because of my initial rebuttal letter I submitted on March 11. Ms. Ford the HR representative stated that I cannot talk to any of my co workers that was involved about the accusations that were being made and if i do it will lead to a write up or termination, she expressed it is retaliation and that it's against the law. What I did was collaboration not retaliation. Here again I thought the purpose of the call was for us to bring peace and find out what my role as the Academic Advisor should be moving forward. The call was everything but that, it was very painful and I felt attacked for the entire call.

Finally, after the call Mr. Delaney and Dr. Eubanks went over the expectation of my role and the time frame I had to make sure that I do it in for the month of March. The additional work that was expected for me to do with a deadline of March 31. I told them it would be impossible for me to complete the task under such short notice and told them that it seem as if they were setting me up to fail.

>> March 25, 2019

Contrary to Mr. Delaney assertion that I don't manage my time, because I forgot to clock out on March 20th after being on a long stressful and emotional call with HR, Dr. Eubanks, and Mr. Delaney, I shared with Mr. Delaney that I thought I had clocked out but when I came to work on Monday the system said that I had an error in respect to my time. Ironically, the system didn't tell me that there was an error with my time until Monday March 25th.

When I clocked in on Thursday March 21, 2019 the system should have populated the error but it didn't it let me clock in with the knowledge of knowing that I didn't clock out in Wednesday the night before. This was truly a human error on my part and a technology error on the computer part.

Nothing was done intentional to defraud or misrepresent my time. Nor not manage my time. Nevertheless the system allowed me to clock in and clock out on Thursday March 21 and Friday March 22, 2019 without no notice of incorrect time on Wednesday March 20, 2019.

>> March 28, 2019

On March 28, 2019 I was informed that the last day to take advantage of the employee appreciation day was Friday, March 29th by another co- worker that was taking her day on  the next day which was Friday March 29th. I put in my appreciation day as well and I brought this to Mr Delaney attention. He advised me that if I took off Friday March 29th I would not meet my expectation of my new responsibilities that

was just handed to me on March the 20th. He also stated if I took the day off and didn't complete my responsibilities there would be some consequences. I decided that I would work the next day March the 29th. At the end of the work day of March 28th I clocked out and I was at 40 hours, I had been diligently working everyday long hours to try to complete my assignment however at the end of the day I still needed more time that I didn't have, the work that was given to me out weighted the time frame that I had to complete it in. I reached out to Mr. Delaney via text and explained my current situation. I expressed that I was at my 40 hours and I would need some additional approved hours to complete my assignment for March. I even offered to come in on Sunday to complete my assignment since that would be a new week and it wouldn't put me in a comprising position to go into overtime, that he continuously keep threatening me about. He denied my request to take off for the employee appreciation day, he also wasn't going to approve any additional time even thou I needed the additional time to complete my assignment that he continuously keep threatening me about. I was in a no win situation. I was put in a situation at the last minute to have a disciplinary action upon me.

>> March 29, 2019

Since I had already had 40 hrs on the clock, I came to work and volunteered my time since I had done this in the past  just to make sure I completed my assignment, and not be written up for working over the 40 hours and written up for not completing my assignment. Even thou I didn't take my earned employee appreciation day off that I had to take before March the 31st and even thou I didn't get the approved hours to work to make sure I complete my work assignment, I was still willing to come in and do my work.

>> April 1, 2019

 Mr. Delaney told me to submit my time that I had worked the week of 25th. I told him that my time need to be corrected because the appreciation day was still reflecting on my time . He said submit it and then he will correct it.

He came to my office to assist me. I submitted the time as I knew to be correct. He said we will talk about the appreciation piece later he just needed to get my time in because of the dead line. He inquired about my completing my assignment I stated that I came in on Friday and volunteered my time to complete my assignment since I were at 40 hours. Mr. Delaney said I couldn't volunteer my time I would have had to clock in. He said now I have to go back to your time and add that in which will put you into over time and I'm going to have to call HR. I implied to him that I've worked plenty of times off the clock before and I was allowed to do so without anyone saying anything as long as the work was getting done. I was told to clock out at 40 hours and still was working after I clocked out to get the job done on many occasions.  I've came in several of times and did work without clocking in and everyone involved was aware that I was on the premises working without clocking in and never said anything.

After the fact Mr. Delaney said I couldn't volunteer my time and that if I am on school premises I have to clock in and out, moving forward.

He then accused  me of falsifying my time which I told him I didn't falsify anything. Especially since I had been on the premises many times without clocking in to volunteer my services. I said are you calling me a liar because I equate falsifying to a lie. He said well common sense would tell you I interrupted him and said so are you also calling me stupid he replied no, but I'm going to have to use some corrective action, I've never in my 60 years of living and working ever have been written up on any job that I have ever had. Mr. Delaney alone with HR and the Dean has threaten me again to write me up again, no matter what I try to do or attempt to do to meet his demands , it seems as thou since I wrote my first

rebuttal letter everyone has done everything possible to make it difficult for me to be overwhelmed, stressed and emotionally drained, my health is being compromised in the meantime, I've have had to go to the hospital in the last 4 months than I've ever have had to go in 60 years, and it wasn't like this 4 months ago my working experience then was very peaceful, now it appears as if everyone is overexerting themselves to make me fail, and the question I am asking is why?

Sincerely,

Mrs. Saunders

**Saunders, Shelia**

| | |
|---|---|
| **From:** | Saunders, Shelia |
| **Sent:** | Tuesday, March 12, 2019 6:00 PM |
| **To:** | Ford, Kris |
| **Cc:** | Saunders, Shelia |
| **Subject:** | RE: Inappropriate language discussion and change of my language in it's totality |

Good Day Ms. Ford,

One of my objectives is to stop the continual harassment, discrimination, religious persecution and threats of being fired. I was harassed 4 days in a row while at work trying to be productive in my role as the Academic Advisor.

My work environment has become extremely hostile, unpleasant and difficult to be productive in. I'm naturally a very happy person, that's my personality and everyone on campus knows that, because that's what they see every single day that I'm at work. Even in this hostile environment I've tried to remained happy with a smile on my face, nothing and no one can take my joy because they didn't give me my joy in first place.,

Nevertheless, I shouldn't have to be subjected to this demoralizing behavior of having my character attacked and defamed, nor should I feel uncomfortable in my working environment.

I would never intentionally make anyone feel uncomfortable based on religion or anything else that's not who I am. I'm going to show love and give out love no matter who a person is or what they believe or don't believe and everyone who know me know this to be true.

After speaking with a few of the instructors and the program chair, I was told by the people that spoke with me that they were asked to write a statement against me and that they didn't feel comfortable doing so because they would have been asked to lie. Which was clearly demonstrated in Ms. Lofton statement on February 14th. They reiterated that they love me and that they didn't see anything that I had done in a malicious way but out of a spirit of love but most importantly done by the expectation of the directives that we all have been given pertaining to the students. I enjoy getting out of my bed every day to drive in very heavy traffic one hour and fifteen minutes one way, just to do what I love to do. It's not fair to me to be treated in such a manner when I come to work.

These last three weeks have been very stressful, mentally, spiritually and physically on my health to the point that last night I had to leave work and go straight to the emergency room at the hospital, to check out why my heart was racing. I've never been a sick person nor have I had any type of heart problems. This situation has affected me tremendously, without showing it in my work space, just trying to maintain my smile and keep my joy in the midst of everything that is going on behind the scene.

Additionally, involving others like yourself and the president of the campus to seriously look into how as an employee like myself who have been here over a year and have not had any problems before two months ago, have brought a lot of value on campus, have built a healthy relationship with every department and most importantly with every student. I've done everything that has been expected of me since day one, in all fairness for someone with my experience, personality and positive attitude, never complaining about what is expected of me, I deserved the dignity and respect to have had the opportunity to have an uncounseled meeting to discuss these issues in a constructive manner without allowing these false allegations to affect my work environment and relationships that took an entire year to build, only for someone to try to tear it down.

1

I am very disappointed that our working environment is not as caring nor a concerned atmosphere that we've worked so hard to accomplish and that we have allowed our working environment to become so hostile that some of our best employees are being affected by it and resigning and some just left with no notice.

My objective here is only to see a positive resolve, where we can all work together on one accord toward one common goal, which is assisting the students, changing one life at a time, where they can graduate and work in their field of study.

I would like to resolve the issues at hand inside the school, but if it can't be resolved on campus then I will be compelled to seek relief outside of the school. Thank you so much for responding to me in a timely manner, thanks for caring.

In Service Always,

Mrs. Shelia Saunders

---

**From:** Ford, Kris
**Sent:** Monday, March 11, 2019 5:00 PM
**To:** Saunders, Shelia
**Subject:** RE: Inappropriate language discussion and change of my language in it's totality

Hi Shelia,

Thanks for reaching out. Can you help me understand what your goal is sending this message? What type of outcome are you looking for?

Thanks,

**Kris Ford, SPHR, SHRM-SCP**
HR Business Partner Principal
Human Resources



651.325.3263
www.ecmc.org

Case 1:21-cv-04109-MHC-RDC Document 1 Filed 05/20/21 Page 121 of 228

ACCT# 104649-09                                    Page 1

Date: March 27, 2020

To: Appeals Tribunal,

I Shelia Candy Saunders am writing this letter to appeal the decision by the Georgia Department of Labor to disqualify me from receiving unemployment benefits.

My Account number is 104649-09 and the date that my decision was released was 3/13/2020. A copy of my notice is attached to this letter. I respectfully protest the results of my unemployment disqualification.

I have been dismissed from my job and denied unemployment benefits because my supervisor and the campus director reported that I did not work my schedule that the employer instructed me to work on February 4, 2020 and February 6, 2020. As the Academic Advisor, my responsibility is to advise every new student on the first week in every month. These meetings are mandatory meetings that must be given to every new student that started school for that month. Those two days, I must come in early and leave late for me to complete the task according to my job description. I have attached a copy of my job description. My supervisor, which is the Academic Dean, encouraged me to stay on those days and make sure I take care of the students and put notes in the system. He said he would make sure if Mr. Delaney (campus director) said anything to me, he would let the campus director know he

approved me to stay late on those two days and leave early on Friday so I wouldn't go into overtime. I did not go over 40

hours. My supervisor also told me that he explained that to the Campus Director, and he was aware that I was there late on those two days. My Supervisor instructed me to make sure I was taking care of the students, he said that's why we are there, to make sure that the students are successful and graduating. He assured me if anyone said anything to me, he would take care of it. There are texts and recordings to support these statements that can be submitted if given the opportunity for an appeal. The Campus Director accused me of not working my schedule, the company never made a schedule for me, I was told from day one of my employment with the company, that I could make my own schedule per Mr. Delaney (campus director) and post it on my office door so everyone would know when I would be there. For two years, I made my own schedule and worked my schedule according to the need of the students. It wasn't a problem until the Campus Director fired the Dean (Mr. Salmanzadeh Nasser) and hired a new Dean (Mr. Paul Eubanks) November 2018. I was discriminated against, I experienced sexual harassment, and bulling, by Mr. Eubanks and Mr. Delaney for 6 months from November 2018 to April 2019. I filed an EEOC complaint against the Dean and the Campus Director on April 3, 2019. After the charge was submitted to the school, the Campus Director began to

retaliate against me, and I was taken off work and admitted in the hospital for working in a hostile environment under a lot of stress. My experience was documented and recorded. The

Dean admitted to me on a recorded line, that he was coerced by corporate and Mr. Delaney. The Dean resigned and left in July 2019. I returned to work on August 26, 2019 because the company told me that the Dean was not there anymore. When I returned to work, they had hired another Dean which is the current Dean that I have now, David Brame. Upon my arrival back to work, I was called into the office by the Campus Director and he immediately started in on me saying when I left on medical leave there was some unfinished business that needed to take place. He stated that he needed to write me up for working volunteer time, he called it volunteer time, I called it working off the clock not getting paid. I said I didn't do anything that hadn't been approved for me to do. Whatever my supervisor asked me to do, I did what he asked me to do. I told Mr. Delaney I wasn't feeling good and that I need to go to the hospital and the doctor took me off work because my heart had palpitations. The EEOC charged the Campus director with another charge for retaliation. I came back to work on December 9, 2019. The Dean expressed to me that the Campus Director had told him things about me when he came aboard that I had brought charges against him and the school. I told the Dean that was defamation of character and Mr. Delaney

should have allowed him to get to know me for himself. From December 9, to February 19, Mr. Delaney made it mandatory for me meet with him every day at 12:00 noon despite me telling him that this is the time I meet with the students, he was

trying to set me up to fail and he wanted to make my time there so uncomfortable that I would quit my job. Since he couldn't get me to do neither, he terminated me while I was still under the doctors' care. I came back to work under a low stress environment and light duty per my doctor. The company allowed me to come back on restricted accommodation. Lisa Borowitz, Sr. Benefits Analyst (HR) from corporate sent an approved special accommodation for the Campus director to abide by on my behalf on February 5, 2020 that he must allow me to go to my doctor's appointments. He didn't like that, so he retaliated against me and decided on February 19, 2020 to call me to his office at 12:00 noon and the Dean to come to my office to get me to come to Mr. Delaney office and I asked the Dean what is this all about and he replied "I don't know, Mr. Delaney said for you to come to his office". Upon arriving, Mr. Delaney said he had decided to let me go back home for the day and he hadn't decided what he was going to do about me working late on February 4th and the 6th and I said that Mr. Brame my supervisor, knew I was working late on those two days because it was the first week in the month and I had to advise the students and put notes in the system. He said no one

gave you permission to stay and I said yes, the Dean did. Mr. Brame didn't support me like he said he would, and I left out the office very disappointed with the Dean. I went to my office to get my purse. Mr. Delaney said he would call me and let me know in a couple of days what he decided. Mr. Brame came to

my office and said he was not in agreement with what Mr. Delaney said, I asked him why he didn't tell the truth and that I thought he was a Christian and that I was very disappointed in him. Mr. Brame at that time said he was sorry, but he told Mr. Delaney he knew I was staying those two days and he didn't know why he had treated me that way. Our conversation was being recorded. If allowed, I would like to submit supporting documentation to support the truth. I was so disappointed and upset with how I had just been treated, I had to go to the hospital again because my heart was racing. The doctor took me off work and he said this is not a healthy environment. The doctor released me to go home and rest. Three hours later, Mr. Delaney called me and said he had decided to terminate my employment. I asked him on what grounds, and he said for not working my schedule, working unapproved overtime. I explained that I've always worked my schedule, I didn't work unapproved overtime. I have included some of my approved timecards. He said he will mail me my personal items from my office, he didn't want to listen to anything that I had to say.

Since the coronavirus was out, I filed for unemployment

benefits the next day. I didn't want to wait later and get caught in the lines. I shared my situation with the case workers about my experience at work, they were encouraging, because one of the workers had experience the same thing on her job years ago and she received her unemployment. My medical issues were not personal reasons they were job related. I didn't have any of these issues with my health before I started working there. I fell on the job and Mr. Delaney didn't write up the incident report. I reported it to our workman comp department

and ever since then Mr. Delaney have had it out for me. I was disqualified due to what Mr. Delaney submitted on my separation paperwork. Mr. Delaney tried to stop me from getting my medical benefits as well, but the company allowed me to receive my benefits while I was out on medical leave. Mr. Delaney is determined to keep me from receiving my unemployment. Now I understand clearly what he means when we are having our monthly meetings when he says he have never lost a case and he never will, because he knows what to say on the separation paperwork. But it's not fair what he does he's not being truthful, and he will say and do anything to win. I have documentation to support what I have said, given the opportunity to appeal my case I can submit all documentation.

I have seven witnesses, Margaret Anochie, James Marlin, Kelvin Snell, Alice Lofton, Brydai Sumpter, Jalyn Jones, Miklachelle Green, who witnessed the Dean in my office the nights I stayed

late, witnessing both Mr. Delaney and the Dean asking me to stay after hours on many occasions. I have texts and recordings to support my information.

They witnessed Mr. Delaney boasting on his victories, in our monthly meetings, he says people won't win in any case. He uses his title, authority, and the policies for his advantage wrongfully against employee's that won't agree with the wrong that he does. He retaliates against them and make their workday unbearable. Most importantly, they witnessed the hostile, retaliating and harassing environment that I had to tolerate on the job. They are all willing to testify on my behalf in a hearing. I would like to request a hearing so that I can have an opportunity to present my case and have the Georgia

Department of Labor reconsider my unemployment disqualification.

Thank you for your consideration.

Sincerely,

Shelia Candy Saunders

From: **godsnewbeginning@bellsouth.net**
Subject:
Date: **Mar 12, 2020 at 4:36:24 PM**
To: **Apostle Candy** godsnewbeginning@bellsouth.net


**Good Day**

Per our conversation on Tuesday, March 10, 2020, this missive is to refute the
information submitted by my employer and their decision to try to deny my
unemployment benefits. Ms. Fowler you were falsely told that I did not adhere
to company policy as it relates to not working my schedule and working
overtime. During our conversation, I explained that the information you were
given was false.

I am attaching the following documents that will corroborate my position as to
why my unemployment benefits should not be denied.
On February  5, 2020,  Corporate HQ Human Resources, Ms. Lisa Borowitz
agreed to honor my doctor's request that I be placed on a restricted work
accommodation schedule due to medical reasons. (See attachment 1)

Secondly, my Supervisor, Mr. David Brame was well aware of the agreed to
work accommodation schedule and agreed to it as well. As a matter of fact, he
stated verbally that I did not violate or work unapproved overtime. He was
present on both days February 4th and February 6, 2020... (See attachment
2). Additionally, I have a voice recording of Mr. Brame (my supervisor) his
statements as it pertains to his acknowledgment that I did not work overtime
but rather was working within the time I was required to work and if I worked
beyond the hours it was because I was in session with a student and couldn't
just abruptly terminate my session because I was going beyond the time my
day would have ended. He was aware that I was staying both days, he even
came by my office and said good night I'm gone Mrs. Saunders. He told me as
long as I'm taking care of the students he didn't have a problem with me
staying late to catch them on their brakes and after class. I wasn't working
over time. Overtime is when I have went over 40 hours. I would adjust my time
on Friday since we didn't have students on Friday. I would stay later on my late
days which are Tuesday and Thursday. At anytime that I stayed later Mr.
Brame was aware and encouraged me to take care of the students. On the
voice recording he also admit that Mr. Delaney was aware that he was

allowing me to stay and take of the students it is in my job description to stay and take care of my student in a normal day to day hours. Our normal hours are from 9am to 10pm except on Friday we leave at 5:00pm.

I strongly request that you take all the information into consideration before rendering a judgement of denying my benefits. As I mentioned during our conversation that Mr. Delaney was being vindictive and retaliating against me when he gave you misleading information. I have filed a complaint against the school and him and I feel he is just retaliating again  against me.
If you have any questions, please advise.
In Kindest Regards,
Ms. Shelia Saunders

**Page 1**

**Subject: Retaliation, harassment, sexual harassment, & discrimination**

**From:    Mrs. Candy Saunders** godsnewbeginning@bellsouth.net

**This is an epitome of the continued harassment, bullying and retaliation that I have experience during my tenure at Altierus College.**

**On April 1, 2019 I was threaten by Mr. Delaney to write me up for coming to work and staying later to complete a task that he had given in a short notice to complete at the end of the day, if not completed I will received a written statement in my file.**

**During this "highly" stressful time and ongoing mental attacks against me, my health was being detrimentally affected. I asked Mr. Delaney if I can leave to go to the doctor because I was feeling extremely sick and he blatantly "denied" me to leave. I forcefully struggled to work the reminder of my shift work and immediately went to the hospital when I left work that evening. The doctor at the hospital after immediately giving me an EKG said I was having "heart palpitations" resulting from working in a negative and stressful environment that was damaging my health and adversely affecting my life. The doctor immediately took me off work and encouraged me to report this to the EEOC. The next day I went to the EEOC and charge the School and Campus Director Mr. Delaney for harassment and discrimination. During this time off the doctor referred me to see a Behavioral Health Counselor, who began to treat me for physical, psychological, and emotional torture that I was dealing with on the job. The counselor kept me off work for a period of four months.**

I returned to work on August 27, 2019, I shockingly discovered Mr. Delaney had moved my office and personal items without my knowledge and permission to move my personal belongings. This was a form of retaliation and harassment that Mr. Delaney is exceptionally good at doing. I asked him why he moved me out of my office and put me in a very small office to work from, his unacceptable excuse was "You should be glad you have an office" other people don't even have an office. At this point since some of my items was missing, I felt violated, demeaned, betrayed, and bullied because they went in my personal space. After I expressed how I felt, Mr. Delaney abruptly started harassing and retaliating by saying when you left back on April 1st, we had some unfinish business that we now need to take care of. I was taken back and saw this behavior as another "ploy" to harass, bully and retaliate against me. Again, I was only back at work for four days and urgently had to return to the hospital due to heart palpitations, headaches, and blurred vision. The doctor took me back off work stating he will not allow me to work in a "hostile" environment because of what it was doing to my health. I can only pray that a resolution to the "inhumane" treatment that I experience on the job is no longer allowed to disrupt and ruin the lives of others as it has mine.

I returned to work on December 9, 2019 only to find out that my co-worker Ms. Anochie was out for the same physical, psychological, and emotional torture. I would be remiss if I did not say something and write a statement on her behalf. I have had the honor to work with Ms. Anochie in two different schools now. I have known her for twelve years and we have always had an awesome working relationship. Ms. Anochie is a woman of integrity and she is passionate about taking care of the students and they love her.

When she came on board at Altierus I was glad to see her. I left on medical leave right after she came on board, we worked together for about three months on the same program. We both would be there all day long without lunch breaks, bathroom break because Mr. Delaney put a lot of responsibility on us. Ms. Anochie had a lot more responsibility than myself, she came in earlier than myself, she would come in when the school open up at 6:00am and teach that class and teach the 2:00pm class and 6:00pm class and in between classes she was expected to attend the meetings that we had to attend every day. We would leave at night together at 10:30 for 3 days a week and Ms. Anochie would also work weekends as well. Ms. Anochie did not have no time for her children. I noticed her losing weight just like I had done, but she lost a lot more than I did because she did not have a break for nothing. I did not work weekend she did, she had no breaks. On top of all of that, Mr. Delaney was always threatening her about the position as a Program Chair and his expectations of what he expected her to do. He was never satisfied, the more she did the more Mr. Delaney and Mr. Brame mistreated her, they put more on her to do. They did not have any empathy, no compassion about her working around the clock neglecting her children and her 80-year-old mother and it begin to take a toll on her health mentally and physically.

I went back out on medical leave, because of the threatening environment that we both continue to work in. We both was treated very unfairly. Ms. Anochie did not deserve that at all, she was so committed to the students and I know that is the reason why she stayed and dealt with the unfair treatment when she did. It was all for the students.

**Page 4**

When I got back in December she was not there. When she got back in March I was terminated. She heard how Mr. Delaney and Mr. Brame had continually mistreated me while she was out on medical leave. She could relate because she had experienced the same thing in my absence.

I witnessed Ms. Anochie working off the clock and around the clock not being compensated for all that she had to do. Putting her health in jeopardy, neglecting her family and being unappreciated for all that she did do on campus.

Like I said I would be remiss if I do not speak up on her behalf.

 Again, I can only pray that a resolution to the "inhumane" treatment that Ms. Anochie had experienced as well, on this job. That it is no longer allowed to disrupt and ruin the lives of others as it has her.

I have recordings and documents of the countless unethical behavior that can support Me Anochie claim. I can be reached at 770-262-7660 if you have any questions or concerns. I am here to help.

In Kindest Regards,

**Mrs. Candy Saunders**

*Jonathan Young*

From: **godsnewbeginning@bellsouth.net**
Subject: **Rebuttal statement of facts**
Date: **Apr 2, 2019 at 2:48:56 PM**
To: **kford@ecmc.org, Mr Delaney** mdelaney2@altierus.edu,
**peubanks@altierus.edu**
Cc: **Apostle Candy** ssaunders@altierus.edu

This is my rebuttal to the following events that transpired with my employer
Alterius College
March 20, 2019

There was a conference call with HR, Dean and Campus Director of the
college to discuss my role as an Academic Advisor. The Dean started
attacking my character, about what he thought I hadn't done in my role. At
the time the Dean came on board with Altierus back in November my
assignment was different than it is now. My training that I had attained in
April of 2018 was not part of my assignment when I returned from my
training. Majority of It was not implemented, I was told to continue to do
what I've been doing until I'm told to do something different.
Further, I had always excelled at what was expected of me to do and went
beyond what I was asked to do, and were told on several occasions that I
was doing a phenomenal job that no one had been able to do.
I thought with bringing all my concerns to HR we would be able to work
through the circumstances at hand but it was a total different experience .
HR, started threatening and attacking me  because of my initial rebuttal
letter I submitted on March 11. Ms. Ford the HR representative stated that I
cannot talk to any of my co workers that was involved about the accusations
that were being made and if i do it will lead to a write up or termination, she
expressed it is retaliation and that it's against the law. What I did was
collaboration not retaliation. Here again I thought the purpose of the call
was for us to bring peace and find out what my role as the Academic
Advisor should be moving forward. The call was everything but that, it was
very painful and I felt attacked for the entire call.
Finally, after the call Mr. Delaney and Dr. Eubanks went over the expectation
of my role and the time frame I had to make sure that I do it in for the month
of March. The additional work that was expected for me to do with a
deadline of March 31. I told them it would be impossible for me to complete

the task under such short notice and told them that it seem as if they were setting me up to fail.

March 25, 2019

Contrary to Mr. Delaney assertion that I don't manage my time, because I forgot to clock out on March 20th after being on a long stressful and emotional call with HR, Dr. Eubanks, and Mr. Delaney, I shared with Mr. Delaney that I thought I had clocked out but when I came to work on Monday the system said that I had an error in respect to my time. Ironically, the system didn't tell me that there was an error with my time until Monday March 25th.

When I clocked in on Thursday March 21, 2019 the system should have populated the error but it didn't it let me clock in with the knowledge of knowing that I didn't clock out in Wednesday the night before. This was truly a human error on my part and a technology error on the computer part. Nothing was done intentional to defraud or misrepresent my time. Nor not manage my time. Nevertheless the system allowed me to clock in and clock out on Thursday March 21 and Friday March 22, 2019 without no notice of incorrect time on Wednesday March 20, 2019.

March 28, 2019

On March 28, 2019 I was informed that the last day to take advantage of the employee appreciation day was Friday, March 29th by another co- worker that was taking her day on  the next day which was Friday March 29th. I put in my appreciation day as well and I brought this to Mr Delaney attention. He advised me that if I took off Friday March 29th I would not meet my expectation of my new responsibilities that was just handed to me on March the 20th. He also stated if I took the day off and didn't complete my responsibilities there would be some consequences. I decided that I would work the next day March the 29th. At the end of the work day of March 28th I clocked out and I was at 40 hours, I had been diligently working everyday

long hours to try to complete my assignment however at the end of the day I still needed more time that I didn't have, the work that was given to me out weighted the time frame that I had to complete it in. I reached out to Mr. Delaney via text and explained my current situation. I expressed that I was at my 40 hours and I would need some additional approved hours to complete my assignment for March. I even offered to come in on Sunday to complete my assignment since that would be a new week and it wouldn't put me in a comprising position to go into overtime, that he continuously keep threatening me about. He denied my request to take off for the employee appreciation day, he also wasn't going to approve any additional time even thou I needed the additional time to complete my assignment that he continuously keep threatening me about. I was in a no win situation. I was put in a situation at the last minute to have a disciplinary action upon me.

March 29, 2019

Since I had already had 40 hrs on the clock, I came to work and volunteered my time since I had done this in the past  just to make sure I completed my assignment, and not be written up for working over the 40 hours and written up for not completing my assignment. Even thou I didn't take my earned employee appreciation day off that I had to take before March the 31st and even thou I didn't get the approved hours to work to make sure I complete my work assignment, I was still willing to come in and do my work.

April 1, 2019

Mr. Delaney told me to submit my time that I had worked the week of 25th. I told him that my time need to be corrected because the appreciation day was still reflecting on my time . He said submit it and then he will correct it. He came to my office to assist me. I submitted the time as I knew to be correct. He said we will talk about the appreciation piece later he just

needed to get my time in because of the dead line. He inquired about my completing my assignment I stated that I came in on Friday and volunteered my time to complete my assignment since I were at 40 hours. Mr. Delaney said I couldn't volunteer my time I would have had to clock in. He said now I have to go back to your time and add that in which will put you into over time and I'm going to have to call HR. I implied to him that I've worked plenty of times off the clock before and I was allowed to do so without anyone saying anything as long as the work was getting done. I was told to clock out at 40 hours and still was working after I clocked out to get the job done on many occasions. I've came in several of times and did work without clocking in and everyone involved was aware that I was on the premises working without clocking in and never said anything.

After the fact Mr. Delaney said I couldn't volunteer my time and that if I am on school premises I have to clock in and out, moving forward.

He then accused me of falsifying my time which I told him I didn't falsify anything. Especially since I had been on the premises many times without clocking in to volunteer my services. I said are you calling me a liar because I equate falsifying to a lie. He said well common sense would tell you I interrupted him and said so are you also calling me stupid he replied no, but I'm going to have to use some corrective action, I've never in my 60 years of living and working ever have been written up on any job that I have ever had. Mr. Delaney alone with HR and the Dean has

threaten me again to write me up again, no

matter what I try to do or attempt to do to meet his demands , it seems as thou since I wrote my first rebuttal letter everyone has done everything possible to make it difficult for me to be overwhelmed, stressed and emotionally drained, my health is being compromised in the meantime, I've have had to go to the hospital in the last 4 months than I've ever have had to go in 60 years, and it wasn't like this 4 months ago my working experience then was very peaceful, now it appears as if everyone is overexerting themselves to make me

fail, and the question I am asking is why?

Sincerely,
Mrs. Saunders

From: godsnewbeginning@bellsouth.net
Subject: Updated letter
Date: Feb 20, 2020 at 10:59:50 AM
To: Lisa Borowitz lborowitz@ecmc.org
Cc: Apostle Candy godsnewbeginning@bellsouth.net

February 20, 2020

Ms. Lisa Borowitz, Sr. Benefits Analyst
Human Resources
ECMC Education
111 Washington Avenue S
Minneapolis, MN 55401

Dear Ms. Borowitz:

Per your missive dated February 5, 2020, please permit me to address the following concerns you highlighted in your letter.

1. You expressed surprise to see in the documentation dated January 30, 2020 from my providers that they were under the impression that ECMC Education did not permit me to take time off to attend my Physical Therapy and Specialty Follow up appointments. I must admit you are absolutely correct. Let me elaborate why?

Mr. Moses Delaney, School President emphatically and disrespectfully, denied it and would not let me go to the appointments as my providers strongly requested and you agreed upon. (See your letter dated February 5). He "restricted" my accommodations down to a "minuscule" 1 hour lunch break. He further said "I had only one hour to go to my appointments like everyone else. We both know this is unacceptable and in direct violation to my medical concerns and rights.

2. Ensuing my return work on December 9, 2019, I did not attend any of my physical therapy appointments due to the ludicrous limitations Mr. Delaney subjected me to. However, I was able to attend some of my specialty

appointments since they were only 15 minutes from work but even then, I was compelled to shorten the time the doctor's spend with me due to the restrictions Mr. Delaney imposed.  Note: There were other specialty appointments I wasn't able to attend because they would have taken me outside the time restriction imposed by Mr. Delaney.

Inauspiciously, all of my workplace accommodations were not fully provided to me and that I feel is a direct violation of what my medical providers requested and what I needed to in order to heal from my medical conditions.

I wasn't able to respond to you sooner as I would have liked to because of the fear of retaliation since Mr. Delaney was doing everything possible to make my work environment more hostile on a daily basis. Additionally, I had presumed he was aware of the accommodations requested and approved but he strongly stated he DID NOT receive anything from you in reference to the aforementioned.

As of Wednesday, February 19, 2020, I was shockingly terminated from my job.  At 12 pm, I was told by Mr. Delaney to go home for the day and he would let me know later, what his decision would be concerning when I should return to work. His reason for sending me home was because he said, I was not working my schedule and attendance issues. Needless to say, I was very disturbed, stressed and having an anxiety attack, I left immediately and went directly to see my doctor. I was examined by my doctor and he took me off work again. After I left my doctor's office (2 ½ hrs later), I received a call from Mr. Delaney stating that he had decided to terminate my employment and asked if I had any questions.

I asked on what reason(s) was he terminating me for and he said attendance and not working my schedule. I am shock with disappointment

because I asked Mr. Delaney after he told me to go home for the day, if I was being terminated and he said NO.

Before Mr. Delaney called saying I was terminated, I had already been taken off of work by my doctor. I seriously would like to speak with someone about the status of my employment other than Mr. Delaney. I don't believe as I have previously expressed that I have been treated fairly under the "light duty accommodation" request from my doctor since I've returned to work on December 9, 2019. I saw Mr. Delaney and Mr. Brame were copied on that February 5th letter.

I sincerely appreciate your consideration in this regard but I am very hurt and disappointed how I was mistreated and humiliated in front of my co workers, retaliated against and subjected to a unbearable hostile work environment. I have been discriminated against as the only African American Academic Advisor. Recently, the Academic Dean in Florida Kelly Washington who is also over the Academic Advisor's. Sent out a email with all the Advisor's pictures on it and praising them, she did not include me nor my picture on the email. All of the Academic Advisor's (predominantly white) were sent out via email. I felt uncomfortable around my co-workers it appeared that it was intentionally omitted , my name and my picture. This email went out about two weeks ago. Also, on school monitors highlighting leaders, there is no picture of me only my white Academic Advisor colleague. I brought this to Mr. Delaney and my supervisor's Mr. Brame attention and they did nothing bout it, they said they would correct it but they ignored it.

Can you please give me a call so we can discuss further. I really would appreciate it so much.

Mrs. Shelia Candy Saunders

writing about everything I was enduring in my work environment December of 2018 to March 29, 2019 THe HR Knew from. I had been under the doctor care since Dec. 19, 2018

# EXHIBIT

# K

# TIMESHEETS

## Saunders, Shelia

| | |
|---|---|
| **From:** | Delaney, Moses |
| **Sent:** | Monday, April 01, 2019 1:31 PM |
| **To:** | Saunders, Shelia; Eubanks, Paul |
| **Subject:** | RE: URGENT: Immediate attention is required |

Hello,

You need to submit your time. Are you not able to submit your time?

To what correction are you referring? Your request to use the Employee Appreciation Day on Friday was denied. It would have put you over 40 hours.

As we've discussed too many times before, you must work your schedule and avoid working unapproved overtime. Working your schedule should prevent you working unapproved overtime and/or more than 40 hours a week.

Best,

## Moses Delaney, M.Ed
**Altierus Career College, Norcross**
Campus Director | P: 770-921-1085 |
1750 Beaver Ruin Road | Norcross, GA 30093

 **ALTIERUS**

---

**From:** Saunders, Shelia
**Sent:** Monday, April 1, 2019 1:14 PM
**To:** Eubanks, Paul <peubanks@altierus.edu>; Delaney, Moses <mdelaney2@altierus.edu>
**Cc:** Saunders, Shelia <SSaunders@altierus.edu>
**Subject:** FW: URGENT: Immediate attention is required

Good Day,
Can my time please be corrected and submitted please thank you. Or would you like for me to submit the time as is and the correction be made at that time PLEASE ADVISE.....

---

**From:** ECMC Group <basecamp@myworkday.com>
**Sent:** Monday, April 01, 2019 1:00 PM
**To:** Saunders, Shelia <SSaunders@altierus.edu>
**Subject:** URGENT: Immediate attention is required

Hello,

Your timecard is outstanding.

Please log into Workday, review your timecard entries and submit to your Manager prior to 2:00 pm CT, Monday. After 2:00 PM CT timecards will be unavailable for changes as the payroll process has started.

    Q  Search                                            

# View Event

## Time Off Request: Shelia Saunders (100756)    Actions

| For | Shelia Saunders (100756) |
| --- | --- |
| Overall Process | Time Off Request: Shelia Saunders (100756) |
| Overall Status | Denied |
| Due Date | 03/30/2019 |
| Calendars In Use | Consecutive Days (No Calendars Selected) |

**Details**    Process

1 item

| Date | Day of the Week | Type | Requested | Unit of Time | Comm |
| --- | --- | --- | --- | --- | --- |
| 03/29/2019 | Friday | Employee Appreciation Day | 8 | Hours | day of |

If the 2:00 pm CT, Monday deadline has passed, work with your manager for corrections to be included on your next regular payroll check.

Contact the HR Service Center at 1-855-217-0910 or email us at Workdaypayroll@ecmc.org for questions regarding timecard completion or the submission process.
Thank you,

The Payroll Team
Workdaypayroll@ecmc.org

This email was intended for SSaunders@altierus.edu · Manage Preferences

    Search     

# Enter Time

r View **Shelia Saunders (100756)**    Actions

| Regular | Overtime | Travel | Paid Time Off | Unpaid Time Off | Holiday |
|---------|----------|--------|---------------|-----------------|---------|
| 40 | 1.1 | 0 | 8 | 0 | 0 |

| | Volunteer Time | Total |
|---|----------------|-------|
| | 0 | 49.1 |

To watch a Enter Time Training video, click <u>here</u>

Today    **Mar 24 – 30, 2019**    View    **Week** ▽

| Sun 3/24 | Mon 3/25 | Tue 3/26 | Wed 3/27 | Thu 3/28 | Fri 3/29 | Sat 3/30 |
|----------|----------|----------|----------|----------|----------|----------|
| Hours: 0 | Hours: 10.85 | Hours: 10.55 | Hours: 9.1 | Hours: 10.6 | Hours: 8 | Hours: 0 |

**Employee**
8 Hours
Submitted    ⌃
⌄

12 AM ⌃

1 AM

2 AM

3 AM

4 AM

5 AM **Submit**        **Enter Time**    ⌄

  Q  Search                                        

# Enter My Time

r View Shelia Saunders (100756)   Actions                              **2 Alerts**

| Regular | Overtime | Travel | Paid Time Off | Unpaid Time Off | Holiday |
|---------|----------|--------|---------------|-----------------|---------|
| 9.6 | 0 | 0 | 16 | 0 | 8 |

|  |  |  |  | Volunteer Time | Total |
|--|--|--|--|----------------|-------|
|  |  |  |  | 0 | 33.6 |

To watch a Enter Time Training video, click <u>here</u>

| Today | Feb 17 – 23, 2019 | | View | **Week** ▼ | | |
|-------|-------------------|--|------|------------|--|--|

| Sun 2/17 Hours: 0 | Mon 2/18 Hours: 8 | Tue 2/19 Hours: 8 | Wed 2/20 Hours: 8 | Thu 2/21 Hours: 0 | Fri 2/22 Hours: 9.6 | Sat 2/23 Hours: 0 |
|---|---|---|---|---|---|---|
| | **Holiday** 0 8 Hours ✓ Approv | **PTO** 8 Hours ✓ Approv | **PTO** 8 Hours ✓ Approv | | **Pay date** 02/03/20 - 02/16/20 | ∧ ∨ |

12 AM                                                                                              ∧

1 AM

2 AM

3 AM

4 AM

5 AM  Enter Time                                                                           ∨

**Saunders, Shelia**

| | |
|---|---|
| **From:** | ECMC Group <basecamp@myworkday.com> |
| **Sent:** | Monday, April 01, 2019 1:00 PM |
| **To:** | Saunders, Shelia |
| **Subject:** | URGENT: Immediate attention is required |

Hello,

Your timecard is outstanding.

Please log into Workday, review your timecard entries and submit to your Manager prior to 2:00 pm CT, Monday. After 2:00 PM CT timecards will be unavailable for changes as the payroll process has started.

If the 2:00 pm CT, Monday deadline has passed, work with your manager for corrections to be included on your next regular payroll check.

Contact the HR Service Center at 1-855-217-0910 or email us at Workdaypayroll@ecmc.org for questions regarding timecard completion or the submission process.
Thank you,

The Payroll Team
Workdaypayroll@ecmc.org

This email was intended for SSaunders@altierus.edu · Manage Preferences

1

# EXHIBIT

# L

# ALICE LOFTON

# INSTRUCTOR

# WITNESS

# STATEMENT

Shelia Candy Saunders

770-262-7660

128 Cottonbelle Dr. Stockbridge, Ga 30281

To: EEOC

I Shelia C. Saunders is requesting 2 subpoenas for 2 witnesses, documents, recordings, emails, or any other evidence in the possession of the witnesses. I have already obtained written statements from each witness and would like for them to be subpoenaed to substantiate the information provided and present any other evidence that would be pertinent to my claim. The two witnesses are:

Dr. Michael Gordon his address 3650 Steve Reynolds Blvd. Duluth, GA 30096 phone # 470-606-0755

Latoya Williams her address 1750 Beaver Ruin Rd suite 500 Norcross, GA 30093 phone # 305-985-8938

Kindest Regards,

Shelia Candy Saunders

**Saunders, Shelia**

| | |
|---|---|
| **From:** | Lofton, Alice |
| **Sent:** | Thursday, February 14, 2019 10:39 AM |
| **To:** | Delaney, Moses; Eubanks, Paul |
| **Cc:** | Saunders, Shelia |
| **Subject:** | Unexpected Conversation |

Good morning,

I received an unexpected phone call last night from Mrs. Saunders. She shared with me a conversation that took place yesterday.  That conversation became a concern to me when my name was called. I was informed that I went back to Mr. Marlin and shared with him that Mrs. Saunders came into my class unprofessionally, asking a student to put on her uniform top and told the student to come to the front of the class, this did not happen.

Mrs. Saunders comes into my classroom every evening just to speak and hug. On this evening,  the topic of discussion, she came into my class asking the students if they had their school IDs. When she was on her way walking out she turned around and noticed one student did not have on her scrub top, Mrs. Saunders ask her did she have on her scrub top under her hoodie, the student said no ma'am, that's when  Mrs. Saunders ask her to put on her scrub top. The student stated that she was just walking in. Mrs. Saunders never ask any student to stand in front of the class AGAIN that did not happen in my classroom! Unfortunately I do not know what is going on or aware of the issues with Mrs. Saunders. This is my fourth week on the night shift.

This conversation last night took me for a loop.  First thing first, I don't do drama! I was asked by Mr.Marlin has Mrs. Saunders started back doing her thing, I stated I don't know Mrs. Saunders thing because I just started back on the night shift. Yes, I stated to Mr. Marlin that Mrs. Saunders asked a student to put on her uniform top, because he asked me.
I know how to manage my class And this conversation makes it appear as I don't know how to manage my class.
I was waiting for all my students to arrive, so I could address the uniform policy that evening.
I would like for my name to be removed from this conversation, and my character not questioned. Mrs. Saunders is a really good friend and I really respect her.
If you have any questions, please don't hesitate to call me.

This email may seem or sound like I am rambling off, but I'm just really disappointed in the content of the conversation. Please overlook all grammatical errors.

Thank you both for your perusal,

Alice Lofton, RMA
6786004454 cell

1

## Saunders, Shelia

| | |
|---|---|
| **From:** | Lofton, Alice |
| **Sent:** | Thursday, February 14, 2019 1:30 PM |
| **To:** | Delaney, Moses; Eubanks, Paul |
| **Cc:** | Saunders, Shelia |
| **Subject:** | Re: Unexpected Conversation |

Correction to the email..Mrs. Saunders did not come into my class unprofessionally!!! She came in smiling as always and the student was not upset!
I did stress I was taken back with this conversation. I just had time to read over my email looking at the response email.

**From:** Lofton, Alice
**Sent:** Thursday, February 14, 2019 10:39:01 AM
**To:** Delaney, Moses; Eubanks, Paul
**Cc:** Saunders, Shelia
**Subject:** Unexpected Conversation

Good morning,

I received an unexpected phone call last night from Mrs. Saunders. She shared with me a conversation that took place yesterday. That conversation became a concern to me when my name was called. I was informed that I went back to Mr. Marlin and shared with him that Mrs. Saunders came into my class unprofessionally, asking a student to put on her uniform top and told the student to come to the front of the class, this did not happen.

Mrs. Saunders comes into my classroom every evening just to speak and hug. On this evening, the topic of discussion, she came into my class asking the students if they had their school IDs. When she was on her way walking out she turned around and noticed one student did not have on her scrub top, Mrs. Saunders ask her did she have on her scrub top under her hoodie, the student said no ma'am, that's when Mrs. Saunders ask her to put on her scrub top. The student stated that she was just walking in. Mrs. Saunders never ask any student to stand in front of the class AGAIN that did not happen in my classroom! Unfortunately I do not know what is going on or aware of the issues with Mrs. Saunders. This is my fourth week on the night shift.

This conversation last night took me for a loop. First thing first, I don't do drama! I was asked by Mr.Marlin has Mrs. Saunders started back doing her thing, I stated I don't know Mrs. Saunders thing because I just started back on the night shift. Yes, I stated to Mr. Marlin that Mrs. Saunders asked a student to put on her uniform top, because he asked me.
I know how to manage my class And this conversation makes it appear as I don't know how to manage my class.
I was waiting for all my students to arrive, so I could address the uniform policy that evening.
I would like for my name to be removed from this conversation, and my character not questioned. Mrs. Saunders is a really good friend and I really respect her.
If you have any questions, please don't hesitate to call me.

This email may seem or sound like I am rambling off, but I'm just really disappointed in the content of the conversation. Please overlook all grammatical errors.

Thank you both for your perusal,

1

## Fw: HR Concerns--Modified

godsnewbeginnin.../Inbox

✉ **Margaret Anochie** <anochem@yahoo.com>
To: Apostle Candy <godsnewbeginning@bellsouth.net>

Jun 22 at 11:07 AM

Sent from Yahoo Mail for iPhone

Begin forwarded message:

On Monday, April 20, 2020, 7:54 PM, Margaret Anochie <anochem@yahoo.com> wrote:
Evening Kris,

I need to make a modification to my initial complaint. My final call with your assistant gathering information regarding the initial complaint.....She reached out and inquired if I had voiced my concern of sexual harassment statements made by Brame if I ever communicated my concerns to Delaney. I responded no but was evasive as to why.
My reason for not reaching out to Delaney regarding Brame action is due to fear, intimidation and retaliatory actions from Delaney. Below is a timeline of what I was subjected too and didn't feel safe / secure to reach out to Delaney. The culture in seriously compromised when the head exercises behavior such as the following:
Delaney Moses sexual advances and comments towards me began in May. He expressed them subtle, which progressed to direct by August (in which I ignored due to it being uncomfortable) and matriculated to aggressive in October. I continued to avoid Delaney. The continuous unethical unprofessional behavior this organization operates in places staff in a position to work in fear due to their retaliatory trend demonstrated. I am fearful of my life and position.

Margaret Anochie

"Shoot for the moon. Even if you miss it you will land among the stars.' Les Brown"

THis is the same way they did me it's a pattern the HR always cover MR. Delaney in all of his wrong doing I Reported my complaints to Kris Ford as well and she did nothing but covered for MR. Delaney.

**HR Concerns**

☒ **candy saunders** <godsnewbeginning@bellsouth.net>
To: candy saunders <godsnewbeginning@bellsouth.net>

Jun 22 at 2:41 PM

From: Margaret Anochie <anochem@yahoo.com>
To: Apostle Candy <godsnewbeginning@bellsouth.net>
Sent: Monday, June 22, 2020, 11:08:57 AM EDT
Subject: HR Concerns

On Tuesday, March 17, 2020, 10:52 AM, Anochie, Margaret <manochie@altierus.edu> wrote:
Morning Kris,

I have the following concerns below in which I need to discuss with you.  Please reach out at your convenience 404-403-6408.

I understand now how Mrs. Saunders feel and were treated because now it is happening to me the discrimination and sexual harassment.

Mtgs where my medications information due to my leave is joked about & gvn to staff to share my meds with

40hr restriction not enforced From leave return notice

My leave restriction notice is in plain site for all staff to read. Others shouldn't be privy to My medical personal information.

Brame engaging in inappropriate comments about my body

Brame involved in unethical behavior Delaney is orchestrating by not protecting me

Delaney has created a hostile work environment by lieing in me to staff & causing them to be combative/ not open to me

Orchestrating an attempt to defame my character by encouraging my staff to file false complaints about me to HR ex Wilkins, Betty

Delaney in contact with Wilkins while she is on leave...
a. allowed her to wrk while on leave by  securing / picking up CPR cards from Gwinnett college, bringing it to campus & distributing it to students in class while I'm teaching, allowed Wilkins to

teaching, allowed Wilkins to participate in commencement with staff and students. She walked with staff & sat on stage, interact / work with students and staff.

Upon Wilkins most recent Rtn I wasn't allowed to manage her. She always deferred to Delaney of her task to complete

Delaney instructed me to task Wilkins with job to complete. When I communicated to Wilkins of his expectations Wilkins laughed at me & responded I'm not doing it. I f/u with Delaney of her response & Delaney began to yell at me and denied ever given me the directives

Delaney stood closely & pointed his finger in my face in a confrontational manner telling me Wilkins is the better candidate for my position....this happened in November in-the presence of Brame who's afraid to speak up for his staff

Delaney compromised my certification/career/ethics/degree by intentionally tasking me objectives in which he pulled me out of the state certification proctoring session of students to accuse me of not performing

As of current Delaney walks by w/o speaking to me despite me speaking to him. Delaney is the cancer cell of the campus with the bullying/ hostile erratic behavior in which is supported by corporate.

Classes not adequately covered in which students complaints are shooting through the roof due the poor execution of management under Delaney's directives continue to stress staff, impact morale and creates a hostile environment. The message across the board staff receives is Delaney will have you released if we operate & execute without his dictatorship of his specific orders. There's countless past staff whom has been released from their position simply because we are not allowed full autonomy to perform as the professionals in role we are hired to fulfill

I'm now targeted as well as other I will not identify whom Delaney has placed on ax to be fired.

"The intuitive mind is a sacred gift and the rational mind is a faithful servant. We have created a society that honors the servant and has forgotten the gift."

*Margaret Anochie sent a copy of her letter to HR just like I did with the same sexual harrassment complaints and discrimination, + Retaliation that I had to go through she also sent me a voice memo as well*

From: **godsnewbeginning@bellsouth.net**
Subject: **Witness statement Docket # 7980-20**
Date: **Apr 21, 2020 at 11:32:03 PM**
To: **Appeals Tribune Hearing** appeals@gdol.ga.gov
Cc: **Apostle Candy** godsnewbeginning@bellsouth.net

**Appeal Tribunal Hearing**
**Shelia Candy Saunders Docket # 7980-20**
**Claimant : ***-**- 8555**
**Telephone Hearing 04/27/2020 @ 1:00PM**

**From:** Mik Lachelle <miklachelle@gmail.com>
**Date:** April 21, 2020 at 10:30:18 AM EDT
**To:** godsnewbeginning@bellsouth.net

To whom it may concern,
I Michaéla Green, worked for Altierus career college. During my time there we were allowed to create flexible schedules to handle the needs of the students we served. I never received any discipline for working past my time as long as I made up the hours to end at 40 hours a week

Thank you
Michaela Green
Sent from my iPhone

*Jonathan Young*

JONATHAN YOUNG
NOTARY
PUBLIC
EXP. 07/19/2020
DeKALB COUNTY, GEORGIA

From: **godsnewbeginning@bellsouth.net**
Subject: **Docket # 7980-20**
Date: **Apr 21, 2020 at 9:40:12 AM**
To: **Appeals Tribune Hearing** appeals@gdol.ga.gov
Cc: **Apostle Candy** godsnewbeginning@bellsouth.net

**Appeal Tribune Hearing**
**Shelia Candy Saunders**
**Claimant ***-**- 8555**
**Date of hearing: 04/27/2020**
**Telephone Hearing: 1:00PM**
**Witness Statement: Margaret Anochie**

**From: Margaret Anochie**
**Date: April 13, 2020 at 5:48:32 PM EDT**
To: Shelia Candy Saunders  <godsnewbeginning@bellsouth.net>
Subject: My Experience

My notice is to serve as my experience of working more than 40hrs a
week under the leadership of Mr. Moses Delaney. I was forced to work
from 6am to 10pm Tuesday's- Thursday's unexpectedly /
"conveniently", Monday's & Friday's 9am - 5pm as well as weekends at
a moment's notice without lunch breaks, and fight to simply take a
restroom break. I witnessed Mrs. Shelia Saunders working all day long
as well. Mrs. Saunders would come in at 11:00am  and work to 10:00
most times without a break for lunch as well. I accepted the
opportunity with Altierus College to work Monday's - Friday's
9am-6pm.  We were all aware of the ramifications of not following the
unfair directives from Mr. Moses Delaney. Past employees like Mrs.
Shelia Saunders were released under false pretenses fabricated by Mr.
Delaney  and Academic Dean David Brame in which the corporate
office supports the unfair labor violations we were subject too. The
Academic Dean Mr. David Brame was very much aware of the both of
us working till 10:00pm to 10:30 pm on Tuesday and Thursday's. Mr.
Brame gave us directive's every week  to see the students and get the
job done no matter what it takes and he will deal with Mr. Delaney

about it later.  From the Campus Director, Academic Dean, to the Chairs of the programs, they knew Mrs. Saunders was told to stay late on the nights she were scheduled to work and to locate the students at night, so the students can sign their Academic Appeal form. The Academic Dean always told us to do what we have to do to get the job done. I was told that Mr. Brame said that he had no knowledge of Mrs. Saunders working late on Tuesday's and Thursday's and that he didn't give her permission to work late that is so far from the truth. I myself experience the same treatment and the denial treatment from Mr. Brame when he is in front of the Campus Director, Moses Delaney, Mr. Brame is not a truthful human being, he has repeatedly lied unnecessarily it's very distasteful and sicking the way he lies for Mr. Delaney. No one else should never go through this kind of treatment. You would think out of all the things that are going on in the world right now, no one should be treated the way. Mrs. Saunders is being treated. No one should have to work under this kind of stress and hostility on their job and no where else. No one should be fired that is doing the kind of job that Mrs. Saunders did for this school, but most importantly for the students. Mrs. Saunders did everything for everybody that she could. She was always working hard and doing everything her supervisor asked her to do and get fired all because she files an grievance complaint to HR, when it is her rights to do so when she feels mistreated and be treated unfairly. We are all working under this same stress that Mrs. Saunders have experienced. We all work past our schedule and no one else got fired for not working their schedule, they put so much work on us to do and there is not enough time in a day, a week and not even in a month to do the work they demand for us to do. I myself ended up taking a medical leave because of the demand on my job was affecting my health I lost 90 lbs in 6 months because I wasn't taking care of myself. I came back to work March 2020 and they started retaliating  against me

the same way they did Mrs. Saunders because I filed a grievance complaint to HR. It got so bad in two weeks I had to go back on medical leave. It is not right how this company operates, out of my 25 years in this field this school is by far the worst working experience I've ever had. The Campus Director is the worst supervisor I have ever worked for in 25 years of working. We lost one of the best Academic Advisor when we lost Mrs. Saunders, she was very passionate about serving our students, and our students loved her so much. Mrs. Saunders went over and beyond to help our students, she is missed around here so much. There have been no one who can love on these students the way Mrs. Saunders did and do the job that she have done. She is highly respected by our students and the instructors. I witnessed first hand in our meetings when Mrs. Saunders was out on medical leave, Mr. Delaney and Mr. Brame was always complimenting and bragging on Mrs. Saunders saying time everyone in the meeting, that no one can do the job that Mrs. Saunders does with these students. They would say ten people can't do what one person do, they would say she stay here till the job is done without complaining.

FYI... I am a salaried employee and was not compensated for working more than 40hrs a week. Mrs. Saunders and I was expected to also work from home on our assigned iPad & laptop issued by the company. When Mrs. Saunders filed the charge with the EEOC against the school last year Campus Director, Moses Delaney, & the Academic Dean, David Brame arranged for her laptop to be taken and they took her office from her while she was out on medical leave and when she got back on December 9, 2019 they made her job very difficult by piling more responsibilities on her to do that she couldn't do in a week nor a month . They set her up to fail, their plan was to make her quit, but she didn't quit they terminated her based on unfair labor violations, unfair directives, false pretenses and fabrications, while she was on light

duty, low stress environment from her doctor and still on intermittent leave approved by corporate benefits team, up until April 22, 2020 and they still terminated her employment again under false pretenses. The reason I know so much about Mrs. Saunders experiences is because Mrs. Saunders worked closely with me because I was the Chair Director of the MA program that Mrs. Saunders we're responsible for. That's how I knew her schedule and when she arrived and when she left and rather or not she had permission to stay and do her job because we both had the same job responsibilities, at the same time. That's how I knew she always had permission to stay and do her job. We had the same program and the same supervisor and we both were held accountable for the same results with the same students.

I have recordings and documented communication of the countless unethical behavior this organization partake in.

I can be reached at 404-403-6408 anytime for any further inquiries.

Thanks in advance

Ms. Anochie, Margaret (Department Chair)

Jonathan Young

From: **godsnewbeginning@bellsouth.net**
Subject: **Docket #7980-20**
Date: **Apr 21, 2020 at 4:25:03 AM**
To: **Appeals Tribune Hearing** appeals@gdol.ga.gov
Cc: **Apostle Candy** godsnewbeginning@bellsouth.net

---

Shelia Candy Saunders
Claimant ***-**-8555
Subject: Permission To Work

To whom it may concern,

On behalf of Shelia Saunders(Academic Advisor); I can honestly say she has covered for me(Althea Childrey)at Altierus when I was there. I was a Security Officer for Altierus College. On Mondays and Fridays the end time was 20:30 and the Tues, Wed, Thurs the end time was 22:30. On January 27, 2020, February 4, 2020 and February 6, 2020 I had a conversation with the Campus Director about Mrs. Saunders being at the campus to see the students since it was the first week of the month and she had to advise the students, it was approved for her to stay so that, I may leave. He(Mr. Delaney) said he would try to find someone(adjunct), he was not able to find one so he said it was okay for Mrs. Saunders to stay and cover my post since she is there any way taken care of the students. I had asked the Academic Advisor Mrs. Saunders would she sit at my post and she did say she would sit at my post for me. I went to Mr. Delaney office and told him Mrs Saunders said she didn't mind and he said no problem. I did inform her that once the cleaning crew there she could leave and they would lock up. Mrs. Saunders would stay many times till 22:30 on Tuesday and Thursday's to make sure she did her job in advising the night shift students. The other Security officers have witnessed the same thing with Mrs. Saunders working with them till 22:30 on Tuesday and Thursday nights because we alternate the schedule sometimes based on the needs at all of our locations. Her time on her office door reflected 10:00pm on those nights and the students knew her schedule and they knew to come and see her before they leave the campus after their class let out at 22:00. Mrs. Saunders had 30 minutes to input the students notes in the system because she knew that the security officers had to clock out at 22:30 and she was

always finished by that time. The Academic Dean Mr. Brame and the Campus Director Mr. Delaney knew Mrs. Saunders were there late on those nights and to report anything other than that would not be the truth. A couple of times I myself spoke with them directly to make sure it was ok for her to stay and watch the Security post because I had to leave on an emergency to see about my Mom and was told that Mrs. Saunders can stay at the Security post since she is always here at night till 22:30 on Tuesday and Thursday. I also witnessed Mr. Delaney saying to Mrs. Saunders how valuable she is and that 10 people can't do the job that she does. I witnessed every day how Mrs. Saunders was so awesome and so great with the student body. She was a second mom to the students. To know Mrs. Saunders is to know complete love. When anyone would need to stay late, I would make sure it was known to the Campus Director Mr. Delaney and the Academic Dean Mr. Brame, as it would be overtime for her, however Mrs. Saunders made sure she didn't go over her 40 hours by adjusting her time on Wednesday and Fridays, and I personally did not have the authority to say anyone could stay outside of the regular hours that's why I know they were aware and gave permission because I asked them would it be ok and they never said it wasn't ok. The both of them always replied sure no problem. I am applaud that they would do that to her when I have heard personally myself how they bragged on how great she was and how valuable she was, and how great her performance was with the students. It would be remiss of me if I did not share with you the vital role Mrs. Saunders played on this campus with the students and the staff. Everyone loved her, and she was always a present help toward everyone. It takes a very mean person to treat her like that I didn't know that they could be so mean. I'm no longer employed by them I left at the end of February as well I put in my two week notice I went to take care of my Mom and I have a new job. If anyone deserve their unemployment it would be Mrs. Saunders, she was a hard working employee, always eager to help anyone most importantly the students. She is a woman with high integrity, high moral character, she is a woman who is dependable and who has principles.

Thanking you in advance.

Sincerely,

Althea Childrey

*Jonathan Young*

**GEORGIA DEPARTMENT OF LABOR**
**148 Andrew Young International Blvd NE STE 525**
**UI APPEALS TRIBUNAL**
**Atlanta, GA 30303-1734**
**404-232-3900    Fax 404-232-3901**
appeals@dol.ga.gov

**SUBPOENA**

**DOCKET# 7980-20**

**STATE OF GEORGIA**

**TO:  MARGARET ANOCHIE**              **CLAIMANT:**
                                                            **SHELIA C SAUNDERS**

**REQUESTED BY:  CLAIMANT**           **EMPLOYER:**
                                                            **EVEREST INSTITUTE**

**By virtue of this writ of SUBPOENA issued by the Commissioner of**
**Labor, Mark Butler, under the authority of O.C.G.A. Section**
**34-8-88 on conducting an administrative hearing as required for**
**the administration of the Employment Security Law of Georgia.**

**This appeal hearing will be conducted by means of telephone conference.**
**You will be called at this number (404)403-6408.  If this number is**
**incorrect, please call UI Appeals immediately.**

**The hearing will be conducted on 04/27/20 at 01:00 PM  and from day to**
**day until the administrative hearing before an Administrative Hearing**
**Officer is completed.**

**HEREIN fail not under penalty of Law.**

**In testimony whereof, the Seal of the State of Georgia is affixed hereto,**
**and the undersigned acting for the Commissioner of Labor, Mark**
**Butler, has authorized the issuance hereof.**

                    **Done and performed  04/21/20**

                    **Mark Butler, Commissioner of Labor**

                    **By BERNISHA  VANHORN**
                    **Chief Administrative Hearing Officer**

**GJT**

**GEORGIA DEPARTMENT OF LABOR**
**148 Andrew Young International Blvd NE STE 525**
**UI APPEALS TRIBUNAL**
**Atlanta, GA 30303-1734**
**404-232-3900    Fax 404-232-3901**
appeals@gdol.ga.gov

**SUBPOENA**

**DOCKET# 7980-20**

STATE OF GEORGIA

TO:  LATOYA WILLIAMS                    CLAIMANT:
                                        SHELIA C SAUNDERS

REQUESTED BY:  CLAIMANT                 EMPLOYER:
                                        EVEREST INSTITUTE

By virtue of this writ of SUBPOENA issued by the Commissioner of
Labor, Mark Butler, under the authority of O.C.G.A. Section
34-8-88 on conducting an administrative hearing as required for
the administration of the Employment Security Law of Georgia.

This appeal hearing will be conducted by means of telephone conference.
You will be called at this number (305)985-8938.  If this number is
incorrect, please call UI Appeals immediately.

The hearing will be conducted on 04/27/20 at 01:00 PM  and from day to
day until the administrative hearing before an Administrative Hearing
Officer is completed.

HEREIN fail not under penalty of Law.

In testimony whereof, the Seal of the State of Georgia is affixed hereto,
and the undersigned acting for the Commissioner of Labor, Mark
Butler, has authorized the issuance hereof.

                    Done and performed  04/23/20

                    Mark Butler, Commissioner of Labor


                    By BERNISHA  VANHORN
                    Chief Administrative Hearing Officer


GJT

**GEORGIA DEPARTMENT OF LABOR**
**148 Andrew Young International Blvd NE STE 525**
**UI APPEALS TRIBUNAL**
**Atlanta, GA 30303-1734**
**404-232-3900     Fax 404-232-3901**
**appeals@dol.ga.gov**

**SUBPOENA**

**DOCKET# 7980-20**

**STATE OF GEORGIA**

**TO:  DR. MICHAEL GORDON**          **CLAIMANT:**
                                     **SHELIA C SAUNDERS**

**REQUESTED BY:  CLAIMANT**          **EMPLOYER:**
                                     **EVEREST INSTITUTE**

**By virtue of this writ of SUBPOENA issued by the Commissioner of Labor, Mark Butler, under the authority of O.C.G.A. Section 34-8-88 on conducting an administrative hearing as required for the administration of the Employment Security Law of Georgia.**

**This appeal hearing will be conducted by means of telephone conference. You will be called at this number (470)606-0755.  If this number is incorrect, please call UI Appeals immediately.**

**The hearing will be conducted on 04/27/20 at 01:00 PM  and from day to day until the administrative hearing before an Administrative Hearing Officer is completed.**

**HEREIN fail not under penalty of Law.**

**In testimony whereof, the Seal of the State of Georgia is affixed hereto, and the undersigned acting for the Commissioner of Labor, Mark Butler, has authorized the issuance hereof.**

**Done and performed  04/23/20**

**Mark Butler, Commissioner of Labor**

**By BERNISHA  VANHORN**
**Chief Administrative Hearing Officer**

**GJT**

**GEORGIA DEPARTMENT OF LABOR**
**148 Andrew Young International Blvd NE STE 525**
**UI APPEALS TRIBUNAL**
**Atlanta, GA 30303-1734**
**404-232-3900    Fax 404-232-3901**
**appeals@gdol.ga.gov**

**SUBPOENA**

**DOCKET# 7980-20**

STATE OF GEORGIA

TO:  MIKLACHELLE GREEN              CLAIMANT:
                                    SHELIA C SAUNDERS

REQUESTED BY:  CLAIMANT             EMPLOYER:
                                    EVEREST INSTITUTE

By virtue of this writ of SUBPOENA issued by the Commissioner of
Labor, Mark Butler, under the authority of O.C.G.A. Section
34-8-88 on conducting an administrative hearing as required for
the administration of the Employment Security Law of Georgia.

This appeal hearing will be conducted by means of telephone conference.
You will be called at this number (404)263-1817.  If this number is
incorrect, please call UI Appeals immediately.

The hearing will be conducted on 04/27/20 at 01:00 PM  and from day to
day until the administrative hearing before an Administrative Hearing
Officer is completed.

HEREIN fail not under penalty of Law.

In testimony whereof, the Seal of the State of Georgia is affixed hereto,
and the undersigned acting for the Commissioner of Labor, Mark
Butler, has authorized the issuance hereof.

Done and performed  04/21/20

Mark Butler, Commissioner of Labor

By BERNISHA  VANHORN
Chief Administrative Hearing Officer

GJT

**GEORGIA DEPARTMENT OF LABOR**
**148 Andrew Young International Blvd NE STE 525**
**UI APPEALS TRIBUNAL**
**Atlanta, GA 30303-1734**
**404-232-3900     Fax 404-232-3901**
**appeals@gdol.ga.gov**

**SUBPOENA**

**DOCKET# 7980-20**

STATE OF GEORGIA

TO:  ALTHEA CHILDREY          CLAIMANT:
                              SHELIA C SAUNDERS

REQUESTED BY:  CLAIMANT       EMPLOYER:
                              EVEREST INSTITUTE

**By virtue of this writ of SUBPOENA issued by the Commissioner of**
**Labor, Mark Butler, under the authority of O.C.G.A. Section**
**34-8-88 on conducting an administrative hearing as required for**
**the administration of the Employment Security Law of Georgia.**

**This appeal hearing will be conducted by means of telephone conference.**
**You will be called at this number (404)957-7318.  If this number is**
**incorrect, please call UI Appeals immediately.**

**The hearing will be conducted on 04/27/20 at 01:00 PM  and from day to**
**day until the administrative hearing before an Administrative Hearing**
**Officer is completed.**

**HEREIN fail not under penalty of Law.**

**In testimony whereof, the Seal of the State of Georgia is affixed hereto,**
**and the undersigned acting for the Commissioner of Labor, Mark**
**Butler, has authorized the issuance hereof.**

                    Done and performed  04/21/20

                    Mark Butler, Commissioner of Labor

**By BERNISHA  VANHORN**
**Chief Administrative Hearing Officer**

GJT

# EXHIBIT

# M

# RELIGIOUS

# STATEMENT

# Altierus Career College – Norcross
# Commencement Exercises – January 12, 2019

Master of Ceremonies............Kimberly Bonsor-Goodman
*Dental Assistant Instructor*

Welcome......................................................Moses Delaney
*Campus Director*

Invocation......................................................Betty Wilkins
*Medical Assistant Instructor*

National Anthem ..........................................Please Stand

Commencement Speaker.......................Dr. Sheila Williams
*Author, Educator, Movitvational Speaker*

Student Regalia Recognition...................Dr. Paul Eubanks
*Academic Dean*

Presidential Award.....................................Maricela Sierra
*Betty Wilkins, Medical Assistant Instructor*

Salutatorian..................................................Esthella Brito

Valedictorian......................................................Sarah Tong

Instructor of the Year...... (announced during ceremony)
*Dr. Paul Eubanks*
*Academic Dean*

Employer of the Year.......................................Nikki Harp
*Director of Career Services*

Graduate Pledge.................................Dr. Nachiah Dhakal
*Medical Assistant Instructor*

Presentation of Diplomas.......................................Faculty

Farewell Recession.....................................Moses Delaney
*Campus Director*

## Saunders, Shelia

| | |
|---|---|
| **From:** | Wilkins, Betty |
| **Sent:** | Thursday, February 21, 2019 2:38 PM |
| **To:** | Delaney, Moses; Anderson, Lisa; Blair, Amber; Bonsor, Kim; Boynton, Douglas; Brant, Johnathan; Browder, Angela; Bullard, Meghan; Cabrera, Diana; Coombs, Andrea; Davis, Yolanda; Dossett, Michele; Eubanks, Paul; Ford, Shanika; Gooden, Kelly; Gordon, Deborah; Green, Michaela; Green, Rubina; Harp, Nikiti; Harris, Kelly; Jones, Melissa; Jones, Shanelle; Joseph, Sumathy; Lanning, Justin; Lemon, Slade; Lepper, Brian; Lofton, Alice; Marlin, James; Mckenzie, Michael; Mercedes, Hernan; Montilla, Natalia; Moore, Lakeia; Moorer, Shimeka; Murphy, Valerie; Norton, Kimberlee; Panchana, Elena; Panchana, Mirka; Saunders, Shelia; Simmons, Shamika; Sumpter, Brydai; Thompson, Ciarra; Waller, Tahirah; Williams, Patricia |
| **Cc:** | Ford, Kris |
| **Subject:** | RE: Promotion Announcement |

Congratulations Ms. Panchana! To God be the Glory!

**From:** Delaney, Moses <mdelaney2@altierus.edu>
**Sent:** Thursday, February 21, 2019 12:35 PM
**To:** Anderson, Lisa <landerson5@altierus.edu>; Blair, Amber <ablair@altierus.edu>; Bonsor, Kim <kbonsor@altierus.edu>; Boynton, Douglas <dboynton@altierus.edu>; Brant, Johnathan <jbrant@altierus.edu>; Browder, Angela <abrowder@altierus.edu>; Bullard, Meghan <MBullard@altierus.edu>; Cabrera, Diana <dicabrera@altierus.edu>; Coombs, Andrea <acoombs@altierus.edu>; Davis, Yolanda <ydavis@altierus.edu>; Dossett, Michele <MDossett@altierus.edu>; Eubanks, Paul <peubanks@altierus.edu>; Ford, Shanika <sford@ecmc.org>; Gooden, Kelly <kgooden@altierus.edu>; Gordon, Deborah <DeGordon@altierus.edu>; Green, Michaela <mgreen1@altierus.edu>; Green, Rubina <rgreen5@altierus.edu>; Harp, Nikiti <NHarp@altierus.edu>; Harris, Kelly <keharris@altierus.edu>; Jones, Melissa <mjones@altierus.edu>; Jones, Shanelle <ShaJones@altierus.edu>; Joseph, Sumathy <sjoseph4@altierus.edu>; Lanning, Justin <jlanning@altierus.edu>; Lemon, Slade <slemon@altierus.edu>; Lepper, Brian <BLepper@altierus.edu>; Lofton, Alice <ALofton@altierus.edu>; Marlin, James <jmarlin@altierus.edu>; Mckenzie, Michael <MMckenzie@altierus.edu>; Mercedes, Hernan <HMercedes@altierus.edu>; Montilla, Natalia <nmontilla@altierus.edu>; Moore, Lakeia <lamoore@altierus.edu>; Moorer, Shimeka <smoorer@altierus.edu>; Murphy, Valerie <VMurphy@altierus.edu>; Norton, Kimberlee <KNorton@altierus.edu>; Panchana, Elena <epanchana@altierus.edu>; Panchana, Mirka <MPanchana@altierus.edu>; Saunders, Shelia <SSaunders@altierus.edu>; Simmons, Shamika <ssimmons2@altierus.edu>; Sumpter, Brydai <BSumpter@altierus.edu>; Thompson, Ciarra <cithompson@altierus.edu>; Waller, Tahirah <TWaller@altierus.edu>; Wilkins, Betty <bwilkins@altierus.edu>; Williams, Patricia <PatrWilliams@altierus.edu>
**Cc:** Ford, Kris <KFord@ecmc.org>
**Subject:** Promotion Announcement

Hello Mighty Norcross,

I am excited to announce that Mrs. Elena Panchana has accepted the position of Director of Financial Aid, effective February 17, 2019.

Elena will oversee greater functions related to the administration of the campus' financial aid. Ms. Tahirah Waller and Mrs. Debbie Gordon will continue to report to Elena.

1

# EXHIBIT

# N

# CHARGE OF

# DISCRIMINATION



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Atlanta District Office**

100 Alabama Street, SW, Suite 4R30
Atlanta, GA 30303
TTY (404) 562-6801
FAX (404) 562-6909/6910
Website: www.eeoc.gov

October 1, 2019

Ms. Shelia Saunders
E-mail: godsnewbeginning@bellsouth.net

      RE: EEOC Charge No. 846-2019-12257
      Shelia Saunders vs. Altierus Career

Dear Ms. Saunders:

      This letter is to advise you that the above-referenced charge was recently assigned to me for investigation. **Charges are generally processed in the order that they are filed.** Your patience regarding this matter is appreciated in advance. The investigative process begins with obtaining information from you and your employer (Respondent). The position statement is the company's response to your EEOC charge. This information will be sent to you. Presently, I am unable to give you a specific timeframe of when the investigation into your allegations will start and end, as it depends on the outcome of the cases that have been filed before you, in addition to competing office priorities. However, the position statement will be sent to you once the investigation starts. If you disagree with Respondent's position statement, please be prepared to submit your rebuttal, along with supporting documentation, by the requested deadline date, which will be provided to you **at a later date.** This information is then reviewed to determine if a violation occurred under EEOC statutes. You may respond orally or in writing, however, it is strongly encouraged that you respond in writing. In addition, **you may now upload your rebuttal through the agency's public portal mentioned below, and you may also send and receive charge-related documents through the public portal.** Please note that in certain circumstances, a case may be closed without further action(s) from the Charging Party due to the evidence presented at the intake phase in the complaint process or simply due to the evidence of record available which may not warrant a rebuttal.

      Your cooperation in this matter is essential. Please be reminded of your responsibility to inform the Commission of your e-mail address, or any change of address, telephone number, or prolonged absence from your current address. In addition, **you may now provide and update your contact and legal representative information in the public portal mentioned below.** Also, if you have not already done so, please provide the name, e-mail address, position title, and telephone number of any witness who may be able to support your allegations.

      **Please e-mail your correspondence to the EEOC office in PDF format, or you may upload your correspondence in the public portal mentioned below.** Any additional information that you wish to be considered during the review of your file should be submitted in writing (e-mail), contain your charge number, and be addressed to my attention. However, all documents that you submit and/or upload to your EEOC charge after a deadline date has been provided will not be reviewed.

If you are inquiring about the status of your charge, you may access the Online Charge Status System at any time via https://publicportal.eeoc.gov/portal/. If you are having technical difficulties accessing the public portal, please contact the EEOC's technical support unit at 1-800-569-7118 or digitalsupport@eeoc.gov. For general information, please visit our website at www.eeoc.gov.

Finally, at any time throughout the investigation, you may submit a settlement proposal to me that you believe would resolve the issues that are addressed in your charge. Please keep in mind that entering into negotiated settlements does not constitute an admission of any violation of the statute(s) under which the charge is filed. Settlement is an opportunity for expedient resolution for both parties.

Sincerely,


Deborah Tunstall
Federal Investigator
Contact: (404) 562-6846
E-mail: deborah.tunstall@eeoc.gov

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 410-2019-09042 |

|  | and EEOC |
|---|---|
| *State or local Agency, if any* |  |

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| Ms. Shelia C. Saunders | (770) 262-7660 | 1958 |

| Street Address | City, State and ZIP Code |
|---|---|
| 128 Cottonbelle, Dr., Stockbridge, GA 30281 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| ALTIERUS CAREER | 15 - 100 | (651) 325-3263 |

| Street Address | City, State and ZIP Code |
|---|---|
| 1750 Beaver Ruin Rd., Suite 500, Norcross, GA 30093 | |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

| DISCRIMINATION BASED ON *(Check appropriate box(es).)* | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| ☐ RACE ☐ COLOR ☒ SEX ☐ RELIGION ☐ NATIONAL ORIGIN<br>☒ RETALIATION ☐ AGE ☒ DISABILITY ☐ GENETIC INFORMATION<br>☐ OTHER *(Specify)* | Earliest: 06-03-2019  Latest: 09-23-2019<br>☐ CONTINUING ACTION |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

On April 3, 2019, I filed an EEO charge (846-2019-12257) alleging discrimination based on my religion, in violation of Title VII. After the filing of my EEO compliant, my doctor placed me on medical leave. While out on medical leave the following occurred: I met with my counselor and discovered that I had been sexually harassed by Dr. Paul Eubanks, my personal belongings had been packed up and moved to a smaller office, I was locked out of the computer system, and my password was changed so that I could not check my e-mails while on leave. I returned to work on August 27, 2019, from my medical leave of absence. On September 3, 2019, Mr. Delaney (President) wrote me up regarding an over-time issue that occurred prior to my medical leave of absence, in which he classified this incident as "unfinished business" from our March 2019 meeting. Due to the continued hostile work environment, my doctor placed me on medical leave again.

No reason was given for this unfavorable treatment.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| Sep 24, 2019 *(signature)*<br>Date — Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 846-2019-12257 |
| | | and EEOC |

State or local Agency, if any

| Name (Indicate Mr., Ms., Mrs.)<br>**Ms. Shelia C. Saunders** | Home Phone (Incl. Area Code)<br>**(770) 262-7660** | Date of Birth<br>**1958** |
|---|---|---|
| Street Address<br>**128 Cottonbelle  Dr., Stockbridge, GA 30281** | City, State and ZIP Code | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (*If more than two, list under PARTICULARS below.*)

| Name<br>**ALTIERUS CAREER** | No. Employees, Members<br>**15 - 100** | Phone No. (Include Area Code)<br>**(651) 325-3263** |
|---|---|---|
| Street Address<br>**1750 Beaver Ruin Rd.,  Suite 500,  Norcross, GA 30093** | City, State and ZIP Code | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| Street Address | City, State and ZIP Code | |

| DISCRIMINATION BASED ON (Check appropriate box(es).) | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|

DISCRIMINATION BASED ON (Check appropriate box(es).)

☐ RACE  ☐ COLOR  ☐ SEX  ☒ RELIGION  ☐ NATIONAL ORIGIN

☐ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION

☐ OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest **11-01-2018**   Latest **04-02-2019**

☒ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I was hired with the above-named employer on February 20, 2018, as an Academic Advisor.  Since on or around November 1, 2018, I have been subjected to a hostile work environment by Paul Eubanks, Dean, and Moses Delaney, President.  For example, Mr. Eubanks has been nit picking me regarding my work, refusing to allow me to converse with my co-workers, assigning me extra work that I can't complete, continually threatening me about being written up and fired, denying me volunteer time to complete work when in the past this was allowed, and demoted me from my Captain role.  Mr. Delaney has concurred with Mr. Eubanks' actions and/or directives, and has denied me the opportunity to visit my doctor to see about myself due to the stress of the job.

I believe that I have been discriminated against due to my religion (Christian), in violation of Title VII of the Civil Rights Act of 1964, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| **Apr 03, 2019**<br>Date        *Shelia Cindy Saunders*<br>Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 410-2020-04001 |
| | | and EEOC |

State or local Agency, if any

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Ms. Shelia C. Saunders | (770) 262-7660 | 1958 |

| Street Address | City, State and ZIP Code |
|---|---|
| 128 Cottonbelle Dr., Stockbridge, GA 30281 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| ALTIERUS CAREER COLLEGE | 15 - 100 | (651) 325-3263 |

| Street Address | City, State and ZIP Code |
|---|---|
| 1750 Beaver Ruin Rd., Suite 500, Norcross, GA 30093 | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| ZENITH EDUCATION GROUP | 15-300 | (651)221-0566 |

| Street Address | City, State and ZIP Code |
|---|---|
| 111 Washington Avenue South Suite 1400 Minneapolis, MN 55401 | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

☐ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☒ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION
☐ OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: 12-09-2019   Latest: 02-19-2020

☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

On April 3, 2019, I filed an EEO charge with the EEOC alleging discrimination based on my religion (846-2019-12267). On September 24, 2019, I filed a second charge with the EEOC alleging discrimination based on my sex, disability, and retaliation regarding my religion, (410-2019-09042). On December 9, 2019, I returned to work with restrictions. However, President Delaney, was not flexible regarding my reasonable accommodation request(s). On February 19, 2020, I was terminated by a phone call from my position as an Academic Advisor by Mr. Delaney while I was currently on medical leave.

The reason given for terminating my employment was due to not working my scheduled time, and attendance issues.
I believe that I was discriminated against in retaliation for engaging in a protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended, and Title I of the Americans with Disabilities Act of 1990, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| 3/4/20 _____ *Shelia Candy Saunders* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |
| Date     Charging Party Signature | |

# RIGHT TO SUE

# DOCUMENTS

From: **LARRY SATTERWHITE LARRY.SATTERWHITE@eeoc.gov**
Subject: **Saunders, Shelia C. v. ALTIERUS CAREER**
Date: **Apr 9, 2021 at 3:24:58 PM**
To: **Godsnewbeginning@bellsouth.net**

---

Ms. Saunders,

Attached for your review is a copy of your NRTS in which you have 90 days to file in Federal Court.

Regards,


**Larry E. Satterwhite, Sr.**
**Senior Federal Investigator**
**U.S. Equal Employment Opportunity Commission**
**Atlanta District Office**
**100 Alabama Street S.W., Suite 4R30**
**Atlanta, Georga 30303**
**Phone: (470) 531-4773**
**Fax:    (404) 562-6910**
**E-mail:** larry.satterwhite@eeoc.gov


This message and attachments are from the U.S. Equal Employment Opportunity Commission and are intended solely for the addressee(s). Access by anyone else is unauthorized. The information contained herein may include confidential information that is protected by Federal and State Laws. If you are not the intended recipient, unauthorized review, forwarding, printing, copying, distributing, or using such information is strictly prohibited and may be unlawful. If you received this message in error, or have reason to believe you are not authorized to receive it, promptly delete the message and its attachments.



"You always pass failure on your way to Success."

EEOC Form 161 (11/2020)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

To: Shelia C. Saunders
128 Cottonbelle Dr.
Stockbridge, GA 30281

From: Atlanta District Office
100 Alabama Street, S.W.
Suite 4R30
Atlanta, GA 30303

☐ On behalf of person(s) aggrieved whose identity is
*CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 410-2020-04001 | Trey Pyle,<br>Senior Federal Investigator | (404) 562-6831 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination: The EEOC will not proceed further with its investigation, and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

**Derick Newton** Digitally signed by Derick Newton... **For**   02-22-2021

Enclosures(s)

**Darrell E. Graham,**
**District Director**

*(Date Issued)*

cc: Jodie F. Weinstein
Attorney
LITTLER MENDELSON, P.C.
1300 IDS Center
80 South 8th Street
Minneapolis, MN 55402

Enclosure with EEOC
Form 161 (11/2020)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS   --   Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days of the date you *receive* this Notice.**  Therefore, you should **keep a record of this date.**  Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost.  If you intend to consult an attorney, you should do so promptly.  Give your attorney a copy of this Notice, and its envelope or record of receipt, and tell him or her the date you received it.  Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *issued* to you** (as indicated where the Notice is signed) or the date of the postmark or record of receipt, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction.  (Usually, the appropriate State court is the general civil trial court.)  Whether you file in Federal or State court is a matter for you to decide after talking to your attorney.  Filing this Notice is not enough.  You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief.  Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge.  Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office.  If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS   --   Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible.  For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 -- *not* 12/1/10 -- in order to recover unpaid wages due for July 2008.  This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above.  Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION   --   Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer.  Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney).  Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE   --   All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case.  If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice).  While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case.  Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this Notice.**  (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

Enclosures(s)

cc:   **Wendy Alman**
      **Littler Mendelson, P.C.**
      **1300 IDS Center**
      **80 S. 8th Street**
      **Minneapolis, MN 55402**

**NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA):**   The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

<u>**If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.**</u>

**"Actual" disability or a "record of" a disability (note: if you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability):**

> ➢ **The limitations from the impairment no longer have to be severe or significant** for the impairment to be considered substantially limiting.
> ➢ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.
> ➢ **Only one** major life activity need be substantially limited.
> ➢ With the exception of ordinary eyeglasses or contact lenses, **the beneficial effects of "mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.
> ➢ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active**.
> ➢ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

**"Regarded as" coverage:**
> ➢ An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).
> ➢ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.
> ➢ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively *BOTH* transitory (lasting or expected to last six months or less) *AND* minor.
> ➢ A person is not able to bring a failure to accommodate claim *if* the individual is covered only under the "regarded as" definition of "disability."

*Note:   Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment.   Beyond the initial pleading stage, some courts will require specific evidence to establish disability.*   For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.

# Shelia Candy Saunders Responds To The Rebuttal Letter From ECMC

July 21, 2020                                                                 Page 1

Derick Newton

Equal Employment Opportunity Commission

Atlanta District Office

100 Alabama Street. SW. Suite 4R30

Atlanta, Georgia 30303

**Re:**   Shelia Saunders v. Altierus Career College, ECMC Education Inc., f/k/a
Zenith Education Group, Inc. and  d/b/a Altierus Career College {"ECMC Ed"), this
letter responds to the rebuttal to the charges of discrimination on the basis of
religion, disability, sexual harassment and retaliation filed by Littler Mendelson
P.C.

Given the lengthy explanation contained in the respondent statement which has
not been based on the facts but fabricated information, which is without factual
or legal merit, and should not be taken into considerations. It is the same
approach and information that was indicated and submitted to the
unemployment agency on the behalf of Moses Delaney denying my
unemployment. This company have the same old methods just new faces.

1.   **FACTUAL BACKGROUND.**
     A.   **About ECMC Education Inc.**

Zenith Education Group was listed for address purposes. The Respondent party
will be ECMC Education Inc., f/k/a Zenith Education Group, Inc. and  d/b/a Altierus
Career College ("ECMC Ed"),  Paul Eubank, Moses Delaney, and David Brame
which became an accomplice in the claim starting on December 9, 2019 upon me
returning to work. Altierus is mentioned because it is the name of the school that
I worked at. There are so many names that this company used, and they use
whatever name they need to use to fit whatever the situation is, to benefit what
they need to accomplish. My W2's was under Zenith, my unemployment claim

that they responded to, was Everest Institute, which is the name that they used for many years all over the different states, until they got caught doing things the

wrong way again because they use to be Corinthian. They were caught again doing the wrong thing and got in trouble with the accrediting body and lost their accreditation. They became Everest and after that according to the accrediting body they lost their accreditation and as a result of that, they lost all of their schools, they were shut down for corrupted management, their books and files were not kept according to the accreditation, and they kept 3 of the schools and changed their name to Altierus and kept 75 percent of the same employee's. With the same people you get the same results. If I was hired under Zenith which is what was on the letterhead of my offer letter. My Job Description was sent to me on a Zenith letterhead. On my separation letter the employer was ECMC. There is a reason why they use so many different names. That is why no one knows what to call the employer. Same people in the school's, same people in corporate, just a different name for the school. I do not know what to call this company. Just the mere fact that they are always changing their name is an indication that something is not right. They are always covering something up. The same way they change their name is the same way the same people Moses Delaney and upper management is always doing illegal maneuvers with fabricating emails with people name on it as if they have sent it out to the person, that's fabrication. They use blind copy and send it out to the people, that will cover up for them, then turn around and send out something else and the employee never get the email. It is a lot of covering up in this company. They have each other back if you can cover up for them you become a keeper.

**Exhibit P**

The cooperate office gives a handbook that states they are an equal employment opportunity employer, and maintains anti-discrimination, anti-harassment, anti-retaliation polices that affirm that ECMC strictly prohibits unlawful discrimination, harassment, and retaliation, it all sound really good on paper but it is far from reality, it is not the truth.

There have been numerous of claims filed against this employer in two years on the same merit's discrimination, harassment, retaliation, sexual harassment, and disability. Some employees have submitted statements and are still employed but out on medical leave.  I have submitted documents in:

**EXHIBIT N, O, P**


### B.  Pertinent Factual Background


ECMC would have you believe that I was treated lawful with regards to my work assignments and performance, hours work, medical accommodations, discipline, and employment separation. On the contrary Mr. Delaney operating as the Campus Director under the operation of ECMC Ed, did not treat me with respect and dignity, as I deserve for the high performance that I gave the company throughout my employment. I received high praise throughout the company, I meet and overachieved every goal that was put before me. There are many emails that supports my achievements throughout my employment at Altierus Career College. I have text messages that I will submit at the hearing and I am submitting a few in:

**EXHIBIT G, H, and I**

At the end of the day I was not compensated for any of my achievements I was robbed out of my merit's achievements. I was robbed of my merit increase that I was promised by Mr. Delaney at the end of the first year. He personally expressed to me that I was doing a phenomenal job that 10 people could not do in my absence. He told me before I went on leave that he would request for me a 10,000 dollar increase to my pay because I deserve that type of increase because of my high performance. Mr. Delaney stated that if he asks for 10,000 dollars and do not get it, he knew he would be able to get for sure at least a 5,000 dollar raise. He said you start high to land where you need to be, but he reiterated that

you Mrs. Saunders deserve the 10,000 dollars raise. I was so offended when I got my raise it was less than two dollars that was a slap in the face out of all my hard

work that I had given this company, overachieving in every area, exceeding every goal I were given, they offered me less than a two dollar raise. It took Mr. Delaney two weeks later to even face me, and when he finally faced me in my office he expressed to me how that made him feel and that he was embarrassed to even face me and how disrespectful he felt toward me, he said it was hard for him to look me in my face knowing that this was an unfair decision. I didn't believe him because I had started to complain about Paul Eubanks behavior toward me and I complain about him doing an assessment on me and had only been my supervisor for 2 months and I didn't think he should have a say so in my evaluation. And I also had filed a complaint against Paul Eubanks and Moses Delaney that resulted in them and the company giving me a raise less than two dollars which equates to 3.0 percent, but I had been promised that Moses would seek a 10, 000 dollar raise, that goes without saying as long as you are doing everything that they ask you to do wrong or right, you can get the raise and promotions at this school, but as soon as you rock the boat they retaliate against you.

The two-top achiever's at Altierus Career College were me and James Marlin, who also filed an EEOC charge against the Campus Director, and Mr. Marlin also received a 3 percent raise. After filing his EEOC charge he submitted a two weeks' notice to resign from the school. These are the facts not fabricated truth as they would have you to believe. I have submitted a recorded statement with Mr. Marlin and me, and Paul Eubanks and myself on March 4, 2019 titled: Paul Eubanks and Shelia Candy Saunders recorded March 4, 2019 at 12:04pm Charge #410-2019-09042, #410-2020-04001, 846-2019-12257. I have submitted documents see:

## EXHIBIT Q

I would not call my treatment at Altierus College being a non-legal complaint. Throughout my employment it was everything but that. On the contrary I know I was not treated in a manner that was lawful. I have attached Exhibit B to prove the retaliation and how Mr. Delaney kept me from getting the proper medical

care that my doctor demanded for me to receive. Instead I was subjected to a hostile environment constantly. I have submitted documents see:


**Exhibit B & N**


## <u>WORK ASSIGNMENTS AND PERFORMANCE</u>

Obviously, whoever gave this report on my performance is a total idiot. There are too many emails that go out weekly on my performance. I was so good at my role as an Academic Advisor, I superseded any goal that was put before me for an entire year before Paul Eubanks came aboard. I was pick out to be picked on by Mr. Eubanks by his own admission, he was extremely uncomfortable being around me based on my belief and religion. He admitted to me on a recorded message March 4, 2019, he also stated on this recorded message behind Mr. Moses Delaney back that I was doing an awesome job and that he liked me very much, and that it was Mr. Delaney that put him up to come against me from the very beginning when he came on board. Mr. Eubanks stated that if it was up to him I would be on salary, and working the same schedule as the students, since I was the Academic Advisor and my responsibilities is being there for the students, that he would change it where I would only come on campus three days a week and be put on salary. He also admitted that even cooperate Kris Ford told him to write me up if I use spiritual language, it is all on tape. It was not until I started complaining and sending grievance letters of not be able to do what I was trained to do. After I went to Tampa for my training and after my return from Tampa Mr. Delaney told me, do not worry about what I was trained to do in Tampa, he is the Campus Director at Altierus and he run his Campus the way he see fits. He said I must do what he says do here at Norcross. I said Yes Sir and I kept doing it his way because he was my Campus Director. He stressed that I am to do what he said do and not what I was trained to do. Mr. Delaney also said he ran his Campus not Kelly Washington. I have submitted documents and recordings in: **EXHIBIT # L** Documents & Altierus Recording #21 January 27-2019, Altierus Recording # 4

March 6, 2019, Altierus Recording # 5&6   March 21, 2019 Altierus Recording #8

March 27, 2019.                                                                    Page 6

Paul Eubanks did not facilitate individualize training, as stated under the work assignments and performance by ECMC Ed, those are not the facts, as a matter of facts I only worked with Mr. Eubanks from November 2018 to March 29, 2019 and on April 1, 2019 I was out on Medical Leave. When he first started in November, I

was still reporting to Moses Delaney the Campus Director until Paul Eubanks got acclimated to his role as the Academic Dean. I started reporting to Mr. Eubanks

about midway of December. Then I work directly under him for two and a half months. When he finally spent some time with me he learned that I had been to Florida for training and when I got back to the campus he learned that I was not following the training that Kelly Washington had prepare for me to bring back to the campus and apply it to my role. Mr. Delaney told me to follow what he wanted me to do because I had been extremely successful in the goals that he had to meet on campus for the company and he didn't want to not meet his goals and I played a major part of him meeting his Campus goals by "Jake" his Boss. Mr. Eubanks had Kelly Washington to call on a conference call and we discussed what it was that I needed to do to be successful, and the expectation that were now required, I expressed on the call how Mr. Delaney had me doing everything but what I was trained to do by Ms. Washington, and Paul Eubanks also spoke on the same thing, saying Mr. Delaney would not permit me to do what I was trained to do but what he wanted me to do. I was eager to do anything that was asked of me, until I was being Bullied and mistreated by management. I have a two-whole notebook of copies of my performance, and the service that I provided the students, faculty, and staff with what my job responsibilities required, and I did more. I kept all my notes to be provided at the hearing. A few have been submitted in:

        **EXHIBIT** Q & R, also Altierus Recording # 4 March 6, 2019 Kelly Washington, Recording Mr. Marlin, Paul Eubanks, and I on March 4, 2019 titled: Paul Eubanks and Shelia Candy Saunders recorded March 4, 2019 at 12:04pm Charge # 410-2019-09042 sent to EEOC attention to Deborah Tunstall. Jacob called "Jake" sent an email out letting everyone know I would not be the captain any longer. Mr. Delaney also took the role of my title being over the Ambassadors

program and when I came back to work my picture as an Academic Advisor were not on the Leader's Monitor but Kim Goodman a Caucasian that he promoted in my absence as an Academic Advisor and upon my arrival back on campus I notice that my picture had been move from the Academic Advisor board and Kim Goodman picture was there the students thought I was gone and have been replaced by Kim Goodman. When I mentioned to Mr. Delaney that my picture was not on the monitor, he said he would take care of it and he never did. He had no intentions in putting my picture on the monitor one month later he terminated me. My increase in pay was never about me being captain it was supposed to be about my yearly raise not about a promotion in title as a captain.  This was the first time being a captain was ever mention. This was the first time they had created this position as a captain on campus, and at that time there were no rotation every mention, they did that just to justify why that title was no longer assigned to me. They are professional's at covering their motive's in every area. I knew when I accepted the captain position that it was based on my performance of what I had done for the year, I had showed commitment, dedication and I was a go-getter but when I reported Mr. Delaney the rules changed Jake is Mr. Delaney Boss they are all on one accord. Mr. Delaney said the job I had done for my first year was extraordinary, that I did a job that 10 people that was put together in my absence couldn't do and he said this in front of everyone in the staff meeting. But after I charged him and Paul Eubanks with discrimination, retaliation, religion, and sexual harassment they reduce my raise to bare nothing, took my title as the captain and made up switching out captains from time to time, took the ambassador title from me and gave it to Kim Goodman and when I brought up in the meeting that we both should be over the ambassador's  Mr. Delaney said he would make sure that Kelly Harris the Chair for the Dental Program would be over the ambassador's and the Academic Advisor would just focus on the students, but Kim Goodman continued to meet with the Ambassador Student's, again in one month I was terminated. Mr. Delaney had no intention to take the ambassador position away from Kim, she is one of his inner circles that does anything right or wrong for him and he have said it to Kelly Harris. the Chair for Dental that he will have Kim back rather she is right or wrong because she has always had his back rather he is right or wrong. This is the kind of dysfunctional

atmosphere that we are subjected to work in. I have submitted emails and
recording see:

**EXHIBIT** G & H documents also Altierus Recording # 20 January 22, 2020 David
Brame, Moses Delaney, Kim Goodman, Shelia Saunders, Mr. James Marlin,

Paul Eubanks, and I on March 4, 2019 titled: Paul Eubanks and Shelia Candy
Saunders recorded March 4, 2019 at 12:04pm Charge #410-2019-09042 this
recording is sent to Deborah Tunstall.

## HOURS WORKED

Again, the information is not reported accurately, I have never been able to
complete my job duty for a 40-hour week work schedule is inaccurate. When I
stated the truth about Mr. Delaney about my training and what his expectation of
me at his campus was for me, Mr. Delaney started making my environment
incredibly stressful adding meetings to my daily schedule, adding extra curriculum
to my daily activities, making it almost impossible for me to complete my
assignment within my 40 hours. I have submitted documents and recordings see:

 **Exhibit** J-K documents and recordings Altierus College # 21 January 27, 2020.
Altierus College Recording #12 & 13 December 20, 2019. Altierus College #15
David Brame & Shelia Saunders. Altierus Recording #18 March 21, 2019 David
Brame & Shelia Saunders.

On March 26 through March 29, 2019 so much was added on making it extremely
difficult for me to complete and I was on my third day of the week and he added
extra assignments for me to complete. I expressed that I would need more time
to complete the assignments and I was already at 40 hours, Mr. Delaney told me
he was not going to approve overtime for me to complete the assignments. He
begins to bully me and said if I did not complete it, he would write me up and
there will be consequences. He was aware of my doctor's appointments and he
still gave me more work to do and less time to complete it. This was never about
managing my time, this was an assignation against me to force me out like he has
done other employees when he wants them to just walk away from their job, he
makes the environment very hostile and stressful. After he saw that he could not

force me out by not giving me my raise he tried adding other job duties that I had

not had before, after that did not work, he started threatening me saying if I do not complete the assignment that he had given, and he would not give me more time to do it. I became extremely ill and needed to go to the hospital because my heart was beating very rapidly, and he told me I could not leave to go to the hospital that I had to complete my days work. Despite the inaccurate report of me not adhering to company policies is not accurate these are manually manufacture timesheets. Mr. Delaney have the capabilities to go into the workday and add and subtract time out of the system and he did it when it was a cover up or orchestrate an artificial time sheet. This is what happen to the week of March 24 through March 29, 2019. After Mr. Delaney had threaten me I stayed and did the work off the clock like he had allowed me to do so many times, he and Paul Eubanks. I have submitted documents, timesheets, and recordings that they all were aware that I was working off the clock. It was never made to be an issue until I reported that they had allowed me to work off the clock. The reason the timesheets show the hours of 40 hours and more is because they was trying to do damage control and they wanted me to go back on all my weeks and tell them when I worked off the clock so they could fix a system that was broken all alone. I am not the only employee that was made to work off the clock and no breaks, and late hours. They all knew we was working late nights and long hours and all of that was fine until corporate was made aware that I was working off the clock they told me that I couldn't volunteer my time and I would have to submit the hours and if I did that again they would write me up because it is not right for me to report incorrect time. I express to corporate that I didn't report incorrect time I clock in and out like I was instructed to do and everyone in management that I report to was very much aware that I was still on campus working after I had clocked out, because I couldn't work on the clock after 40 hours. That is why Mr. Eubanks wanted to fix my pay and put me on salary and change my schedule so I could work the same time frame that the students came to school. I came in on March 29, 2019 because Mr. Delaney threaten me verbally and through text messages that I will be submitting at my hearing. I came in to complete the assignment that was given me to do and if I do not complete what was given to me to do, there will be a consequence. This was the kind of pressure I had to subject myself to a hostile environment every day after I made corporate aware

of the kind environment that I had to come to work to everyday, Mr. Delaney is exceptionally good at manipulating and retaliating against the employee's that make any type of statement against him. Every time I did work over 40 hours it was approved by   the supervisor, I did not have the capability to go into the system, and I could not go into the system and approve my own time, even before Mr. Eubanks started working at Altierus my supervisor Mr. Nassau always approved overtime he never wrote me up or threatened me to not work overtime because overtime was permitted. This was quite common for me to work late nights and long hours from the very beginning. The emails on warning me about overtime was fabricated emails. I was never warned nor written up about overtime. I could make my own schedule and post it on my office door. This did not become an issue until November 2018, when Mr. Eubanks came on board. I did not work overtime unless it was approved by Mr. Eubanks. I had to work overtime when we had orientation and workshops, it was expected of me. January 2019 came, and I was told I could not work past 40 hours unless it is orientation and I did just that. Mr. Eubanks would go into the system and approve it, here again overtime is not something I can just do on my own it has to be generated by the supervisor in the system. For the supervisor to generate the overtime he must be aware of the time and approve it. A supervisor is the only person that can put it in the system.

After March 29, 2019 I was incredibly happy because I had completed the assignment that Mr. Delaney had given me. I did not think at that time I had did anything incorrect, because I had come in before and worked with the students numerous of times and no one never said anything to me, other than thank you for being so loyal to the students and having the passion to see them be successful. On Monday April 1, 2019 I felt so proud, and I could not wait to tell Mr. Delaney that I completed the assignment, but he came to my office to tell me he was going to go ahead and give me that day to complete the assignment that he had given me. It was not until I said I had finished the assignment and he asked me, how did you do it. I replied that I came in on Friday March 29, 2019 and completed the work, since I could not get the overtime approved, I just came in and did what I had to do to complete my assignment, since I had been during that

Part 11

for the last three months and Mr. Eubanks was aware of that, I decided that I

would come in and do the work so I would not get in no trouble and get wrote up. I told Mr. Delaney since I had been threatened if I do not get the work done and there will be consequences, I had never been wrote up before and I did not want to start now. Mr. Delaney call corporate, and they start telling me that I could not work and volunteer my time and that I had reported incorrect time last week and they were going to write me up for reporting incorrect. At that point I realized that no matter what I decided to do this was the end result that they wanted to do no matter what I had decided to do, I was darned if I do and darned if I did not I was in a no win situation and Mr. Delaney had purposed in his heart that he was going to make my life miserable. I begin to get ill and asked to be dismissed to go to the hospital and I was told again that I could not go to the hospital. I begin to feel faint this was too much for me to handle I thought I had done everything right, only to be told by Mr. Delaney that I had not, as long as it was going to be that he had saved the day and he was going to give me the time to do it, everything would have been ok. Just because I figured out on my own to do it, suddenly it became an issue, it would have not been an issue if I had just did it the way he suggested. Had I known on Friday March 29, 2019 that he would allow me to do it on Monday April 1, 2019 all of this could have been avoided, but Mr. Delaney specifically told me he would not approve any overtime and I had to complete the assignment before Monday April 1, 2019, or there would be consequences on Monday April 1, 2019.

I became so ill I had to go to the doctor and the doctor had to perform an EKG on my heart because it was palpitating amazingly fast. After the results, the doctor took me off work and said that I could not be allowed to work in a stressful environment like this and be told that I could not leave to go and seek medical attention was unacceptable, and the school needed to be reported. I could have 1ost my life; I could have had a heart attack. The email that was sent in on April 2, 2019 by Mr. Delaney was after I was gone to the hospital, he knew immediately that the doctor had taken me off work due to working in a hostile environment and again he fabricated an email knowing that I was not there and had been taken off work due to a stressful environment. I never had a warning on my time

sheet, I never signed a warning about a time sheet, they called me while I was on medical leave to ask me to send in all the time and dates that I had worked and did not get paid for it, because now they are trying to do damage control because they knew that I had filed with the EEOC working off the clock, discrimination, religion, sexual harassment, retaliation. From that day till I returned back to work they were calling me and sending messages for me to send in the information because they wanted to now pay me for the days that I worked off the clock. That is why Kris Ford was so adamant about sending me a welcome back letter, not so much to welcome me back but for the reason of doing damage control on reimbursement for the time they knew I had worked and did not get paid for working. I am not the only employee that have worked off the clock and did not get paid for it. I have submitted documents and recording see: **Exhibit** C, J, K documents Altierus College recording # 5,6,10, 11,12,13,18.

## MEDICAL ACCOMODATIONS

ECMC Ed provided the medical accommodations, the intermittent time off due to my medical recommendations that my doctor requested. It was the Campus Director that was retaliating against me and ignoring every accommodation that the doctor requested for me to follow. I have submitted a few of the medical notes from my doctors that the College Campus Director did not allow me to attend my appointments, he  deliberately went against the recommendations and told me that I would not be able to go to my appointments unless it was during my lunch break. Corporate was not aware that he was not adhering to the doctor request nor were he adhering to corporate accommodating letters that he also were receiving from HR and when I brought that to his attention the next day he said to come to his office, and he said he is going to send me home until he figure out what to do with me and I started feeling ill and I left and went to the hospital and the doctor took me back off work, three hours later after they knew I had gone to the doctor, he called and said I was terminated. There are so many things go on behind the scene at Altierus that corporate don't know or don't care to know,  these allegations that are made are not the first time that they have received grievance against Mr. Moses Delaney they just turn their heads and

fabricate and manipulate the laws and the rules to fit whatever the occasion is with all employees that bring concerns to them about Mr. Delaney. Something is terribly wrong at this Campus, they swept everything under the rug and come up with unacceptable reasonings and it is everybody else fault except Mr. Delaney. Corporate have gone through three Academic Deans since I have been there for two years, something is wrong, and they do not try to fix the problem they just allow Mr. Delaney to keep hurting good people.  And approximately over 20 employees' good employees, some of them have just walked away and the rest were let go especially if they sent in a complaint. Every time I was to return back to work the very first day was very stressful because Mr. Delaney always wanted to go back and try to revisit why I left in April 1, 2019, that he had some unfinished business with me. Again, trying to stress me out and to give me an anxiety attack and he did, I ended back in the hospital and back off work. I have submitted documents and recordings.

**EXHIBIT** D, F, I, J, Altierus College Recordings # 11, 14, First day back to work recording # 9, 10.


## DISCIPLINE AND EMPLOYMENT SEPERATION

Upon returning to work Mr. Delaney again confronted me about the time that I was not compensated for working off the clock. He wanted to retrieve the information pertaining to the hours worked and the dates. I never told Mr. Delaney that I had received counseled and not to provide any information. Again, that is so far from the truth. I expressed to Mr. Delaney that at this time I would need to speak with the EEOC to make sure that I am supposed to be having this discussion with him since there are charges that have been established regarding this situation and that I will get back to him as soon as I can get this information. I knew that this must be very crucial to this situation because every time I return to work this was the very first thing that Mr. Delaney wanted and needed to address

verses making sure I was acclimating back on Campus and getting familiar with my role and getting repositioned to a new location since Mr. Delaney thought it was appropriate to move my personal belongings out of my office without discussing that with me. He called me while I was out to try to get my time and he

Page 14

did not never mention that he had moved me out of my office every time I returned; he had moved me. That was stressful because every time he moved my personal items there were things missing. I expressed that he should not move my things unless I am informed. There was never an ongoing instruction regarding my expectations regarding my work schedule and my hours of work, again so far from the truth, again my schedule was posted on my office door and everyone was made aware of my hours. On January 30, 2020 I did not give my providers the impression that ECMC Ed had not permitted me to take time off. I told my provider specifically that it was Moses Delaney that would not allow me to attend my appointments.  I sent Lisa Borowitz a letter sharing with her that Mr. Delaney would not allow me to go to my doctor appointments as well in spite of the ongoing accommodation letter that ECMC Benefits Team sent out on February 5, 2020 and copied Moses Delaney, David Brame, and Kris Ford, Mr. Delaney was not allowing me to go to my appointments. Obviously, Mr. Delaney did not let me go to my appointments, my doctors had to write a letter to the Leave Department expressing the unfair treatment that I as receiving through this administration. Mr. Delaney does thing undercover and corporate do not know until it is exposed what he is doing. Mr. Delaney have the mid set that he is the Campus Director and he run the campus the way he wants to run it and the people that expose him he finds a way to fabricate a story that corporate either know that he will bend the rule and go alone with him to remain in compliance, or they get caught off guard and then try to do damage control by making an untruth be true. The same way Mr. Delaney retaliated against me and said he never gave me a laptop and he told Technical support to take it away from me if I had one. This is one of many lies that Mr. Delaney have told and then try to cover it up. I am submitting copies of emails that he discussed the laptop with technical support. I am a firm believer you cannot have 100 people saying one thing the same way and have one person saying something different and the one person is right do the math. Therefore, they became so adamant about getting my time right because corporate knew that Mr. Delaney, Paul Eubanks nor David Brame should have allowed me to work off the clock and instead of them make the wrong right within the management department they tried to make me be the fall guy and I will not allow them to

Keep doing this to me and the people that come after me. Something needs to change in this administration. I have submitted documents and recordings see:

**EXHIBIT:** Laptop document # B, Documents for the warning # P, Documents for Accommodation letters # I, Document Time clock # C, Documents on Timesheets # K, they show my time was 40 hours and the other hours that are shown those are the hours that they added to my time reflecting that I worked overtime which is not a true reflection of what I actually clock in myself. Mr. Delaney painted a picture that is not accurate in terms of my involvement on my time sheet. Retaliation documents # J, The MA Program Chair Ms. Margret Anochie statement, MA Instructor Alice Lofton Statement, The Security Guard Statement Althea Childrey, Admission Representative Michaela Green, The Security Guard Latoya Williams. Instructor Johnathan Brandt October 9, 2018 Recording. Altierus College Recording # 21, Alice Lofton. Altierus College Recording # 22 & 23 David Brame. Altierus College Recording # 18 David Brame. Altierus College Recording # 4, 5,6, 8, 9,10,11,12,13,14,15,18,20. Witness Cottonbelle Recording # 2,3,4,5,7. Cottonbelle no number recording April 21, 2019. New Recording # 15.  These are recordings of evidence and statements that ECMC apparently was not aware of that other employees were willing to make a statement based on the truth of what really happened on campus that corporate is not aware of or if they even really care about what is going on at this campus behind closed doors. It is sad that a few people that continue to work there in silence all because their jobs have been threaten and they need their job. However, a few people have stood up and said this behavior must stop it is not lawful and it is unaccepted. These are not insinuations in my charge they are absolutely the truth so help me God. Therefore, fortunately I have recordings because the company always protect the management team but this time, they underestimated the people that work there we will not stand back and be silent. They are willing to come forth and be subpoenaed if there is a need for them to speak. They have provided notarized statements, recorded statements, and they spoke of how the management team including the investigating team from ECMC off the clock and instead of them make the wrong right within the management

and the Academic Dean tried to coerce them into writing an untrue statement to condemn my facts. This Is the cover-up that they are used to doing just to win. They will break rules and regulations just to win. But I am a firm believer that the truth always come to the light. It is all on tape by the Dean Paul Eubank and the Dean David Brame which both resigned from the company because they were coerced by Mr. Delaney to make my working environment unbearable and the received knowledge that their conversation was recorded admitting to me that they were just following instruction by their supervisor Mr. Delaney and they needed their job, so they have to do what he tell them to do even when they knew it was not right. The company may say that they could substantiate the allegations of religious or sexual harassment toward me, but it is on tape in Mr. Eubank very own statement. I was discriminated against and I was retaliated against, I had to endure sexual remarks, and I was mistreated very unfairly, all because I took a stand and came out of silence and filed charges at the EEOC. The truth always come to the surface no matter how hard you try to hide it. What is done in the dark always come to the light one way or the other. No matter how many times you say it did not happen will not make it true. It is in writing and it is recorded. I was threatened to be written up and terminated if I did not reframe from a language that was openly used at the College. But I was singled out and my job was threatening if I used any religious statement. There are recordings submitted, programs, graduations, and meetings, submitted with spiritual language emails submitted with spiritual language. I was discriminated against because I took a stand and filed a complaint. Other workers were going through similar harassment and had medical conditions that I had, so I did not understand the retaliation that I was enduring. There are other employees that are mention in my claim that did experience the same retaliation, the stressful environment, sexual harassment, and they have all discussed it now and want to do something about and speak out. Two months ago, a couple of workers filed a complaint at the EEOC for similar treatment, they had to go to the doctor as well due to the horrible treatment. They were told they could not communicate with me while I was out on medical leave. They have all came forth with the same allegations filing with the EEOC as well. Let us compare apples with apples. They too have a pending EEOC complaint. My complaint on sexual harassment with Dr.

Paul Eubanks happened March 4, 2019. I submitted the recording on EXHIBIT Recording March 4, 2019 it was sent to the EEOC investigator Deborah Tunstall after I talked to my Doctor in my counseling therapy, my Doctor advised me to submit the recording not to stay silent. My retaliation and discrimination, my religious statement and sexual harassment statements, witness statements and recordings have all been submitted. Dr. Paul Eubanks apologized on a recorded statement that it was him who had the issues with my religion and he said he didn't know how to deal with his issues with it and he tried to get other people involved to make a statement and they told him I believe in the same God and if you want me to make a statement against Ms. Saunders then I would have to make a statement against myself because I feel the same way Mrs. Saunders feel. Mr. Paul Eubank resigned a month later while I was out on medical leave. I do not believe that I was treated unfairly with the accommodations that was set in place for me. I believe I was treated unfairly from the management at the Campus Level that deprived me of getting the medical treatment that was required for me to have. Those are the facts my doctor wrote in medical notes that they had to resubmit another referral for my treatment due to the management not allowing me to come to my appointments on a consistent base and those decisions was affecting my progress of healing. Those are the facts and the medical notes by my doctor have been submitting in: **EXBIHIT # D.**

I was moved on three occasion only whenever I went back out on medical leave. Each time I was taken out of work based on the stressful and hostile environment Mr. Delaney retaliated against me and move me to be mean that is what he does he act just like a rebellious child that cannot have his way because of his issues from his childhood of having his way that he so freely openly shares to the ones he feel safe with sharing if he does not have any issues with you, he feels as thou you are a friend, but as soon as you disagree with him about anything you become enemy number one and that is sad. He should get him some therapy as well so he can learn how to handle real issues. My disability does not have anything to do with the move of my office, I fell on the job in November, and December that no one wanted to address and eventually it became an issue because it went unnoticed. Mr. Delaney again did not do an accident report. **Those are the facts.** The fall created other complications that had to be

addressed. I can definitely dispute the notion that ECMC would have you to think that there are no real issues here and that I have not been mistreated unfairly, again I believe that I have more than enough evidence to prove my claim over and over again. The evidence is over whelming unbelievable, that anyone would have to be subjected to this type of malicious retaliatory treatment is beyond my imagination.

## **CONCLUSION**

The information submitted with my rebuttal statement demonstrates that there is rules and regulations and unlawful discrimination, retaliation, sexual harassment, and religion has occurred with respect to this matter. Yes, ECMC Ed write all these strict policy against discrimination, sexual harassment, religion and retaliation in their handbook and it all sounds particularly good on paper. But the

reality is that they have management in place that they constantly breaking every rule and policy pertaining to these matters. The Charges that I bring to the EEOC and to ECMC Ed substantiated evidence and not speculation but facts. Given these facts, I Shelia Candy Saunders respectfully request that Mr. Moses Delaney

and ECMC Education Group be held accountable for the grievance findings,

discrimination, sexual harassment, religion, and retaliation based on the evidence of probable cause.

In Kindest Regards,

Shelia Candy Saunders

# EXHIBIT

# O

# SEPERATION

# NOTICE



State of Georgia
Department of Labor

**SEPARATION NOTICE**

1. Employee's Name Shelia Saunders                                    2. SSN 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

   a.   State any other name(s) under which employee worked. _____

3. Period of Last Employment: From 02/20/2018 _____ To 02/21/2020

4. REASON FOR SEPARATION:

   a.  LACK OF WORK ☐

   b.  If for other than lack of work, state fully and clearly the circumstances of the separation:_____
   Working outside of assigned schedule and working overtime without approval. _____
   _____
   _____

5. Employee received payment for: (Severance Pay, Separation Pay, Wages-In-Lieu of Notice, bonus, profit sharing, etc.)
   (DO NOT include vacation pay or earned wages)

   _____ in the amount of $_____ for period from _____ to _____
       (type of payment)

   Date above payment(s) was/will be issued to employee _____

   IF EMPLOYEE RETIRED, furnish amount of retirement pay and what percentage of contributions were paid by the employer.
   _____ per month_____% of contributions paid by employer

6. Did this employee earn at least $7,300.00 in your employ?  YES ☒  NO ☐  If NO, how much? $_____
                                    Average Weekly Wage $642.00

Employer's
Name ECMC Education

Address 111 Washington Ave South, Suite 1400
                (Street or RFD)

City Minneapolis _____ State MN   55401
                               ZIP Code

Employer's
Telephone No. 651-325-3540
      (Area Code)      (Number)

Ga. D. O. L. Account Number 104649-09
This is the number assigned to the employer by Georgia
Department of Labor.

I CERTIFY that the above worker has been separated from work
and the information furnished hereon is true and correct. This
report has been handed to or mailed to the worker.

_____
Signature of Official Employee of the Employer
or authorized agent for the employer

**NOTICE TO EMPLOYER**

At the time of separation, you are required by the Employment
Security Law, OCGA Section 34-8-190(c), to provide the
employee with this document, properly executed, giving the rea-
sons for separation. If you subsequently receive a request for the
same information on a DOL-1199FF, you may attach a copy of this form
(DOL-800) as a part of your response.

Human Resource Compliance Specialist
_____
Title of Person Signing

02/24/2020
_____
Date Completed and Released to Employee

**NOTICE TO EMPLOYEE**
**OCGA SECTION 34-8-190(c) OF THE EMPLOYMENT SECURITY LAW REQUIRES THAT YOU TAKE
THIS NOTICE TO THE GEORGIA DEPARTMENT OF LABOR FIELD SERVICE OFFICE IF YOU FILE A
CLAIM FOR UNEMPLOYMENT INSURANCE BENEFITS.**

SEE REVERSE SIDE FOR ADDITIONAL INFORMATION.

DOL-800 (R-6/19)

## INSTRUCTIONS TO EMPLOYER FOR COMPLETION
### OF THIS SEPARATION NOTICE

In accordance with the Employment Security Law, OCGA Section 34-8-190(c) and Rules pursuant thereto, a Separation Notice **must** be completed for each worker who leaves your employment, regardless of the reason for the separation. This notice shall be used where the employer-employee relationship is terminated and shall not be used when partial (DOL-408) or mass separation (DOL-402) notices are filed.

Item 1. Enter employee's name as it appears on your records. If it is different from the name appearing on the employee's Social Security Card, report both names.

Item 2.  Enter the employee's Social Security Number. **Verify for correctness.**

Item 3.  Enter the dates of employee's most recent work period.

Item 4.  a.  If the reason for separation is for "LACK OF WORK," check box indicated.
  b.  If the reason for separation is OTHER THAN "lack of work," give complete details about the separation in space provided. If needed, add a separate sheet of paper.

Item 5.  If any type payment, (i.e. Separation Pay, Wages-in-lieu of Notice, etc.) was made, indicate the type of payment and the period for which payment was made beyond the last day. Give the date on which the payment was/will be issued to the employee. DO NOT include vacation pay or earned wages.

Item 6.  Check the appropriate block YES or NO to indicate whether this employee earned at least $7,300.00 in your employ. If you check NO, enter amount earned in your employ. Give average weekly wage (without overtime) at the time of separation.

Employer's Name.     Give full name of employer under which the business is operated.

Address.   Give full mailing address of the employer where communications are to be sent in regard to any potential claim.

Company's Georgia DOL Account Number.     Your state DOL Unemployment Insurance Account Number as it appears on your Quarterly Tax and Wage Report, Form DOL-4.

Signature.     This notice must be signed by an officer or employee of the employer or authorized agent for the employer, and this person's title or position held with the employer must be shown.

Date.   This notice must be dated as of the date it is handed to the worker. If the employee is no longer available at the time employment ceases, mail this form (DOL-800) to the employee's last known address and enter date the form is mailed.

......................................................................................................................

OCGA Section 34-8-256(b)
PENALTY FOR OFFENSES BY EMPLOYERS. "Any employing unit or any officer or agent of an employing unit or any other person who knowingly makes a false statement or representation or who knowingly fails to disclose a material fact in order to prevent or reduce the payment of benefits to any individual entitled thereto or to avoid becoming or remaining subject to this chapter or to avoid or reduce any contribution or other payment required from an employing unit under this chapter or who willfully fails or refuses to make any such contributions or other payment or to furnish any reports required under this chapter or to produce or permit the inspection or copying of records as required under this chapter shall upon conviction be guilty of a misdemeanor and shall be punished by imprisonment not to exceed one year or fined not more than $1,000.00 or shall be subject to both such fine and imprisonment. Each such act shall constitute a separate offense."

OCGA Section 34-8-122(a)
PRIVILEGED STATUS OF LETTERS, REPORTS, ETC., RELATING TO ADMINISTRATION OF CHAPTER. "All letters, reports, communications, or any other matters, either oral or written, from the employer or employee to each other or to the department or any of its agents, representatives, or employees, which letters, reports, or other communications shall have been written, sent, delivered, or made in connection with the requirements of the administration of this chapter, shall be absolutely privileged and shall not be made the subject matter or basis for any action for slander or libel in any court of the State of Georgia."

# EXHIBIT

# P

# ZENITH



**zenith**
EDUCATION GROUP

111 Washington Ave S, Suite 1400, Minneapolis, MN 55401  P 651-221-0566

February 6, 2018

Shelia Saunders
128 Cottonbelle Drive
Stockbridge, Georgia 30281

Dear Shelia:

I am pleased to formally extend this offer of employment to you for the position of Academic Advisor reporting to Nasser Salmanzadeh. This letter will confirm the details of the employment offer. If acceptable, please electronically sign and submit. This offer will expire within seven days of the date of this letter.

**Position and Reporting Responsibilities:**

Academic Advisor reporting to Nasser Salmanzadeh, Academic Dean.

**Anticipated Start Date:**

February 20, 2018

**Location:**

Georgia - Norcross

**Compensation:**

You will be paid at a starting hourly rate of $22.60 per hour, less any payroll deductions and all required withholdings, which will be paid bi-weekly in accordance with Zenith Education Group, Inc.'s standard payroll practice. This is a non-exempt position, meaning you will be paid an overtime premium for any overtime you work in accordance with applicable law.

**Benefits:**

All employees who are regularly scheduled to work at least 30 hours per week (20 for instructors) will be entitled, during employment, to such medical and other employee benefits as the Company may offer from time to time, subject to applicable eligibility requirements.  This includes participation in our group medical, dental, vision, accidental death and dismemberment, company paid life and optional employee paid life insurance programs and our Company 401(k) plan. The Company reserves the right to change or eliminate these benefits on a prospective basis at any time as it deems appropriate.  For additional information, including PTO eligibility, please refer to the benefits summary.

**At-Will:**

The employment relationship at Zenith Education Group, Inc. is by mutual consent ("Employment-At-Will"). This means that employees have the right to terminate their employment at any time and for any reason. Likewise, Zenith Education Group, Inc. has the right to discontinue your employment at any time and for any reason, with or without cause.

**Employment Offer Contingency:**

This offer is contingent upon the following:

- Compliance with federal I-9 requirements (although you have three days to complete this process, please provide suitable documentation on your first day of work verifying your identity and authorization to work in the United States).
- Acceptable results of a background and student loan credit check. (You will receive a separate consent form request email from our background check provider, Orange Tree, with instructions for your background check).

 **zenith**

**Job Description**

| | | | |
|---|---|---|---|
| **Job Title:** | **Academic Advisor** | | |
| **Job Code:** | S20064 | **FLSA:** | Non-Exempt |
| **Cost Center:** | Campus Administration | **PIR:** | Covered |
| **Date:** | December 1, 2017 | **Status:** | Active |
| **Location:** | Altierus campus | **Grade:** | Hourly 6 |

**Job Summary:**

Responsibilities primarily aligned to student retention and satisfaction. Provides individual and group advising outside of discipline-related content (academic) guidance.  Assists in the coordination of activities related to student programs and services aimed at supporting student success and program completion for the campus.  Makes outside referrals as needed to support student retention. Primary performance metrics include campus retention rates and successful transition of students on Leave of Absence back to active status.

**ESSENTIAL DUTIES AND RESPONSIBILITIES:**

Guidance and Student Support

- Practice a proactive approach to supporting students by swiftly taking action on any personal issue interfering with program success and retention.
- Serve as a liaison between student and campus.
- Support and mentor students in person, by phone, or in a group setting on a regular basis
- Provide resources to students and make appropriate community-based referrals related to needs and/or concerns expressed in advising sessions or through faculty and staff.
- Participate in meetings to identify students who may be in danger of dropping or being withdrawn from their programs of study.
- Provide basic information and routine advice, guidance and assistance to students on application of policies and procedures.
- Partner with the campus's academic team to develop, manage and implement the campus retention plan.
- Address any inquiries, questions, concerns or issues; refer students to appropriate faculty and staff; and ensure appropriate action is taken to the satisfaction of the student, college, and/or regulatory agencies in compliance with policy, procedures and legal requirements.

Administrative

- Complete and enter accurate reports including daily activity reports.
- Document attendance at workshops and other organized student service events.

*This job description is intended to describe the general nature of the work, it is not all inclusive.  All responsibilities are considered to be essential functions of the job.  The Company reserves the right to modify job descriptions as it deems necessary to properly conduct business.*

 **zenith**
EDUCATION GROUP

**Job Description**

- Assist student in accurately completing and submitting all required academic, advising, and attendance forms.
- Distribute student satisfaction surveys and in partnership with the academic team, develop plans to resolve potential concerns.

Coordination of Student Activities
- Participates with Assist New Student Orientation as assigned.
- Plan, implement and direct programs, including partnering with community agencies, that proactively promote retention, high levels of student engagement, and satisfaction
- In partnership with Admissions, ensure students have completed onboarding prior to start of classes.
- Organize workshops and events to proactively address common issues students encounter such as transportation, daycare, and housing.

Other Responsibilities
- Attend and successfully complete all training for this position, as required at any time by the College.
- Complies with all Zenith and ECMC Enterprise Policies
- Performs other duties as assigned

## QUALIFICATIONS
*To perform this job successfully, an individual must be able to perform each essential duty satisfactorily. The requirements listed below are representative of the education, experience, knowledge, skill, and ability required. Reasonable accommodations may be made to enable individuals with disabilities to perform the essential functions.*

- Bachelor's degree is required
- Minimum of 3 years of experience as an Academic Advisor
- Prior experience in education preferred
- Strong written and verbal communication and presentation skills
- Strong organizational skills and attention to detail
- Commitment to student satisfaction and success
- Knowledge of Microsoft Office Suite: Word, Excel, Outlook
- Ability to manage conflicting priorities and handle multiple tasks/projects concurrently
- Great time management skills with the ability to complete job assignments in the allotted time
- Displays and promotes high standards of ethical conduct and behaviors consistent with organizational and government standards
- Displays dependability to respond to requests for service and assistance
- Excellent teamwork and able to balance between team and individual responsibilities

*This job description is intended to describe the general nature of the work, it is not all inclusive. All responsibilities are considered to be essential functions of the job. The Company reserves the right to modify job descriptions as it deems necessary to properly conduct business.*

 **zenith**
EDUCATION GROUP

**Job Description**

- Ability to consistently carry out job responsibilities and to perform without extensive direction

## SUPERVISION/CONTACTS:

- Reports to (title only) – Academic Director
- Direct Reports (titles reporting to this position) – NA

## WORK ENVIRONMENT –

| ☒ | Office:  Work is normally performed in a typical interior/office environment that requires normal safety precautions (such as in typical office or administrative work). |
|---|---|

## PHYSICAL DEMANDS -

| ☒ | Light work:  Job involves sitting most of the time; walking, lifting, bending, standing etc. are occasionally required. |
|---|---|

## TRAVEL –

| ☒ | Occasionally – up to 25% of the time. |
|---|---|

## ADDITIONAL PERTINENT INFORMATION:

- Required to work normal hours to successfully perform the job responsibilities
- May need to work flexible hours necessary to complete the job on a weekly basis
- Frequently subjected to interruptions, multiple calls and inquiries
- The noise level in the work environment is usually quiet to moderate

*This job description is intended to describe the general nature of the work, it is not all inclusive.  All responsibilities are considered to be essential functions of the job.  The Company reserves the right to modify job descriptions as it deems necessary to properly conduct business.*

 **zenith**
EDUCATION GROUP

*I West Washington Avenue South*
*Suite 1200*
*Minneapolis, MN 55401*
**www.zenith.org**

12/18/2019

Shelia Saunders
128 Cottonbelle Drive
Stockbridge, GA 30281

Dear Ms. Saunders:

Welcome back to work. I am writing regarding one of the issues that remains outstanding from discussions that began before your leave of absence.

As you know, during a conversation regarding time worked in late March 2019, and specifically in the context of ongoing direction provided that you were not permitted to work overtime hours without obtaining prior management approval, you indicated that you had "volunteered" your time on occasion during your tenure at Altierus Career College. Campus Director Moses Delaney emailed you on April 1st, 2019, to remind you volunteering the time you work on behalf of Altierus is not permitted or acceptable. You are required to accurately record the time you work each day and to refrain from working any time that is not authorized by your supervisor. He also reminded you that you must record all hours worked so that we can ensure you are properly paid for all time worked. You were instructed to record the dates and times of any additional hours worked that you were stating you had not yet recorded, or been paid for, by April 2, 2019. You subsequently began a leave of absence before providing the information requested. After you briefly returned to work in late August 2019, Mr. Delaney followed up to ensure you are properly paid for all time worked. To this end, he again requested you provide the dates and times that correspond to the "volunteer time" you described. In a conversation with Mr. Delaney at that time, you told him you would provide this information.

Shortly thereafter, you resumed a leave of absence. Most recently, you returned from leave on December 9, 2019. Mr. Delaney again reminded you of your commitment to provide the dates and times of the hours you are stating you worked on a "volunteer" basis, so we can make sure you are properly paid for all hours worked. In response, you told Mr. Delaney you have now been counseled not to provide this requested information.

Please understand that it is a violation of Company policy to incorrectly report hours worked (including under-reporting hours worked). Based upon statements you previously made, we have made multiple attempts to obtain information from you regarding the dates and hours you are stating you worked and for which you have not yet been paid, to ensure you are properly paid for all time worked. To date, you have not provided the information requested. Please provide the requested information by noon on Friday, December 20, 2019. If you do not provide the information by that

(Page 2 of 2)

time, we will conclude that you have reported and been properly paid for all of your time worked, given that we are not aware of any hours you have worked without pay nor are we aware of any direction or approval provided to work off the clock or otherwise volunteer your time performing your job duties. If you have any questions, please do not hesitate to contact me.

Sincerely,


Kristin M. Ford
Human Resources Business Partner Principal
ECMC Group


Sent via email and hand delivered on December 18, 2019



**Saunders, Shelia Candy**

Academic Advisor

Manager: David Brame (101128)

Evaluated By: Kris Ford (100852)

**Final Warning**

Organization: Norcross - Academics (David Brame (101128))

Location: Georgia - Norcross

09/10/2019 - 10/25/2019

## Disciplinary Action

Reason:                      Attendance (United States of America)

Related Disciplinary Actions:   Verbal Documented Warning

*( was not working during this period )*

## Questions

# Specific Areas Requiring Improvement:

# Identify issues and how employee's performance and/or behavior has affected his/her co-workers, the company and clients/customers.

Manager Evaluation

Response:   Employee (Shelia Saunders) continues to work overtime without authorization and in spite of being
directed several times to refrain from working unapproved overtime. This past week, 3/18/2019 to
3/22/2019, employee Shelia Saunders worked a total of 50.85, including 10.85 hours of unapproved
overtime.

# Means of Improvement & Measurement:

# Identify Expectations going forward, how improvement will be measured, frequency of meetings and timing for improvement.

Manager Evaluation

Response:   Employee must immediately refrain from working unapproved overtime.

*THis was submitted but I was never given a copy of this warning nor have I signed a copy of this letter this is a Fabricated letter I was not working doing this*



**Saunders, Shelia Candy**
Academic Advisor

Manager: David Brame (101128)
Evaluated By: Moses Delaney (088401)

**Verbal Documented Warning**

Organization: Norcross - Academics (David Brame (101128))
Location: Georgia - Norcross
03/25/2019 - 04/25/2019

*I was out on Medical Leave from 4-1- 2019 to 12-9-19*

## Disciplinary Action

Reason:          Attendance (United States of America)

Related Disciplinary Actions:

Questions

# Specific Areas Requiring Improvement:

# Identify issues and how employee's performance and/or behavior has affected his/her co-workers, the company and clients/customers.

Manager Evaluation

Response:      Even after multiple conversations on 10/13/2018 and 11/11/2018, instructing employee to work her scheduled hours to avoid working unapproved overtime, employee continues to either work unapproved overtime or work 40 hours before her scheduled has her earning a total of 40 hours.

# Means of Improvement & Measurement:

# Identify Expectations going forward, how improvement will be measured, frequency of meetings and timing for improvement.

Manager Evaluation

Response:      Employee must work her approved schedule and avoid working unapproved overtime.

*THE Employee sent this in as One of their exhibits but I never signed nor were I given a copy of this warning nor was I at work, at this time off on Medical leave*



Internet Claims Review Links

Main Menu
List of Unassigned Internet Claims
List of Assigned Internet Claims
Confirmation Inquiry
Staff ABP Request Delete
ABP Wage Request Entry
ABP Wage Request Inquiry

GEORGIA
DEPARTMENT OF LABOR

# Work History Inquiry

For claim filed on 02/25/2020

SHELIA C SAUNDER

Enter Social Security Number [    ] 8555    [ Latest Work History ] [ Prior Work History ]

BER Date 03/09/2020   07:45

## Employer information # 1

| | | | |
|---|---|---|---|
| Name | Altierus Career College Everest Institute | Start Date | 02/20/2018 |
| | | Last Work Date | 02/21/2020 |
| Address | 111 Washington Avenue South Ste. 1400 | Earned 10X | Yes   $0.00 |
| | | Supervisor | David Brame |
| City | Minneapolis  MN 55401 | Type Work | Professional, Tech, and Mgt. Occupations |
| Phone | 651-325-3540 | | |
| Payroll Addr | | Sep Notice | No |
| | | Send 1199FF? | Yes |
| Payroll city | | Job Duties | Meeting with the students during the first week of class. Meetings with students to discuss issues, concerns and general advising. Meetings with students on Academic Guidance Plans. Entering all Data on the students. Advising onc |
| Emplr #1 | 10464909  MRE  Yes | | |
| Job Title | Academic Advisor | | |
| Months Worked | 24 | | |
| Hours per Week | 40 | | |
| Salary Amount | $ 24.85 | | |
| Salary Unit | Hourly | | |

# Altierus Career College – Norcross Uniform Policy / Classroom Expectations



## Guidelines for Professional Appearance and Attire for HealthCare Students

The student will provide a hygienic, unobtrusive, calm and comfortable environment that focuses on the needs and a healing of the patient. The student's image of a healthcare professional is positively influenced when students take pride in their professional appearance, in their school and in their identification with peers.

## Policies Regarding Professional Appearance and Presentation

• **Professional:** Always conduct yourself professionally through your speech and appearance.  Respect personal space of others.

• **Attendance:**  Students must be in attendance 85% per mod and maintain a 2.5 GPA or higher. This allows for only 1 absent per mod to avoid violation of attendance policy.

• **Perfumes, colognes, and body odor** should be avoided; the odor of cologne and perfumes can be nauseating and distressing to someone who is ill

• **Makeup:**  Must be light and provide a natural appearance

• **Tobacco:** third-hand smoke and odor in a like manner the third-hand smoke and odor on clothing, breath, skin, or hair is an impediment to health, can be offensive, and is not acceptable.

• **Uniform** – Scrubs Tuesday – Thursday Neatly pressed and clean.  Undergarments never visible. Lab jackets in clinic at all times

• **Hair**
  ➢ Short, off the collar, or secured in a way that avoids hair falling over the shoulders
  ➢ Dreadlocks or braids, if worn, must be clean, well maintained, and, if below the collar, must be secured o Beards and mustaches must be short, trimmed neatly, and clean
  ➢ Most of our partnering healthcare organizations require hair to be a naturally occurring color.

• If the student will potentially be using N95 facemasks, face must be clean and shaven.

• **Fingernails**
  ➢ No false fingernails of any type, including acrylics, gels, or wraps
  ➢ Nails must be short enough to not be seen over the tips of the fingers
  ➢ No nail polish of any kind or color is permitted

• **Jewelry**
  ➢ Earrings: only one small earring in each ear lobe is permitted
  ➢ Body Piercing: other than earlobes, may not be visible. Only clear retainers may be used to maintain the piercing while the jewelry is out to make the piercing less noticeable.
  ➢ Rings only plain wedding bands are permitted. No rings with stones are permitted due to the potential for the stone to cause injury to the patient, tear through gloves or harbor pathogens.
  ➢ Bracelets are not permitted o Wristwatches may be worn; expansion bands are preferred.

• **Tattoos**
  ➢ Visible tattoos are not permitted.  Clothing, a large Band-Aid or make up must cover all tattoos at all times in clinical settings

• **Cell phones**
  ➢ Students are expected to bring smart phones to clinical for access to references only.

Name:_____   Date:_____

Signature_____   MOD/Instructor:_____

## Saunders, Shelia Candy

Academic Advisor

Manager: David Brame (101128)
Evaluated By: Kris Ford (100852)

### Final Warning

Organization: Norcross - Academics (David Brame
(101128))
Location: Georgia - Norcross
09/10/2019 - 10/25/2019

## Disciplinary Action

| | |
|---|---|
| Reason: | Attendance (United States of America) |
| Related Disciplinary Actions: | Verbal Documented Warning |

## Questions

# Specific Areas Requiring Improvement:

## Identify issues and how employee's performance and/or behavior has affected his/her co-workers, the company and clients/customers.

Manager Evaluation

Response:    Employee (Shelia Saunders) continues to work overtime without authorization and in spite of being directed several times to refrain from working unapproved overtime. This past week, 3/18/2019 to 3/22/2019, employee Shelia Saunders worked a total of 50.85, including 10.85 hours of unapproved overtime.

# Means of Improvement & Measurement:

## Identify Expectations going forward, how improvement will be measured, frequency of meetings and timing for improvement.

Manager Evaluation

Response:    Employee must immediately refrain from working unapproved overtime.

## Saunders, Shelia Candy

Academic Advisor

Manager: David Brame (101128)

Evaluated By: Moses Delaney (088401)

### Verbal Documented Warning

Organization: Norcross - Academics (David Brame (101128))

Location: Georgia - Norcross

03/25/2019 - 04/25/2019

## Disciplinary Action

Reason:                      Attendance (United States of America)

Related Disciplinary Actions:

## Questions

# Specific Areas Requiring Improvement:

# Identify issues and how employee's performance and/or behavior has affected his/her co-workers, the company and clients/customers.

Manager Evaluation

Response:   Even after multiple conversations on 10/13/2018 and 11/11/2018. instructing employee to work her scheduled hours to avoid working unapproved overtime, employee continues to either work unapproved overtime or work 40 hours before her scheduled has her earning a total of 40 hours.

# Means of Improvement & Measurement:

# Identify Expectations going forward, how improvement will be measured, frequency of meetings and timing for improvement.

Manager Evaluation

Response:   Employee must work her approved schedule and avoid working unapproved overtime.

# GEORGIA DEPARTMENT OF LABOR
# UNEMPLOYMENT INSURANCE

## SIDES Official Notice of Claim Filed – Response

Claimant Name: **SHELIA C SAUNDERS**
Employer: **EVEREST INSTITUTE**
Claimant SSN **8555**
Transmitted On: **2020-03-06T14:47:52.000-05:00**
State Request Record GUID: **ABB000000003202002225202301789417**
Broker Record Transaction Number: **33605785**

---

**Amended Response:**
Amended Response Number: **0**
Why is the response being amended and what changed?

**Claimant Information:**
Other last name used:
Effective date of the claim: **02/23/2020**
Claim number:

**Employer Information:**
Employer's Name: **EVEREST INSTITUTE**
Corrected Employer Name:
Employer State Account Number: **10464909**
Corrected State Account Number:
Employer's Federal Identification Number (FEIN): **472237488**
Corrected Employer's Federal Identification Number (FEIN):

What other Social Security Number (SSN) did the claimant use?
If the claimant worked under another name, what was it?

**Employment Information:**
What was the claimant's job title? **ACADEMIC ADVISOR**
Was this seasonal employment?
What was the claimant's first day of work? **02/20/2018**
What was the claimant's last day of work? **02/19/2020**
What was the date the claimant was separated from employment if it was different from the last day of work? **02/21/2020**
What is the reason for the claimant's separation from employment? **Fired/Discharged**
What was the claimant's average weekly wage?

**Pandemic Unemployment Assistance (PUA) Benefit Determination**
Georgia Department of Labor
148 Andrew Young International Blvd, NE
Atlanta, Georgia 30303-1751

SHELIA C SAUNDERS
128 COTTONBELLE DR
STOCKBRIDGE GA 30281
STOCKBRIDGE, GA  30281                                    ***-**-8555

PUA Weekly Amount  $365              Date Mailed  05/11/20
Potential Number of Weeks 25         Appeal Rights Expire  05/26/20
PUA Assistance Period 02/02/20 to 12/26/20.

Your PUA Claim is effective 02/16/20.  This PUA Benefit Determination
is based on employment beginning 01-01-19 and ending 12-31-19.
Examine the wages carefully to be sure they are accurate.

Your weekly benefit amount is computed for a week of total
unemployment under the applicable provisions of the Georgia
Employment Security Law, O.C.G.A. 34-8-47 and is based on
the weekly benefit amount computed based on 50% of the state average
weekly benefit amount.

Unless an electronic or written appeal is filed, this determination
becomes final 15 days after the date it is mailed to you.  If the
15th day falls on a Saturday, Sunday or state holiday, the next
work day will be considered the 15th day for the purpose of filing
an appeal.  An appeal may be filed online at dol.georgia.gov, in
writing by email to appeals@gdol.ga.gov, or fax to 404-232-3901 or
404-232-3902.  Refer to the Claimant Handbook for more details.

| Employer | JAN-MAR 19 | APR-JUN 19 | JUL-SEP 19 | OCT-DEC 19 | TOTAL |
|----------|-----------|-----------|-----------|-----------|-------|
| Zenith Educa | $8956.00 | $8956.00 | $8956.00 | $8956.00 | $35824.00 |
| | | | | | |
| TOTAL | $8956.00 | $8956.00 | $8956.00 | $8956.00 | $35824.00 |

You are entitled to Pandemic Unemployment Assistance provided that
you meet all eligibility requirements.

DOL-5159PUA(04/20)
UA2001

**Pandemic Unemployment Assistance (PUA) Claims Examiner's Determination**
Georgia Department of Labor
148 Andrew Young International Blvd, NE
Atlanta, Georgia 30303-1751


SHELIA C SAUNDERS
128 COTTONBELLE DR
STOCKBRIDGE GA 30281
STOCKBRIDGE  GA 30281


SSN ***-**-8555
PUA Effective Date 02/16/2020


Appeal Rights Expire 05/26/2020


### Section I Claims Determination

You are allowed benefits as of 02/16/2020

### Section II Legal Basis for Determination

The CARES Act of 2020, Public Law 116-136, and Sections 20 CFR 625.2
and 625.5 of the Code of Federal Regulations state in part that an
individual or self-employed individual who worked or was scheduled to
begin work at the time of the COVID-19 public health emergency but is
unable to do so shall be considered unemployed.

### Section III Reasoning

You are unemployed as a direct result of the COVID-19 public health
emergency.  Therefore, you can be paid Pandemic Unemployment
Assistance.

### Section IV Account Chargeability

### Section V Appeal Rights

Unless an electronic or written appeal is filed, this determination
becomes final 15 days after the date it is mailed to you.  If the
15th day falls on a Saturday, Sunday or state holiday, the next
work day will be considered the 15th day for the purpose of filing an
appeal.  An appeal may be filed online at dol.georgia.gov, in writing
by email to appeals@gdol.ga.gov, or fax to 404-232-3901 or
404-232-3902.  Refer to the Claimant Handbook for more details.

GEORGIA DEPARTMENT OF LABOR                          Mail Date
                                                     05/11/2020

                                              DOL-5160PUA(04/20)
                                              UA2201



GEORGIA DEPARTMENT OF LABOR
148 Andrew Young International Blvd NE STE 525
UI APPEALS TRIBUNAL
Atlanta, GA 30303-1734
404-232-3900    Fax 404-232-3901
appeals@gdol.ga.gov

NOTICE OF APPEAL FILING

04/03/20

DOCKET# 7980-20                    APPEALING PARTY:  Claimant

Claimant  ***-**-8555              SHELIA C SAUNDERS
SHELIA C SAUNDERS                  128 COTTONBELLE DR
770-262-7660                       STOCKBRIDGE GA 30281

Employer
EVEREST INSTITUTE
800-366-6660

### INFORMATION

A request for an appeal hearing in the above matter has been filed.
In the next few days, a hearing will be scheduled.

**PLEASE NOTIFY THE APPEALS TRIBUNAL IMMEDIATELY IF**:
(1)  Your address and telephone number are not correct or changes.
(2)  You want the Notice of Hearing to be mailed to a different address
     other than the address on this Notice.
(3)  You want the Notice of Hearing mailed to a representative who will
     be participating in the hearing.

**READ CAREFULLY** the enclosed pamphlet (DOL-424B). The appeal hearing
is your due process opportunity to present all relevant evidence,
testimony and witnesses on your behalf.

**WARNING TO CLAIMANT:**  You MUST CONTINUE TO REPORT AS INSTRUCTED for each
week by Internet or Interactive Voice Response(IVR). Failure to do so may
result in a denial of benefits.  If, as a result of this appeal, a
disqualification is placed against your claim, you will have to repay any
benefits received.  O.C.G.A. Section 34-8-254(a).

**POSTPONEMENT:**  NO postponement of the scheduled hearing will be granted
except in extreme emergency, which is not within the party's control.
If you are not notified that your postponement has been granted, you
should plan to participate in the hearing as scheduled.

        *** ADDITIONAL INSTRUCTIONS ON BACK - READ CAREFULLY ***

(see next page)

DOL-423B(1)(R-11/14)

SHELIA C SAUNDERS                                    Docket# 7980-20

<u>SCHEDULING:</u>  A date, time and location for the hearing will be established.
A Notice of Hearing (DOL-424A) will be mailed to all parties.

<u>HEARING:</u>  Pursuant to recently amended O.C.G.A. 50-13-2, effective
June 2, 2014 all appeal hearings are scheduled and routinely conducted
by telephone conference.  This is a change from previous practice.  In
person hearings are no longer available except as an accomodation for
people with disabilities, to provide effective language translation
(which are available upon request), and other similar legal good cause, as
determined by the Chief of Appeals.  If you require accomodations or
language translation, advise the Appeals Tribunal by email, fax, or mail
immediately.

<u>ASSISTANCE:</u>  Immediately direct inquiries concerning this appeal, special
scheduling instructions, or scheduling requests to the Appeals Tribunal
by telephone, fax or email to insure the information is received prior
to the scheduling of the hearing.  Information submitted in writing must
include the claimant's Social Security Number.  DO NOT CONTACT THE
CAREER CENTER as they do not have the information to assist you.

<u>ADDRESS FOR THE APPEALS SECTION:</u>

                    Georgia Department of Labor
                    148 Andrew Young International Blvd.,Ste 525
                    Atlanta, GA 30303-1734
                    Phone - (404) 232-3900
                    Fax   - (404) 232-3901

DOL-423A completed by:              ES

DOL-423B mailed:                    Clt  04/03/20    Emp  04/03/20

DOL-424B/DOL-451 mailed:            Clt  04/03/20    Emp  04/03/20

CLAIMANT COPY                                      DOL-423B(1)(R-11/14)

Are total earned wages available between the dates 09/25/2018 and 02/21/2020?  **Wages are available**

What was the total amount of wages earned by the claimant between the dates 09/25/2018 and 02/21/2020?  **38095.48**

Are total weeks worked available between the dates 09/25/2018 and 02/21/2020?  **Weeks are available**

What was the total number of weeks the claimant worked between the dates 09/25/2018 and 02/21/2020?  **41**

What were the total wages earned by the claimant after the effective date of the claim?

What were the total hours worked by the claimant after the effective date of the claim?

### Still Attached/Change in Work Hours/Pay:

Does the claimant have reasonable assurance of returning to work?

What date do you expect the claimant to return to work?

Is the claimant working all available hours?

Why is the claimant not working all available hours?

What is the type of labor dispute?

### Remuneration Information( i.e. Severance, Separation Pay, Pension, Wages in Lieu of Notice, etc.) [ 0 ]:

What kind of remuneration did or will the claimant receive after the last day of work?

What was the amount of the remuneration received per period?

What was the frequency of the claimant's remuneration?

What is the date the remuneration was or will be issued?

Was the remuneration allocated?

What was the beginning date for the remuneration allocation?

What was the ending date of the remuneration allocation?

What was the average number of hours the claimant worked per week?

### Retirement/Company Pension Information:

Was the retirement mandatory?

Was the pension mandatory?

Does/did the claimant contribute to the pension?  **No**

What was the percentage of the pension that the claimant contributed?

Provide any additional information about the claimant's pension.

### Discharge Separation Information:

Explain why the claimant is no longer employed; or indicate if and what additional information on the claim will be faxed or emailed to thestate; or enter additional information relevant to the claim.

What is the reason the claimant was discharged from employment?  **Failed To Follow Instructions/Policy/Contract**

What was the final incident that caused the discharge?  **It was noted on February 13 that she had worked 11.3 hours on February 4, 2020 and 11.05 hours on February 6th. These incidents are only a few of her many which are in violation of the final Corrective Action Notice she received months ago. See attached violations made by Shelia Saunders. On| February 4th and 6th, 2020,**

She clocked hours over her allotted time.
What was the date of the final incident?  **02/21/2020**
Did the claimant violate company policy?  **Yes**
Was the claimant aware of the policy or unacceptable behavior that contributed to the discharge?  **Yes**
How was the claimant aware of the policy or unacceptable behavior that contributed to the discharge?

What is the name of the person who discharged the claimant?  **Moses Delaney and David Brame**
What is the title of the person who discharged the claimant?  **Campus Director and Academic Dean respectively**
Provide any other comments regarding why the claimant was discharged.  **The claimant was discharged for misconduct related performance.| Additional comments: Accrued unused PTO was paid out final check, check date 02/21/20 (see pay slip attached).| Please note the types of documents attached to the file. warnings, policy and final paycheck**

**Voluntary Quit Separation:**
What reason did the claimant give for voluntarily leaving employment?
Were there changes in the claimant's hiring agreement?
What were the changes in the claimant's hiring agreement?
Did the claimant take actions to avoid quitting?
What action did the claimant take to avoid quitting?
Was continuing work available?
Explain the reason the claimant gave for quitting even though continuing work was available.

**Prior Incident [ 0 ] :**
What was the date the claimant violated a rule, behaved unacceptably, was absent or late prior to the final incident?
What was the reason for the prior incident(s) of rule violation, unacceptable behavior, absenteeism or lateness?
Was the claimant warned for the prior incident?
What was the date of the prior incident warning?
Describe what the prior incident warning said.

**Attachment's[ 4 ]:**

**Attachment 1 of 4**
What is the format of the attachment?  **pdf**
What type of document is attached?  **TIFF**

**Attachment 2 of 4**
What is the format of the attachment?  **pdf**
What type of document is attached?  **TIFF**

**Attachment 3 of 4**



**GEORGIA DEPARTMENT OF LABOR - APPEALS TRIBUNAL**
148 Andrew Young Intl Blvd NE,Ste 525, Atlanta,GA 30303-1734
404-232-3900  Fax 404-232-3901
appeals@dol.ga.gov

**DECISION OF ADMINISTRATIVE HEARING OFFICER - DOCKET# 7980-20**

| | | | |
|---|---|---|---|
| Appealing Party | Claimant | Decision Mailed | 05/11/2020 |
| Appeal Filed | 03/27/2020 | Appeal Rights Expire | 05/26/2020 |
| Hearing Date | 04/27/2020 | | |

Claimant
SHELIA C SAUNDERS

SHELIA C SAUNDERS
128 COTTONBELLE DR
STOCKBRIDGE GA 30281

Employer
EVEREST INSTITUTE

APPEARANCES: The hearing was conducted by telephone with the claimant participating. The employer did not appear.

O.C.G.A. PROVISIONS AND ISSUES INVOLVED: OCGA Section 34-8-194(2) - Whether the discharge or suspension of the claimant was for failure to follow orders, rules or instructions or failure to perform the duties for which employed.

OCGA Section 34-8-157(b) - Whether the employer supplied written separation information to the Department of Labor in a timely manner.

FINDINGS OF FACT: The claimant worked for the named employer from February 20, 2018 to February 19, 2020, as an Academic Advisor. The claimant was discharged for violating policy.

The employer requires that its employees work a 40 hour work week, as scheduled. The claimant was aware of this requirement. The claimant set her own schedule through the duration of her employment, which she scheduled around her students and posted on her door every semester. The claimant's job description indicated that her hours may need to be flexible in order to accommodate students with late class schedules and complete her duties and responsibilities. The claimant set her schedule based on the needs of her students and regularly worked a 40 hour work week: Mondays from 11:00 AM to 8:00 PM, Tuesdays and Thursdays from 11:00 AM to 10:00 PM, Wednesdays from 10:00 AM to 3:00 PM and Fridays from 12:00 PM to 3:00 PM. The employer was aware of this flexible schedule.

The claimant had never been issued any warnings regarding her schedule and was not put on notice that her job was in jeopardy. The claimant was, however, terminated for not adhering to the work schedule.

Timely written separation information was supplied to the Department by the employer.

**See reverse side**

SHELIA C SAUNDERS                    Docket# 7980-20
                                     Page 2


REASONS FOR DECISION: O.C.G.A. Section 34-8-194(2)(A) provides for a
disqualification if it is shown that an employee has been discharged
or suspended from his most recent employer for failure to obey rules,
orders, or instructions, or for failure to perform the duties for
which employed. This Section of the Law places the burden of proof on
the employer to show by a preponderance of the evidence that the
employee was at fault by a deliberate, willing, and knowing action on
his part.

Chapter 300-2-9-.01(1) of the Rules of the Georgia Department of Labor
provides that the claimant shall be afforded the opportunity to
challenge or rebut the employer's version of the facts as to the
stated reason for the discharge; however, the employer has the burden
of persuasion as to the true cause of discharge.

In the instant case, the employer is charged with carrying the burden
of proof and, since the employer did not participate in this hearing,
the employer failed to present testimony and/or evidence to support
that the claimant's separation requires a disqualification. The
claimant did not make any statements against her self-interest to
warrant a disqualification. The employer failed to show that the
claimant was at fault by a deliberate, willing and knowing action on
her part. Therefore, benefits are allowed.

O.C.G.A. Section 34-8-157(b) provides that benefits paid shall be
charged to the account of the most recent employer. The amount charged
shall be the amount of benefits paid for the period of unemployment or
the amount of wages paid by the employer from the beginning date of
the base period of the claim whichever is less.

DECISION: The determination released by the Department March 13, 2020,
disqualifying the claimant effective February 23, 2020, is reversed.
The claimant shall be entitled to unemployment insurance benefits
effective February 23, 2020, under the provisions of O.C.G.A. Section
34-8-194(2)(A). The claimant will be entitled to benefits for all
weeks that claimant has met all the reporting and eligibility
requirements as provided for under the provisions of O.C.G.A. Section
34-8-195(a)(3).

The employer's tax account shall be charged for benefits paid for the
period of unemployment or the amount of wages paid during the period
beginning with the base period of the claim, whichever is less, in
accordance with O.C.G.A. Section 34-8-157(b).


                        DANA JACKSON
                        HEARING OFFICER

SHELIA C SAUNDERS                      Docket# 7980-20
                                       Page 3


This is to certify that this decision was mailed on the above date by
the clerk of the Appeals Tribunal.

**Appeal Rights:**
This decision will become final unless you file an appeal by the
deadline.  Appeal rights expire 15 days afer the decision is mailed.
If you wish to file an appeal, submit a request online at
dol.georgia.gov, in writing by email to boardofreview@gdol.ga.gov, or
fax to 404.232.3339.  Appeals filed by email or fax
are considered filed on the date received.


COPIES OF THIS DECISION WERE MAILED TO

SHELIA C SAUNDERS                      EVEREST INSTITUTE
128 COTTONBELLE DR                     C/O TALX UCM SERVICES INC
STOCKBRIDGE GA 30281                   P.O. BOX 283
                                       ST. LOUIS,  MO 63166

SHELIA C SAUNDERS                          Docket# 7980-20
                                           Page 3


This is to certify that this decision was mailed on the above date by
the clerk of the Appeals Tribunal.

**Appeal Rights:**
This decision will become final unless you file an appeal by the
deadline.  Appeal rights expire 15 days afer the decision is mailed.
If you wish to file an appeal, submit a request online at
dol.georgia.gov, in writing by email to boardofreview@dol.ga.gov, or
fax to 404.232.3339.  Appeals filed by email or fax
are considered filed on the date received.


COPIES OF THIS DECISION WERE MAILED TO

SHELIA C SAUNDERS                          EVEREST INSTITUTE
128 COTTONBELLE DR                         C/O TALX UCM SERVICES INC
STOCKBRIDGE GA 30281                       P.O. BOX 283
                                           ST. LOUIS,  MO 63166


THE unemployment took a look at
all my evidence and witness
Statements and heard all the
Recordings that was submitted
and Reversed the denial of
my benefits and allowed me to
Recieve my benefits Starting May
26, 2020

Shelia Candy Saunders